```
 1                 IN THE UNITED STATES DISTRICT COURT
                      SOUTHERN DISTRICT OF FLORIDA
 2                         FORT LAUDERDALE
                      CASE NO. 0:20-cv-61483-RAR
 3   _____

 4    HALLMARK SPECIALITY INSURANCE
      COMPANY,
 5                        Plaintiff,        December 10, 2020
           vs.
 6
      LION HEART SURGICAL SUPPLY LLC,
 7    LION HEART SURGICAL SUPPLY
      CORP, FABIAN CONDE, JANAINA D.
 8    NASCIMENTO, XS SUPPLY LLC,
      JOHNSON & JOHNSON, ETHICON INC,
 9    ETHICON US LLC, JON M. BIRD,
      TYLER BERGER, IVAN RODIMUSHKIN,
10    DAVID W. LONGDUE III,
      BRENDAN THOMAS,
11                        Defendants,
              and
12    JANAINA D. NASCIMENTO, LION
      HEART SURGICAL SUPPLY LLC,
13    FABIAN CONDE,
                   Counter-Claimants,
14            vs.
      HALLMARK SPECIALITY INSURANCE
15    COMPANY,
                   Counter-Defendant.
16   _____

17                  TELEPHONIC MOTION HEARING

18         BEFORE THE HONORABLE RODOLFO A. RUIZ, II,

19           UNITED STATES DISTRICT COURT JUDGE

20   _____

                        A P P E A R A N C E S
21
      FOR THE PLAINTIFF:    RORY E. JURMAN, ESQ
22    HALLMARK SPECIALITY   JENELLE E. LA CHUISA, ESQ
      INSURANCE COMPANY     Hinshaw Culbertson LLP
23                          1 East Broward Blvd, Ste. 1010
                            Fort Lauderdale, FL 33301
24                          (954) 375-1141
                            Rjurman@hinshawlaw.com
25                          Jlachuisa@hinshawlaw.com
```

```
 1                          WILLIAM C. MORISON, ESQ
                            Morison & Prough LLP
 2                          2540 Camino Diablo, Suite 100
                            Walnut Creek, CA 94597
 3                          (925) 937-9990
                            Wcm@morisonprough.law
 4
        FOR THE DEFENDANT:  DANYA PINCAVAGE, ESQ
 5      LION HEART SURGICAL  OMAR M. ALI-SHAMAA, ESQ
        SUPPLY LLC          Wolfe Pincavage LLP
 6                          2937 SW 27th Avenue, Ste. 203
                            Miami, FL 33133
 7                          (786) 409-0800
                            Danya@wolfepincavage.com
 8                          Omar@wolfepincavage.com

 9      FOR THE DEFENDANTS: JACQUELINE LASH, ESQ
        JOHNSON AND JOHNSON, TIMOTHY A. WATERS, ESQ
10      ETHICON INC., AND   Patterson Belknap Webb & Tyler LLP
        ETHICON U.S. LLC    1133 Avenue of the Americas
11                          New York, NY 10036
                            (212) 336-2000
12                          Jlash@pbwt.com
                            Twaters@pbwt.com
13
        FOR THE DEFENDANTS: GUS CENTRONE, ESQ
14      XS SUPPLY LLC       Kynes Markman & Felman PA
        DEFENDANTS, WHICH ARE PO Box 3396
15      XS SUPPLY LLC, JON   Tampa, FL 33601
        BIRD, TYLER BERGER,  (813) 229-1118
16      IVAN RODIMUSHKIN,    Gcentrone@centroneshrader.com
        DAVID LONGDUE, AND
17      BRENDAN THOMAS

18
        REPORTED BY:        GIZELLA BAAN-PROULX, RPR, FCRR
19                          Official Court Stenographer for
                            the Honorable Judge Rodolfo Ruiz, II
20                          299 East Broward Blvd
                            Fort Lauderdale, FL  33301
21                          (954) 769-5568
                            gizella_baan-proulx@flsd.uscourts.gov
22
        Also present:
23           Adam Lamb, Esq.

24

25
```

<u>P R O C E E D I N G S</u>

*(The following proceedings were held in open court.)*

**THE COURT:**  Good morning, everybody.  This is Judge Ruiz.  If I could call up case number 20-61483.  This is the matter of Hallmark Specialty Insurance Company versus Lion Heart Surgical Supply, and, of course, Lion Heart Surgical Supply is the counter plaintiff versus Hallmark.

Let me go ahead and get everyone's appearances for the record, please, on behalf of plaintiff, who do I have on the line?

**MR. JURMAN:**  Rory Jurman on behalf of plaintiff, and I have co-counsel, who will announce themselves.

**THE COURT:**  Okay.

**MR. MORISON:**  William Morrison on behalf of plaintiff.

**MS. LA CHUISA:**  Jenelle La Chuisa on behalf of plaintiff.

**THE COURT:**  Thank you.  And on behalf of the defendants?

**MS. PINCAVAGE:**  Good morning, Your Honor.  This is Danya Pincavage on behalf of the Lion Heart defendants.

**MR. LAMB:**  Your Honor, this is Adam Lamb.  I represent the Lion Heart defendants in the underlying case.  I'm just observing the hearing today, but I'm on the line.

**THE COURT:**  You are the one busy in the Middle District of Florida, right?

1      **MR. LAMB:**  Right.

2      **THE COURT:**  Anyone else on the defense side?  Yeah, go

3 ahead.

4      **MR. ALI-SHAMAA:**  Good morning, Your Honor.  Omar

11:09  5 Ali-Shamaa on behalf of the Lion Heart defendants as well.

6      **MS. LASH:**  Good morning, Your Honor.  This is

7 Jacqueline Lash on behalf of Johnson and Johnson, Ethicon Inc.,

8 and Ethicon U.S. LLC.  And I'm also joined on the line with my

9 colleague, Timothy Waters.

11:09 10      **THE COURT:**  All right.

11      **MR. CENTRONE:**  Good morning, Judge.  This is Gus

12 Centrone, and I'm representing the XS Supply LLC defendants,

13 which are XS Supply LLC, Jon Bird, Tyler Berger, Ivan

14 Rodimushkin, David Longdue, and Brendan Thomas.

11:10 15      **THE COURT:**  Thank you for that.  Anyone else that

16 hasn't stated their appearance?  Okay.  I think we got

17 everybody on the record.

18      So what I want to do today is just kind of cut to the

19 heart of the matter and address Hallmark Specialty Insurance

11:10 20 Company's Amended Motion for Judgment on the Pleadings,

21 pursuant to Federal Rules of Civil Procedure 12(c).

22      It is my habit -- perhaps it is because I miss seeing

23 lawyers every day due to the pandemic or because I also feel

24 sometimes it's just easier to have a frank conversation with

11:10 25 these types of motions.

1    It's my habit to have everybody just appear and have

2  some oral argument just to make sure that I'm not missing

3  anything that I've read and let's you know where I'm headed.

4    And in some instances, I like to think of this as

11:10   5  seeing if you can take me off the path that I think should be

6  on and convince me otherwise, after having looked at some of

7  these issues.

8    In this particular case, there are some concerns I

9  have about the viability of granting any motion for judgment on

11:11  10  the pleadings, based upon what I've read, based upon my

11  analysis of the complaint, and, more importantly, I think, also

12  my analysis of the counterclaim.

13    So one of the main thrusts, as I understand it, is

14  we're really dealing here with mutual mistake issues.  And I

11:11  15  understand that there is an argument to be made that that can

16  be addressed on a judgment on the pleadings.

17    But we all know when we're dealing with a judgment on

18  the pleadings and determining whether someone is entitled to

19  central leave, we're accepting as true all the material facts

11:11  20  alleged in the non-moving party's pleading, and in the light

21  most favorable to the non-moving party we're viewing all of

22  those facts.

23    And if we have competing pleadings and a vergence in

24  these pleadings that a reveal of material disputed fact, then

11:11  25  we have to deny judgment on the pleadings.

 1          And I understand this is an equitable relief mutual

 2    mistake theory that we're proceeding on here, and we have

 3    causes of action for reformation, and we're talking a little

 4    bit about what type of scrivener's error inadvertence would be

11:12 5    tantamount to a mutual mistake.

 6          The challenge I have here is I don't know -- and this

 7    question really is for Mr. Jurman on behalf of Hallmark -- how

 8    can I look at the facts in this case as pled, given the four

 9    corners of what I'm looking at?

11:12 10          There's a contention being made that you believe, on

11    behalf of Hallmark, that undisputed facts on the face of the

12    pleadings would preclude reformation.

13          And let's boil this down to its essence -- and it's

14    not to oversimplify the case.  You know, we're dealing here

11:12 15    with a duty to defend, duty to indemnify, we've got out ongoing

16    underlying action in the District.

17          You know, the position from Hallmark that an incorrect

18    name on the policy could not have resulted from mutual mistake

19    is a little bit problematic to me.  I know that you believe

11:12 20    that Hallmark, being the entity that the (inaud.) LS

21    defendants, as I call them, the insurance broker instructed it

22    to name.  And it was never purported any contact with Hallmark

23    before the underlying action, the question of the named

24    insured.

11:13 25          But, you know, on a judgment of pleading standard,

1     it's very difficult for me to say that those facts, you know,

2     somehow prevent me from entertaining this reformation count,

3     because the reality is that most of the time mutual mistake

4     issues -- and I'm loathe, quite honestly, to ever go outside

11:13  5     the written policies and written contracts -- but it's one of

6     those equitable relief arenas that does, many times, deal with

7     extrinsic evidence, deals with discovery to figure out if

8     there's a mutual mistake.

9           And so it's pretty difficult, in a case like this,

11:13 10     where discovery would probably give us some explanation, I

11     think, of Hallmark's underwriting process to figure out what

12     entity Hallmark intended to insure, because we know that the

13     one that they did doesn't exist.

14           So, you know, it's a little difficult for me, with

11:13 15     what I've -- how I've seen it, now that I've kind of gone over

16     the key facts, to look at a judgment on the pleading and find

17     that you can't avail yourself of this mutual mistake theory,

18     and it's undisputed on the face of what we have that it's game

19     over; that we intended this to be the main insured that, you

11:14 20     know, (inaud.) duty to defend and duty to indemnify.

21           So can you tell me, I guess, Mr. Jurman, on behalf of

22     Hallmark what I may be missing there given some of the case law

23     that I've seen and the difficulty.

24           I'm not saying that you may not prevail later, but on

11:14 25     this procedural vehicle, a judgment on the pleadings is a

1    little challenging.

2         I know that you've alleged that the defendants'

3    insurance broker gave them the written instructions to name

4    Lion Heart Surgical Equipment and that the undisputed facts

11:14    5    would foreclosure the claim for reformation of contract because

6    there's no mutual mistake.

7         And I'm asking you how can I feel safe and secure that

8    I can make a call like that, the absence of mutual mistake on

9    the pleadings as I see them?

11:14   10        And with that, I'll turn it over to you.  You tell me

11    maybe where I've missed something.  Go ahead.

12        **MR. JURMAN:**  Thank you, Your Honor.  It is a pleasure

13    to appear before you again, and I definitely think that's an

14    excellent question, and let me address it accordingly.

11:15   15        First of all, the burden is on the insured at this

16    point to come forward.  They're coming to the Court and saying,

17    "Yes, we agree; we admit that the facts as pled are what they

18    are."  And Your Honor has aptly and correctly identified that.

19        The next issue, though, is I believe that you're

11:15   20    putting the onus and following what the insureds are saying

21    onto Hallmark.

22        The insureds have full control of their own broker,

23    their own agent, PAG Insurance Services.  They have not come

24    forward and pled, in any way, why further discovery if -- and

11:15   25    I'd like to talk about further in a second -- but why further

1   discovery would somehow warrant a change in the named insured.

2           Putting aside the Tolden (ph.) case, which is from the

3   Florida Supreme Court, and the Mount Holly case, and then the

4   Golden Door case out of the Eleventh Circuit which talks about

11:16   5   clear and convincing evidence and presumption that the named

6   insured is correct, I understand Your Honor just wants to right

7   now look at the facts as pled.

8           The facts as pled are in our favor.  I don't

9   understand then why the insureds, the Lion Heart insureds, have

11:16  10  not gone back to their PAG Insurance Services broker and said

11  "Look, what happened here?"  What are the communications?  Why

12  haven't they done that, Your Honor?

13          If they're asking this Court for equitable relief,

14  what are those facts?  Why should we have to do it through

11:16  15  discovery at this point to go on some expedition to find what

16  Hallmark did or didn't do, which is not relevant to this

17  inquiry?

18          The only facts, as alleged here, are that there's an

19  e-mail from August 23rd, 2018 -- which they don't contest --

11:17  20  saying this is the correct --Lion Heart Surgical Equipment Corp

21  is the correct named insured, and that's what they got.  So

22  what they ask for is what they received.

23          And after that there is no other allegation, evidence,

24  anything of factual nature that -- for example, PAG didn't put

11:17  25  forward an affidavit or there isn't even an allegation that

1    they contacted Hallmark or Hallmark's broker, their own agent,

2    USG, saying, "Hey, look, we made a mistake here.  We need you

3    to amend the policy.  And it's named differently than Lion

4    Heart Surgical Equipment Corp."  None of that is there.

11:17   5    There's the complaint -- their own complaints for reformation

6    of the DEC action is naked of these facts so why --

7         THE COURT:  Let me ask you a question.  Sorry to

8    interrupt.  I want to put something out.  What do you make of

9    the idea that -- because I know you're focused and I think

11:17  10    rightly so -- is to really not get away from the pleadings

11    because, by its own nature, that's where the judgment, in your

12    nature, lies.

13         What do I make of just the most simple allegation in

14    docket entry 49 and docket entry 59 at paragraph 39 and those

11:18  15    documents, that just looking at the names, looking at the fact

16    that there's Lion Heart Surgical Equipment and Lion Heart

17    Surgical Supply, and one doesn't exist?

18         We all know that that -- and that's like the most nuts

19    and bolts thing.  I know that you may say, "Well, Judge, exists

11:18  20    or not exists, you know, it is what it is."  But I wonder with

21    the inferences I have to give, if you look at the fact that it

22    could be scrivener.  They swapped out.  They added this, you

23    know, erroneous name by one term, and I mean, it's pretty

24    close.

11:18  25         I mean, other than Supply Corp, Equipment Corp, and we

1  have one of them saying -- that's really what it is.  It's from

2  Surgical Equipment to Surgical Supply.  So really it's one

3  word, right?  It's one word "equipment" and "supply".

4       And with the inferences I have got to give, how do I

11:19  5  look at that and say, well, they can't on the four corners of

6  this give me a theory of mutual mistake?

7       Forget the discovery.  I'm with you.  Let's say we

8  don't have any of that.  How do I look at that and that it

9  gives me cause for concern -- and I will take it a step further

11:19 10  -- because it doesn't exist, right?

11       I mean, you know, because that to me -- because I can

12  understand, look, there may be three or four different

13  companies.  If you can't get your act together and get the

14  right one insured, that could have consequences, we know.  But

11:19 15  what do I make up with that fact?  That's a tough fact for me

16  to just look at it and say, "Well, there's no mutual mistake

17  here, and I can live with that."  What do you think?

18       **MR. JURMAN:**  Right, Your Honor.  And those are, again,

19  excellent questions.  Let me address it right off the bat and

11:19 20  say, again, there is a presumption under Florida law that says,

21  "If the named insured is requested as the Surgical Equipment

22  Corp, and that's what we provided to them," there's a strong

23  presumption in our favor, again, under the Golden Door standard

24  -- and I understand this is a motion for judgment of pleadings,

11:20 25  not necessarily summary judgment, but let me address this

 1  accordingly.

 2         This particular insured has many different names,

 3  purposely.  That's -- again, if you just look at the pleadings,

 4  you see they have different names for different reasons.  There

11:20  5  is no confusion here.  There is zero evidence of confusion.

 6         They have not alleged to Your Honor, PAG saying they

 7  made a mistake.  You know, again, Your Honor is sort of filling

 8  in the blanks after the fact and rightfully so because on an

 9  equitable basis you can say, "Well, wait a second, isn't this

11:20 10  just a scrivener's error?"  No, it's not, Your Honor.

11         The fact that it didn't exist in retrospect, we don't

12  know what they were doing.  Perhaps this was a new company that

13  they wanted insurance for, for a new deal going forward, one of

14  many entities not only at this address, but you can look at the

11:20 15  pleading.

16         So that's not up to us to do any inquiry notice or

17  anything else with concern to that entity.  Their own

18  insured -- PAG Insurance Services said, "This is who we need

19  you to have.  This is what we want you to do."  And that's

11:21 20  exactly what we did.

21         Now, if they -- and the most important thing is they

22  did not come back in their own pleadings and say, "We made a

23  mistake; that it should have been these other entities.

24  Surgical Equipment Corp doesn't exist, and we told Hallmark

11:21 25  that."

1        And that's the whole factor here.  We should not --

2   Hallmark should not be held liable for the insured's only

3   broker, their own agent, who -- which Hallmark has no

4   relationship with, for their own mistake.

11:21  5        And most importantly, an equitable remedy like this

6   means that the other side has to have unclean hands.  They have

7   to be innocent.  There is no -- in fact, the evidence is quite

8   the opposite.

9        First of all, they have an adequate remedy at law.

11:21  10  They can go after PAG's services for their own agent

11  malpractice.  Second of all, why didn't PAG Insurance Services

12  then, when they had some notice of this, allegedly, in the

13  pleadings, that there was some issue, why did PAG then never

14  contact Hallmark or Hallmark's own broker, USG?  That never

11:22  15  occurred.

16        So to hold us responsible -- and those facts are never

17  going to change, Your Honor.  Why?  Because not only are they

18  not pled.  Those are the facts.  There's -- we can and come

19  back in a year from now and be exactly having the same

11:22  20  argument; that nothing is going to change.

21        **THE COURT:**  What do I do about the idea -- you know,

22  we talk a little bit about what's there and what's not there --

23  this whole snafu and problem that happened with the broker.

24  And they went to the broker, and the broker then gave them the

11:22  25  certificate, and they said they made a mistake, and they said,

1   "You've got the right names."  There's a whole confusion.  I

2   mean, I'm going back to what I've gleaned from the pleadings of

3   some (inaud.) that happened there with the name and the broker,

4   and they asked to take care of this, and there was this

11:23  5   mistake, and the certificate was handed back.

6        I mean, what do I do with that fact?  I mean, because,

7   again, going back to the theory you're making that, "Judge,

8   there's not anything here; there's not enough here."  But it

9   seems that there was an understanding or an effort to fix this.

11:23 10   They thought it had been fixed.  Am I correct in that?  What do

11   you think about that?

12        MR. JURMAN:  Let me clarify that, Your Honor, and

13   thank you, again, for going to the heart of the matter.  The

14   heart of the matter is, first of all, those certificates that

11:23 15   are being alleged is from their own agent, PAG Insurance

16   Services.  They're not part of the record.  The defendants,

17   Lion Heart defendants, never put them into evidence.  They were

18   not issued by USG; they were not issued by Hallmark.

19        This is very common that agents, your own insurance

11:23 20   agent can give you a certificate of insurance.  They just

21   generate them in the office.  Unfortunately, that -- and

22   there's no allegations that those certificates are any other

23   communications.

24        If you look at the pleadings and look at everything

11:24 25   that's been placed before Your Honor, there's not a single

1  allegation. So you can't even infer an inference at this point

2  on that particular issue because at that point now you're

3  filling in a gap that doesn't exist and you're filling in

4  evidence that doesn't exist in prospectively looking at this.

11:24  5        And I understand Your Honor saying, "Well, look, hold

6  on a second. The -- Lion Heart was somehow lulled by PAG,

7  their own agent, on this issue that it was corrected." But

8  those are the sins of PAG. That has nothing to do with us, and

9  the facts are never going to change on that.

11:24  10      **THE COURT:** Again, I don't think you're necessarily

11  wrong on -- you know, the breakdown in communication is a tough

12  one because we don't really know, right? I mean, we don't know

13  what happens when PAG turns around to Hallmark, and there

14  definitely is some disconnect there; I agree. I'm trying to

11:24  15  fill in some of the spaces.

16        I guess part of what I feel I have to do, though, is

17  because I have to call these inferences on the judgment of the

18  pleading standard, I have to be able to at least see an

19  inference that there could be mutual mistake, even if they

11:25  20  don't necessarily have that evidence that you're point out is

21  lacking to make clear that that is what has happened here.

22        I'm just looking at all the inferences that I have to

23  give, finding that I'm somewhat constrained from turning it

24  into as black and white a picture as you would have me do it so

11:25  25  that I can grant judgment on the pleadings.

1           But that's -- that's where my challenge is.  And I

2  said, you kind of insinuated it earlier.  Everything you're

3  saying is going to come back in rule 56.  We're going to have a

4  summary judgment on all of this, and you may very well be

11:25  5  right.

6           I'm just maybe a little gun shy on the judgment of the

7  pleadings part because I do feel there is some responsibility

8  to fill in some gaps, and I see a lot of markers, if you will,

9  that would insinuate mutual mistake.

11:25  10          And when I see a marker with the inference that I have

11  to give and -- you know, that to me seems to tilt the scale for

12  me slightly because this procedure vehicle is so unique.

13          And I've always felt, I mean, right or wrong, the

14  judgment on the pleadings is a black and white thing.  I mean,

11:26  15  when you have too many grays, judgment on the pleadings starts

16  to fall apart as the proper vehicle.  It becomes more

17  challenging.  It's something that on its face is so clear.

18          And I don't want to say I'm running on instinct here,

19  but I saw enough badges of mutual mistake, if you will, that

11:26  20  make me a little concerned.

21          And I know that we're kind of finger-pointing about

22  who's PAG, whose fault this is really.  The question is can I

23  kind of eliminate the possibility of this equitable remedy

24  that's been requested and this reformation possibility as the

11:26  25  pleadings are currently construed.  And that's where I'm

1  falling a little bit short.

2       Let me get -- because I don't want to go too far

3  afield without getting a response because we've covered a lot

4  of ground on a lot of these points.  Let me -- you want to add

11:26  5  one more thing, and then I'll turn it over to the other side.

6  Yeah, go ahead.

7       MR. JURMAN:  If I could please have ten seconds

8  please.  The issue again is you cannot infer on something that

9  doesn't exist.

11:26  10       They never alleged that their own agent, PAG,

11  contacted Hallmark or Hallmark's agent concerning anything.

12  The pleadings itself only solely refer to PAG giving a

13  certificate of insurance to the insured.  Never does it even

14  allege -- so there's nothing -- you can't infer for some

11:27  15  allegation.

16       You can't say, "Well, that allegation is correct," or

17  "I'm going to give the benefit of the doubt to that

18  allegation."  There is zero evidence in the record of any

19  mutual mistake.

11:27  20       In fact, they admit that there's no mutual mistake.

21  If anything, they're saying that the unilateral mistake and

22  it's inequitable result, not conduct, and they're trying to

23  confuse the issue here, Your Honor.

24       There's -- they're saying that -- and I understand

11:27  25  what Your Honor is saying, well, hold on a second.  It would be

1   not equitable at this point to allow judgment on the pleadings

2   because of this scrivener's error, this issue with Equipment

3   Corp; it's close. But the fact of the matter is those are just

4   smoke screens at this point.

11:27 5       And I understand your hesitancy, but please look at

6   the evidence and please look at the record in front of you.

7   Thank you.

8       **THE COURT:** No. Thank you, counsel. And I get what

9   you're saying. I think it's -- you know, you always have

11:28 10   judgment on the pleadings, you do have a little bit of

11   incomplete information but just because of the nature of where

12   you are in the proceedings.

13       There's some challenges to how far a Court can and

14   should fill in the blanks and depart from what is constrained

11:28 15   in the four corners of the pleadings.

16       But let me turn to the other side. And I don't know

17   -- you know, I know I have a number of lawyers here on the

18   other side, so I don't know if one, in particular, wants to

19   take the lead on it. You know, let me know just so you can

11:28 20   state your appearance so that I know for my court reporter who

21   is taking the lead, and I can hear from a couple of different

22   people, if you'd like.

23       But let me turn to the defendants, whoever wants to

24   lead off on some of the concerns that Mr. Jurman and I have

11:28 25   been talking about. Go ahead, guys.

MS. PINCAVAGE:  Your Honor, this is Danya Pincavage

for the Lion Heart defendants.  I think the important thing to

recognize here, which I believe Your Honor has, is that

reformation is a pretty fact-intensive inquiry because you're

11:29    getting into the intent of the parties.

And as far as mutual mistake goes, I think here is a

mistake that will be borne out and will be shown, is that both

sides intended to insure an entity actually existed.

In our counterclaim, the Lion Heart defendants have

11:29    alleged that Lion Heart Surgical Equipment Corp never existed.

Incredibly, Hallmark actually denied those allegations in its

answer to the counterclaim.  It's denied that there's no

evidence of Lion Heart Equipment ever existing on SunBiz, the

Department of Corporation.  They're denying that Mr. Conde and

11:29    Ms. Nascimiento owned a company known as Lion Heart Surgical

Equipment Corp.

So right there he's got a pretty-distinct dispute of

fact that's material going towards we say that this company

that Hallmark insured never existed.  Hallmark apparently

11:30    believes it was an actual company.

The cases that we cited have indicated that at a

minimum there needs to be an evidentiary hearing, if not a

trial, to determine the intent of the parties.  And other cases

that we've cited such as (inaud.) Insurance versus Publix case,

11:30    which is a Fourth DCA case, and Lumberman's Mutual Casualty

1   Company of Martin, which is a Third DCA case.

2           And those in those instances, the courts, after some

3   kind of evidentiary hearing, determined that the named insured

4   was incorrect, and it essentially was a simple mistake.  That's

11:30   5   what we're saying this is here.  It's essentially a

6   typographical error.

7           There's no difference between the company that should

8   be insured, Lion Heart Surgical Supply Corp and Lion Heart

9   (inaud.) as far as the underwriting information that Hallmark

11:31   10   would have considered.

11          It should have been the same address, the same type of

12   business, anything that would allow it to assess a risk and

13   charge a premium should be fundamentally the same.

14          The cases that Hallmark cited, there was always

11:31   15   something extra and a little bit different going on there.  And

16   specifically, there would be -- enough coverage was sought by

17   an insured that the agent did not actually ask for, or the

18   agents find an uninsured motorist rejection form and after the

19   accident the insured said, "Wait a minute.  I wish I had that

11:31   20   insurance."

21          These types of additional coverages or additional

22   named insureds that get added, such as in the Mount Holly case,

23   those are things that fundamentally change the risk that an

24   insurance company is insuring.  And it changes the premium they

11:31   25   would charge and all other sorts of things.

1        There's nothing here by changing one word in the named

2   insured that would change the risk that Hallmark insured.  It's

3   like saying it would actually (inaud.) a company that

4   functioned and is active as opposed to a non-existing company.

11:32    5        Discovery, I'm sure, will bear out whether or not

6   Hallmark intends to insure non-existent companies and accept

7   premiums that will never be used for the benefit of anyone.  If

8   that's its business plan, that's going to be another

9   interesting conversation, but at the same time, right now there

11:32    10  is no reason to believe that Hallmark did not intend to insure

11  an operational business.  And Lion Heart Surgical Supply Corp

12  certainly did not intend to insure a company that doesn't exist

13  rather than insuring itself.

14        **THE COURT:**  I think that to that last point, I mean,

11:32    15  again, what I think is one of the challenges here is Mr. Jurman

16  feels like I'm -- to get to that last argument you just made,

17  you know, (inaud.) there is a small insuring company that

18  exists that I am failing gas to get there, that that has not

19  been structured in the pleadings.

11:33    20        Can maybe you just direct me because that, I think,

21  has been the biggest argument that (inaud.) didn't spar clear

22  enough to grant judgment on them under the standard, under rule

23  12.

24        And what you've pointed out now is some of these

11:33    25  distinction characteristics about they assumed it was a growing

1   concern and some of those gap fillers.  If you want to maybe

2   just point out that that is, as far as I read it, enough of

3   that is in the pleadings for me to find that judgment on the

4   pleadings would be inappropriate, and that we would be better

11:33  5   served with some discovery on this point because we can

6   entertain some of this intrinsic discovery.

7        And whether it needs to be an evidentiary hearing or

8   not, I don't know.  It may be very well coming before the Court

9   on summary judgment after a few depositions, but I'm just

11:33  10  curious what your take is on the fact that you feel the

11  pleadings fall short of flushing out what you just argued to

12  the Court.

13        **MS. PINCAVAGE**:  Well, at paragraph 12 in our

14  counterclaim alleged that Conde and Nascimiento, the officers

11:33  15  of LH Corp have never owned or operated a business called Lion

16  Heart Surgical Equipment LLC or Lion Heart Surgical Equipment

17  Corp.

18        Hallmark denied that allegation in its answer.

19  Paragraph 13 says there's no record with the Florida Department

11:34  20  of Corporations of any business or fictitious name filing for

21  Lion Heart Surgical Equipment LLC or Lion Heart Surgical

22  Equipment Corp.  Hallmark also denied that allegation.

23        **THE COURT**:  Okay.  No.  That's helpful.  I just

24  thought it was important for the record.  And I think, you

11:34  25  know, some of the points you made are concerns that I shared

1   from the beginning based upon what I've seen.

2          It just -- it is, I think, it's a little bit of a

3   challenge with this procedural posture and what I've seen from

4   the mutual mistake.  And there are a lot of allegations there

11:34  5   with the inferences that I have to give that would create a

6   concern about whether or not, just on the face of these

7   pleadings, we can ascertain and make sure that this wasn't a

8   breakdown in communication between the parties, given that one

9   of these entities never existed.

11:35  10         I don't know, Ms. Pincavage, if there was someone else

11   on your team that wanted to jump in.  I know we have a lot of

12   parties, but I think you probably addressed most of the

13   concerns that me and Mr. Jurman were talking about.

14          Is there anybody else on the defense side that wanted

11:35  15  to chime in on this?  I know we have a number of parties here,

16   but I don't want to leave anybody out in the cold if you

17   haven't had a chance to contribute or talk?

18          Okay.  I take that silence as, Ms. Pincavage, you've

19   spoken for the whole team.

11:35  20         Mr. Jurman, anything on reply that you wanted to

21   address on some of these issues pointed out in some of the

22   paragraphs she's noted before we wrap up here today?  And then

23   I'm going get back.  I've been looking at this.  I wanted to

24   try to make sure that I had no misunderstandings of where

11:35  25  everyone is.

1        I mean, the pleadings are very good, but I thought it

2   was valuable because of the circumstances; I know it's an

3   important issue.  I know that you guys have the ongoing

4   litigation in the Middle District, and I'm going to try to rule

11:35  5   on this right away.

6        I just wanted to make sure that before I issued an

7   order, there wasn't anything I was missing, but I wanted to

8   turn back to you as your motion.  If there's anything else you

9   want me to note above and beyond what we have argued already.

11:36  10  Let me know.

11        MR. JURMAN:  Yes, Your Honor.  Thank you.  And thank

12  you for the opportunity.

13        Counsel, I don't believe, has addressed the heart of

14  the matter.  She is, again, talking about something that has

11:36  15  absolutely nothing to do with the mutual mistake issue.  There

16  is zero law that supports what she's saying.

17        The fact of the matter is if their own agent -- and

18  who has control of these facts?  She does.  She is not coming

19  before the Court and saying, "I spoke to PAG, and we begged

11:36  20  Hallmark and its agent to fix the policy.  We were snookered by

21  them."

22        There is zero evidence of a mutual mistake that Your

23  Honor, again, you could search this record.  You just asked her

24  point blank, "Why is Mr. Jurman wrong?"  And all she said was,

11:36  25  "I'm citing facts about whether this company exists or not."

1          That is not a material fact, Your Honor, to this

2    query.  There is no evidence of mutual mistake.  In fact, they

3    admit that they requested us, Hallmark, to issue a policy to

4    this entity.  Whether it exists or not is not -- does not mean

11:37  5    anything, Your Honor.

6          The fact of the matter is that for mutual mistake,

7    there has to be a mistake of Hallmark.  Where is that in the

8    pleadings?  That is not alleged.  There is not a single fact

9    that you can infer from at this point.  All they're saying is,

11:37  10   "Well, it's an inequitable result and a windfall for Hallmark."

11   No, it's not.  That's retrospective.

12         At this point, Your Honor, Florida law is very clear

13   on what the burden is in her control of these pleadings.  And I

14   don't think it's Your Honor's purview to allow her at this

11:37  15   point to have discovery at -- to go forward on issues that

16   don't exist.

17         And she had every opportunity to get the facts from

18   PAG as to the mutual mistake.  She has not spelled out the

19   facts, Your Honor, the facts at this point.  And the Supreme

11:38  20   Court in Iqbal is very clear on this standard.

21         So Your Honor does have the discretion to throw this

22   out at this point and allow them, then, if they have an issue

23   with their own agent to pursue their own agent -- that is their

24   remedy at law at this point -- and not to pursue another,

11:38  25   again, a year of discovery to put us through the ringer for

1  facts that don't exist.

2          And Your Honor should not, at this point, fill in

3  those blanks on her behalf.  Thank you.

4          **THE COURT:**  And I think that's a fair point.  I think

11:38  5  what I'm going to do is I'm going to go back and double-check,

6  just reread the pleadings one more time, to make sure that I'm

7  not inappropriately bending the judgment on the pleadings

8  standard so as to fill in gaps, and I can focus on the record

9  and what is before the Court so as to determine whether or not

11:39 10  it would be appropriate on this record, as currently

11  constituted, to not fall into this kind of mutual mistake

12  guesswork.

13          I will say it is closed, no matter which way you look

14  at it.  I think there's good-faith arguments on both sides here

11:39 15  about how to apply the standard at this stage of the game, and

16  I just want to be careful that I'm not reading too much into

17  what's in the record or trying to add facts that aren't

18  material.

19          You know, the materiality can be a tough thing.  The

11:39 20  relevancy of some of these facts, I think, to me, as I opened

21  this morning's argument, you know, that there is some

22  relevancy, I think, to the similarity in name, the fact that

23  one exists and one doesn't exist.

24          I see some of those things as being markers, again, of

11:39 25  some mutual mistake or the possible presence of it.  Whether or

1   not that runs afoul of the standard in that I'm adding

2   something to the pleadings that's not there or giving an

3   inference that shouldn't be given, I'll sit down and take a

4   second look at that.

11:40   5          But my hope is to finalize an order on this with

6   everyone's input from this morning's hearing, something that I

7   think is to the point and brief.  I don't think it needs to be

8   any sort of opus to kind of cut to the issues.  Everybody here

9   knows that we all understand what the focus is.

11:40  10          So I'm going to turn it around, so we have some more

11   guidance.  And then obviously, if I ultimately decline to grant

12   the motion, we'll set this case, and we'll do some -- I think,

13   some limited discovery, if that's the way we go.  And I don't

14   think it's going to become a major item of litigation.

11:40  15          And then we can, based on the theories that I've

16   seen -- and I would ask, actually, Ms. Pincavage, if you agree

17   with me on that, that if indeed you survive this motion and we

18   go forward, you would, I think agree with me, that it is a very

19   limited and focused issue, right?

11:40  20          I mean, I will probably prompt everybody, if I haven't

21   already done so, for a joint scheduling report and get a sense

22   of where everyone is at, that I think it would be limited in

23   scope because the issues are really focused on that mutual

24   mistake and equitable reformation concerns.

11:41  25          And that's pretty much what it boils down to on a

1   declaratory judgment.  I mean, we all know that most of the

2   time on these, and Mr. Jurman knows this.  He's had these

3   arguments in front of me before on insurance and reinsurance

4   contracts, and it comes down to interpreting policy.

11:41   5        This is one of those few equitable type actions that

6   if it goes beyond today allows us to look a little bit outside

7   the four corners to determine mistake, which I'm always very

8   wary of doing because I like to give force and effect to what

9   the parties have written and agreed to.

11:41   10        But this is one of those few arenas Florida law has

11   made clear that you would take some intrinsic or parole

12   evidence to interpret it.

13        But I did want to get a sense, Mr. Pincavage, if this

14   goes on from today, we're looking at a very narrowly-tailored

11:41   15   ramp-up for what I would assume would be cross-motions for

16   summary judgment on established record.  I don't know that I

17   would need, necessarily, an evidentiary hearing.  I think there

18   would be enough discovery to figure out state-of-mind issues

19   and things of that nature, but I'm not certain.  I wanted to

11:41   20   know what's your thought on that, counsel.

21        What's your take on how tailored this would be?

22   Because it seems to be such a focused issue.  What do you

23   think?

24        MS. PINCAVAGE:  I agree, Your Honor.  I think the

11:42   25   discovery would be pretty limited.  It would probably entail

1  subpoenas to PAG, USG, to the extent that USG is not within

2  Hallmark's control; documents exchanged between Hallmark and

3  the Lion Heart defendants.

4       I really don't anticipate that there's going to be any

11:42  5  discovery at all involving the remaining defendants who -- you

6  know, I appreciate that they were sued along with the Lion

7  Heart defendants simply because they need to be bound by

8  whatever the outcome of the declaratory judgment motion is.

9  But they don't necessarily have anything to add to these

11:42  10  proceedings.  They're not claiming that they're insured under

11  the Hallmark policy, like the Lion Heart defendants are.  So it

12  would be very limited, and I don't anticipate that it would

13  take that much time.

14       And if I may, just to point out a couple of more

11:43  15  paragraphs that go to the mutual mistake issue.  Those would be

16  16 and 17, talking about their -- the Lion Heart defendants'

17  request to correct the named insured.

18       There are a lot of allegations here indicating a

19  mistake was made, so the fact that Lion Heart has twice pointed

11:43  20  out the fact that Surgical Equipment Corp is not something that

21  ever existed and is the incorrect named insured, that also goes

22  to mistake as well as the e-mail, docket 41-3, that was

23  attached to the complaint, where there's several discrepancies

24  within that document.

11:43  25       The subject line of the e-mail and the title of the

1    binder that's signed, both have the correct name, Lion Heart

2    Surgical Supply Corp.  And there's a statement from PAG

3    Insurance Services which says to -- has a policy issued to

4    Equipment Corp.  So, again, there's a discrepancy there, a very

11:44  5    discrepancy there between the two entities.

6          And the other thing is that in 17 we're alleging that

7    the premium was actually paid from an account bearing the name

8    Lion Heart Surgical Supply, (inaud.) Lion Heart Surgical

9    Equipment.

11:44  10    **THE COURT:**  And I appreciate that.  I wrote those down

11    so I have those additional facts because I do want to

12    double-check again to make sure that I feel satisfied there's

13    enough in there.  And I appreciate your analysis of the case.

14    Because I agree:  It would be a very narrowly-tailored

11:44  15    discovery window.

16          There's only a few issues here that need to be flushed

17    out:  Limited scope of extrinsic evidence to be considered.

18    The point being, I just want to make sure that the case -- you

19    know, because what we have is a real action happening in the

11:44  20    Middle District.  We've got a duty to defend issue here.  I'm

21    sure you have it under reservation of rights.  You're out there

22    doing what you've got to do.

23          And so I want to just kind of figure out exactly what

24    the focus is so that if it doesn't get resolved today on this

11:45  25    type of motion, that I know that there's a light at the end of

1  the tunnel; that this is something that wouldn't be ancillary

2  litigation that will drag on.

3      Well, I'll tell you what, I have enough -- more than

4  enough from both sides to sit down and take a one last hard

11:45  5  look at the paragraph cited.  I will try to complete an order

6  as soon as possible so that we know what's going on in this

7  case, and then we'll go from there.

8      But do I appreciate everyone's time and your briefing.

9  And as I said earlier, making yourselves available for today

11:45  10  because I do think that in cases like this, sometimes it's more

11  effective that we all just talk through it a little bit in

12  addition to just relying on the written pleadings.

13      So with that being said, I hope everyone has a very

14  safe holiday, a great rest of your day, and thank you guys for

11:45  15  your time.

16      **MS. PINCAVAGE:**  Thanks, Your Honor.

17      **MR. JURMAN:**  Thank you, Your Honor.

18      **THE COURT:**  Stay safe.  Bye-bye.

19

20

21      (Thereupon, the above hearing was concluded.)

22

23                  *          *          *

24

25

1          **C E R T I F I C A T E**

2

3          This hearing occurred during the COVID-19 pandemic and

4     is therefore subject to the technological limitations of

5     reporting remotely.

6          I hereby certify that the foregoing is an accurate

7     transcription of the proceedings in the above-entitled matter.

8

10    12/16/2020          _____

11    DATE COMPLETED          GIZELLA BAAN-PROULX, RPR, FCRR

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**0**

**0:20-cv-61483-RAR** [1] - 1:2

**1**

**1** [1] - 1:23
**10** [1] - 1:5
**100** [1] - 2:2
**10036** [1] - 2:11
**1010** [1] - 1:23
**1133** [1] - 2:10
**12** [2] - 21:23, 22:13
**12(c)** [1] - 4:21
**12/16/2020** [1] - 32:10
**13** [1] - 22:19
**16** [1] - 29:16
**17** [2] - 29:16, 30:6

**2**

**20-61483** [1] - 3:4
**2018** [1] - 9:19
**2020** [1] - 1:5
**203** [1] - 2:6
**212** [1] - 2:11
**229-1118** [1] - 2:15
**23rd** [1] - 9:19
**2540** [1] - 2:2
**27th** [1] - 2:6
**2937** [1] - 2:6
**299** [1] - 2:20

**3**

**33133** [1] - 2:6
**33301** [2] - 1:23, 2:20
**336-2000** [1] - 2:11
**33601** [1] - 2:15
**3396** [1] - 2:14
**375-1141** [1] - 1:24
**39** [1] - 10:14

**4**

**409-0800** [1] - 2:7
**41-3** [1] - 29:22
**49** [1] - 10:14

**5**

**56** [1] - 16:3
**59** [1] - 10:14

**7**

**769-5568** [1] - 2:21
**786** [1] - 2:7

**8**

**813** [1] - 2:15

**9**

**925** [1] - 2:3
**937-9990** [1] - 2:3
**94597** [1] - 2:2
**954** [2] - 1:24, 2:21

**A**

**able** [1] - 15:18
**above-entitled** [1] - 32:7
**absence** [1] - 8:8
**absolutely** [1] - 24:15
**accept** [1] - 21:6
**accepting** [1] - 5:19
**accident** [1] - 20:19
**accordingly** [2] - 8:14, 12:1
**account** [1] - 30:7
**accurate** [1] - 32:6
**act** [1] - 11:13
**action** [5] - 6:3, 6:16, 6:23, 10:6, 30:19
**actions** [1] - 28:5
**active** [1] - 21:4
**actual** [1] - 19:20
**Adam** [2] - 2:23, 3:21
**add** [3] - 17:4, 26:17, 29:9
**added** [2] - 10:22, 20:22
**adding** [1] - 27:1
**addition** [1] - 31:12
**additional** [3] - 20:21, 30:11
**address** [7] - 4:19, 8:14, 11:19, 11:25, 12:14, 20:11, 23:21
**addressed** [3] - 5:16, 23:12, 24:13
**adequate** [1] - 13:9
**admit** [3] - 8:17, 17:20, 25:3
**affidavit** [1] - 9:25
**afield** [1] - 17:3
**afoul** [1] - 27:1
**agent** [14] - 8:23, 10:1, 13:3, 13:10, 14:15, 14:20, 15:7, 17:10, 17:11, 20:17, 24:17, 24:20, 25:23
**agents** [2] - 14:19, 20:18
**agree** [6] - 8:17, 15:14, 27:16, 27:18, 28:24, 30:14
**agreed** [1] - 28:9
**ahead** [5] - 3:8, 4:3, 8:11, 17:6, 18:25
**ALI** [2] - 2:5, 4:4
**Ali** [1] - 4:5
**ALI-SHAMAA** [2] - 2:5, 4:4
**Ali-Shamaa** [1] - 4:5

**allegation** [9] - 9:23, 9:25, 10:13, 15:1, 17:15, 17:16, 17:18, 22:18, 22:22
**allegations** [4] - 14:22, 19:11, 23:4, 29:18
**allege** [1] - 17:14
**alleged** [9] - 5:20, 8:2, 9:18, 12:6, 14:15, 17:10, 19:10, 22:14, 25:8
**allegedly** [1] - 13:12
**alleging** [1] - 30:6
**allow** [4] - 18:1, 20:12, 25:14, 25:22
**allows** [1] - 28:6
**amend** [1] - 10:3
**Amended** [1] - 4:20
**Americas** [1] - 2:10
**analysis** [3] - 5:11, 5:12, 30:13
**ancillary** [1] - 31:1
**AND** [3] - 2:9, 2:10, 2:16
**announce** [1] - 3:12
**answer** [2] - 19:12, 22:18
**anticipate** [2] - 29:4, 29:12
**apart** [1] - 16:16
**appear** [2] - 5:1, 8:13
**appearance** [2] - 4:16, 18:20
**appearances** [1] - 3:8
**apply** [1] - 26:15
**appreciate** [4] - 29:6, 30:10, 30:13, 31:8
**appropriate** [1] - 26:10
**aptly** [1] - 8:18
**ARE** [1] - 2:14
**arenas** [2] - 7:6, 28:10
**argued** [2] - 22:11, 24:9
**argument** [6] - 5:2, 5:15, 13:20, 21:16, 21:21, 26:21
**arguments** [2] - 26:14, 28:3
**ascertain** [1] - 23:7
**aside** [1] - 9:2
**assess** [1] - 20:12
**assume** [1] - 28:15
**assumed** [1] - 21:25
**attached** [1] - 29:23
**August** [1] - 9:19
**avail** [1] - 7:17
**available** [1] - 31:9
**Avenue** [2] - 2:6, 2:10

**B**

**BAAN** [2] - 2:18, 32:11
**BAAN-PROULX** [2] - 2:18, 32:11
**badges** [1] - 16:19
**based** [4] - 5:10, 23:1, 27:15
**basis** [1] - 12:9

**bat** [1] - 11:19
**bear** [1] - 21:5
**bearing** [1] - 30:7
**become** [1] - 27:14
**becomes** [1] - 16:16
**BEFORE** [1] - 1:18
**begged** [1] - 24:19
**beginning** [1] - 23:1
**behalf** [12] - 3:9, 3:11, 3:14, 3:15, 3:17, 3:20, 4:5, 4:7, 6:7, 6:11, 7:21, 26:3
**believes** [1] - 19:20
**Belknap** [1] - 2:10
**bending** [1] - 26:7
**benefit** [2] - 17:17, 21:7
**BERGER** [2] - 1:9, 2:15
**Berger** [1] - 4:13
**better** [1] - 22:4
**between** [4] - 20:7, 23:8, 29:2, 30:5
**beyond** [2] - 24:9, 28:6
**biggest** [1] - 21:21
**binder** [1] - 30:1
**BIRD** [2] - 1:9, 2:15
**Bird** [1] - 4:13
**bit** [9] - 6:4, 6:19, 13:22, 17:1, 18:10, 20:15, 23:2, 28:6, 31:11
**black** [2] - 15:24, 16:14
**blank** [1] - 24:24
**blanks** [3] - 12:8, 18:14, 26:3
**Blvd** [2] - 1:23, 2:20
**boil** [1] - 6:13
**boils** [1] - 27:25
**bolts** [1] - 10:19
**borne** [1] - 19:7
**bound** [1] - 29:7
**Box** [1] - 2:14
**breakdown** [2] - 15:11, 23:8
**Brendan** [1] - 4:14
**BRENDAN** [2] - 1:10, 2:17
**brief** [1] - 27:7
**briefing** [1] - 31:8
**broker** [11] - 6:21, 8:3, 8:22, 9:10, 10:1, 13:3, 13:14, 13:23, 13:24, 14:3
**Broward** [2] - 1:23, 2:20
**burden** [2] - 8:15, 25:13
**business** [5] - 20:12, 21:8, 21:11, 22:15, 22:20
**busy** [1] - 3:24
**BY** [1] - 2:18
**bye** [2] - 31:18
**bye-bye** [1] - 31:18

**C**

**CA** [1] - 2:2

**Camino** [1] - 2:2
**cannot** [1] - 17:8
**care** [1] - 14:4
**careful** [1] - 26:16
**case** [18] - 3:4, 3:22, 5:8, 6:8, 6:14, 7:9, 7:22, 9:2, 9:3, 9:4, 19:24, 19:25, 20:1, 20:22, 27:12, 30:13, 30:18, 31:7
**CASE** [1] - 1:2
**cases** [4] - 19:21, 19:23, 20:14, 31:10
**Casualty** [1] - 19:25
**causes** [1] - 6:3
**central** [1] - 5:19
**CENTRONE** [2] - 2:13, 4:11
**Centrone** [1] - 4:12
**certain** [1] - 28:19
**certainly** [1] - 21:12
**certificate** [4] - 13:25, 14:5, 14:20, 17:13
**certificates** [2] - 14:14, 14:22
**certify** [1] - 32:6
**challenge** [3] - 6:6, 16:1, 23:3
**challenges** [2] - 18:13, 21:15
**challenging** [2] - 8:1, 16:17
**chance** [1] - 23:17
**change** [6] - 9:1, 13:17, 13:20, 15:9, 20:23, 21:2
**changes** [1] - 20:24
**changing** [1] - 21:1
**characteristics** [1] - 21:25
**charge** [2] - 20:13, 20:25
**check** [2] - 26:5, 30:12
**chime** [1] - 23:15
**CHUISA** [2] - 1:22, 3:15
**Chuisa** [1] - 3:15
**Circuit** [1] - 9:4
**circumstances** [1] - 24:2
**cited** [4] - 19:21, 19:24, 20:14, 31:5
**citing** [1] - 24:25
**Civil** [1] - 4:21
**claim** [1] - 8:5
**Claimants** [1] - 1:13
**claiming** [1] - 29:10
**clarify** [1] - 14:12
**clear** [7] - 9:5, 15:21, 16:17, 21:21, 25:12, 25:20, 28:11
**close** [2] - 10:24, 18:3
**closed** [1] - 26:13
**co** [1] - 3:12
**co-counsel** [1] - 3:12
**cold** [1] - 23:16
**colleague** [1] - 4:9
**coming** [3] - 8:16, 22:8,

24:18
**common** [1] - 14:19
**communication** [2] - 15:11, 23:8
**communications** [2] - 9:11, 14:23
**companies** [2] - 11:13, 21:6
**Company** [2] - 3:5, 20:1
**company** [11] - 12:12, 19:15, 19:18, 19:20, 20:7, 20:24, 21:3, 21:4, 21:12, 21:17, 24:25
**COMPANY** [3] - 1:4, 1:15, 1:22
**Company's** [1] - 4:20
**competing** [1] - 5:23
**complaint** [3] - 5:11, 10:5, 29:23
**complaints** [1] - 10:5
**complete** [1] - 31:5
**COMPLETED** [1] - 32:11
**concern** [4] - 11:9, 12:17, 22:1, 23:6
**concerned** [1] - 16:20
**concerning** [1] - 17:11
**concerns** [5] - 5:8, 18:24, 22:25, 23:13, 27:24
**concluded** [1] - 31:21
**conde** [1] - 19:14
**CONDE** [2] - 1:7, 1:13
**Conde** [1] - 22:14
**conduct** [1] - 17:22
**confuse** [1] - 17:23
**confusion** [3] - 12:5, 14:1
**consequences** [1] - 11:14
**considered** [2] - 20:10, 30:17
**constituted** [1] - 26:11
**constrained** [2] - 15:23, 18:14
**construed** [1] - 16:25
**contact** [2] - 6:22, 13:14
**contacted** [2] - 10:1, 17:11
**contention** [1] - 6:10
**contest** [1] - 9:19
**contract** [1] - 8:5
**contracts** [2] - 7:5, 28:4
**contribute** [1] - 23:17
**control** [4] - 8:22, 24:18, 25:13, 29:2
**conversation** [2] - 4:24, 21:9
**convince** [1] - 5:6
**convincing** [1] - 9:5
**corners** [3] - 6:9, 11:5, 18:15, 28:7
**Corp** [17] - 9:20, 10:4, 10:25, 11:22, 12:24, 18:3, 19:10, 19:16, 20:8, 21:11,

22:15, 22:17, 22:22, 29:20, 30:2, 30:4
**CORP** [1] - 1:7
**Corporation** [1] - 19:14
**Corporations** [1] - 22:20
**correct** [7] - 9:6, 9:20, 9:21, 14:10, 17:16, 29:17, 30:1
**corrected** [1] - 15:7
**correctly** [1] - 8:18
**counsel** [4] - 3:12, 18:8, 24:13, 28:20
**count** [1] - 7:2
**counter** [2] - 1:13, 3:7
**Counter** [1] - 1:15
**counter-Claimants** [1] - 1:13
**Counter-Defendant** [1] - 1:15
**counterclaim** [4] - 5:12, 19:9, 19:12, 22:14
**couple** [2] - 18:21, 29:14
**course** [1] - 3:6
**COURT** [18] - 1:1, 1:19, 3:3, 3:13, 3:17, 3:24, 4:2, 4:10, 4:15, 10:7, 13:21, 15:10, 18:8, 21:14, 22:23, 26:4, 30:10, 31:18
**Court** [10] - 2:19, 8:16, 9:3, 9:13, 18:13, 22:8, 22:12, 24:19, 25:20, 26:9
**court** [2] - 3:2, 18:20
**courts** [1] - 20:2
**coverage** [1] - 20:16
**coverages** [1] - 20:21
**covered** [1] - 17:3
**COVID-19** [1] - 32:3
**create** [1] - 23:5
**Creek** [1] - 2:2
**cross** [1] - 28:15
**cross-motions** [1] - 28:15
**Culbertson** [1] - 1:22
**curious** [1] - 22:10
**cut** [2] - 4:18, 27:8

**D**

**DANYA** [1] - 2:4
**Danya** [2] - 3:20, 19:1
**danya@wolfepincavage. com** [1] - 2:7
**DATE** [1] - 32:11
**DAVID** [2] - 1:10, 2:16
**David** [1] - 4:14
**DCA** [2] - 19:25, 20:1
**deal** [2] - 7:6, 12:13
**dealing** [3] - 5:14, 5:17, 6:14
**deals** [1] - 7:7
**DEC** [1] - 10:6
**December** [1] - 1:5

**declaratory** [2] - 28:1, 29:8
**decline** [1] - 27:11
**defend** [3] - 6:15, 7:20, 20:20
**DEFENDANT** [1] - 2:4
**Defendant** [1] - 1:15
**defendants** [15] - 3:18, 3:20, 3:22, 4:5, 4:12, 6:21, 14:16, 14:17, 18:23, 19:2, 19:9, 29:3, 29:5, 29:7, 29:11
**DEFENDANTS** [3] - 2:9, 2:13, 2:14
**Defendants** [1] - 1:11
**defendants'** [2] - 8:2, 29:16
**defense** [1] - 4:2, 23:14
**definitely** [2] - 8:13, 15:14
**denied** [4] - 19:11, 19:12, 22:18, 22:22
**deny** [1] - 5:25
**denying** [1] - 19:14
**depart** [1] - 18:14
**Department** [2] - 19:14, 22:19
**depositions** [1] - 22:9
**determine** [3] - 19:23, 26:9, 28:7
**determined** [1] - 20:3
**determining** [1] - 5:18
**Diablo** [1] - 2:2
**difference** [1] - 20:7
**different** [6] - 11:12, 12:2, 12:4, 18:21, 20:15
**differently** [1] - 10:3
**difficult** [3] - 7:1, 7:9, 7:14
**difficulty** [1] - 7:23
**direct** [1] - 21:20
**disconnect** [1] - 15:14
**discovery** [16] - 7:7, 7:10, 8:24, 9:1, 9:15, 11:7, 21:5, 22:5, 22:6, 25:15, 25:25, 27:13, 28:18, 28:25, 29:5, 30:15
**discrepancies** [1] - 29:23
**discrepancy** [2] - 30:4, 30:5
**discretion** [1] - 25:21
**dispute** [1] - 19:17
**disputed** [1] - 5:24
**distinct** [1] - 19:17
**distinction** [1] - 21:25
**District** [4] - 3:25, 6:16, 24:4, 30:20
**DISTRICT** [3] - 1:1, 1:1, 1:19
**docket** [2] - 10:14, 29:22
**document** [1] - 29:24
**documents** [2] - 10:15, 29:2
**done** [2] - 9:12, 27:21

**Door** [2] - 9:4, 11:23
**double** [2] - 26:5, 30:12
**double-check** [2] - 26:5, 30:12
**doubt** [1] - 17:17
**down** [6] - 6:13, 27:3, 27:25, 28:4, 30:10, 31:4
**drag** [1] - 31:2
**due** [1] - 4:23
**during** [1] - 32:3
**duty** [5] - 6:15, 7:20, 30:20

## E

**e-mail** [3] - 9:19, 29:22, 29:25
**easier** [1] - 4:24
**East** [2] - 1:23, 2:20
**effect** [1] - 28:8
**effective** [1] - 31:11
**effort** [1] - 14:9
**Eleventh** [1] - 9:4
**eliminate** [1] - 16:23
**end** [1] - 30:25
**entail** [1] - 28:25
**entertain** [1] - 22:6
**entertaining** [1] - 7:2
**entities** [4] - 12:14, 12:23, 23:9, 30:5
**entitled** [2] - 5:18, 32:7
**entity** [5] - 6:20, 7:12, 12:17, 19:8, 25:4
**entry** [2] - 10:14
**Equipment** [19] - 8:4, 9:20, 10:4, 10:16, 10:25, 11:2, 11:21, 12:24, 18:2, 19:10, 19:13, 19:16, 22:16, 22:21, 22:22, 29:20, 30:4, 30:9
**equipment** [1] - 11:3
**equitable** [9] - 6:1, 7:6, 9:13, 12:19, 13:5, 16:23, 18:1, 27:24, 28:5
**erroneous** [1] - 10:23
**error** [4] - 6:4, 12:10, 18:2, 20:6
**ESQ** [8] - 1:21, 1:22, 2:1, 2:4, 2:5, 2:9, 2:9, 2:13
**Esq** [1] - 2:23
**essence** [1] - 6:13
**essentially** [2] - 20:4, 20:5
**established** [1] - 28:16
**ETHICON** [4] - 1:8, 1:9, 2:10, 2:10
**Ethicon** [2] - 4:7, 4:8
**evidence** [15] - 7:7, 9:5, 9:23, 12:5, 13:7, 14:17, 15:4, 15:20, 17:18, 18:6, 19:13, 24:22, 25:2, 28:12, 30:17
**evidentiary** [4] - 19:22, 20:3, 22:7, 28:17

**exactly** [3] - 12:20, 13:19, 30:23
**example** [1] - 9:24
**excellent** [2] - 8:14, 11:19
**exchanged** [1] - 29:2
**exist** [12] - 7:13, 10:17, 11:10, 12:11, 12:24, 15:3, 15:4, 17:9, 21:12, 25:16, 26:1, 26:23
**existed** [5] - 19:8, 19:10, 19:19, 23:9, 29:21
**existent** [1] - 21:6
**existing** [2] - 19:13, 21:4
**exists** [6] - 10:19, 10:20, 21:18, 24:25, 25:4, 26:23
**expedition** [1] - 9:15
**explanation** [1] - 7:10
**extent** [1] - 29:1
**extra** [1] - 20:15
**extrinsic** [2] - 7:7, 30:17

## F

**FABIAN** [2] - 1:7, 1:13
**face** [4] - 6:11, 7:18, 16:17, 23:6
**fact** [22] - 5:24, 10:15, 10:21, 11:15, 12:8, 12:11, 13:7, 14:6, 17:20, 18:3, 19:4, 19:18, 22:10, 24:17, 25:1, 25:2, 25:6, 25:8, 26:22, 29:19, 29:20
**fact-intensive** [1] - 19:4
**factor** [1] - 13:1
**facts** [25] - 5:19, 5:22, 6:8, 6:11, 7:1, 7:16, 8:4, 8:17, 9:7, 9:8, 9:14, 9:18, 10:6, 13:16, 13:18, 15:9, 24:18, 24:25, 25:17, 25:19, 26:1, 26:17, 26:20, 30:11
**factual** [1] - 9:24
**failing** [1] - 21:18
**fair** [1] - 26:4
**faith** [3] - 16:16, 22:11, 26:11
**fall** [1] - 26:14
**falling** [1] - 17:1
**far** [5] - 17:2, 18:13, 19:6, 20:9, 22:2
**fault** [1] - 16:22
**favor** [2] - 9:8, 11:23
**favorable** [1] - 5:21
**FCRR** [2] - 2:18, 32:11
**Federal** [1] - 4:21
**Felman** [1] - 2:14
**felt** [1] - 16:13
**few** [4] - 22:9, 28:5, 28:10, 30:16
**fictitious** [1] - 22:20
**figure** [4] - 7:7, 7:11, 28:18, 30:23

**filing** [1] - 22:20
**fill** [5] - 15:15, 16:8, 18:14, 26:2, 26:8
**fillers** [1] - 22:1
**filling** [3] - 12:7, 15:3
**finalize** [1] - 27:5
**finger** [1] - 16:21
**finger-pointing** [1] - 16:21
**first** [3] - 8:15, 13:9, 14:14
**fix** [2] - 14:9, 24:20
**fixed** [1] - 14:10
**FL** [4] - 1:23, 2:6, 2:15, 2:20
**FLORIDA** [1] - 1:1
**Florida** [6] - 3:25, 9:3, 11:20, 22:19, 25:12, 28:10
**flushed** [1] - 30:16
**flushing** [1] - 22:11
**focus** [2] - 26:8, 27:9, 30:24
**focused** [4] - 10:9, 27:19, 27:23, 28:22
**following** [2] - 3:2, 8:20
**FOR** [4] - 1:21, 2:4, 2:9, 2:13
**force** [1] - 28:8
**foreclosure** [1] - 8:5
**foregoing** [1] - 32:6
**forget** [1] - 11:7
**form** [1] - 20:18
**Fort** [2] - 1:23, 2:20
**FORT** [1] - 1:2
**forward** [6] - 8:16, 8:24, 9:25, 12:13, 25:15, 27:18
**four** [5] - 6:8, 11:5, 11:12, 18:15, 28:7
**Fourth** [1] - 19:25
**frank** [1] - 4:24
**front** [2] - 18:6, 28:3
**full** [1] - 8:22
**functioned** [1] - 21:4
**fundamentally** [2] - 20:13, 20:23

## G

**game** [2] - 7:18, 26:15
**gap** [2] - 15:3, 22:1
**gaps** [2] - 16:8, 26:8
**gas** [1] - 21:18
**gcentrone@centroneshrader.com** [1] - 2:16
**generate** [1] - 14:21
**given** [4] - 6:8, 7:22, 23:8, 27:3
**GIZELLA** [2] - 2:18, 32:11
**gizella_baan** [1] - 2:21
**gizella_baan-proulx@flsd.uscourts.gov** [1] - 2:21
**gleaned** [1] - 14:2
**Golden** [2] - 9:4, 11:23

**good-faith** [1] - 26:14
**grant** [3] - 15:25, 21:22, 27:11
**granting** [1] - 5:9
**grays** [1] - 16:15
**great** [1] - 31:14
**ground** [1] - 17:4
**growing** [1] - 21:25
**guess** [2] - 7:21, 15:16
**guesswork** [1] - 26:12
**guidance** [1] - 27:11
**gun** [1] - 16:6
**GUS** [1] - 2:13
**Gus** [1] - 4:11
**guys** [3] - 18:25, 24:3, 31:14

## H

**habit** [2] - 4:22, 5:1
**HALLMARK** [3] - 1:4, 1:14, 1:22
**Hallmark** [36] - 3:5, 3:7, 4:19, 6:7, 6:11, 6:17, 6:20, 6:22, 7:12, 7:22, 8:21, 9:16, 10:1, 12:24, 13:2, 13:3, 13:14, 14:18, 15:13, 17:11, 19:11, 19:19, 20:9, 20:14, 21:2, 21:6, 21:10, 22:18, 22:22, 24:20, 25:3, 25:7, 25:10, 29:2, 29:11
**Hallmark's** [5] - 7:11, 10:1, 13:14, 17:11, 29:2
**handed** [1] - 14:5
**hands** [1] - 13:6
**hard** [1] - 31:4
**headed** [1] - 5:3
**hear** [1] - 18:21
**HEARING** [1] - 1:17
**hearing** [8] - 3:23, 19:22, 20:3, 22:7, 27:6, 28:17, 31:21, 32:3
**heart** [4] - 4:19, 14:13, 14:14, 24:13
**HEART** [4] - 1:6, 1:7, 1:12, 2:5
**Heart** [33] - 3:6, 3:20, 3:22, 4:5, 8:4, 9:9, 9:20, 10:4, 10:16, 14:17, 15:6, 19:2, 19:9, 19:10, 19:13, 19:15, 20:8, 21:11, 22:16, 22:21, 29:3, 29:7, 29:11, 29:16, 29:19, 30:1, 30:8
**held** [2] - 3:2, 13:2
**helpful** [1] - 22:23
**hereby** [1] - 32:6
**hesitancy** [1] - 18:5
**Hinshaw** [1] - 1:22
**hold** [3] - 13:16, 15:5, 17:25
**holiday** [1] - 31:14

**Holly** [2] - 9:3, 20:22
**honestly** [1] - 7:4
**Honor** [31] - 3:19, 3:21, 4:4, 4:6, 8:12, 8:18, 9:6, 9:12, 11:18, 12:6, 12:7, 12:10, 13:17, 14:12, 14:25, 15:5, 17:23, 17:25, 19:1, 19:3, 24:11, 24:23, 25:1, 25:5, 25:12, 25:19, 25:21, 26:2, 28:24, 31:16, 31:17
**Honor's** [1] - 25:14
**HONORABLE** [1] - 1:18
**Honorable** [1] - 2:19
**hope** [2] - 27:5, 31:13

**I**

**idea** [2] - 10:9, 13:21
**identified** [1] - 8:18
**II** [2] - 1:18, 2:19
**III** [1] - 1:10
**important** [4] - 12:21, 19:2, 22:24, 24:3
**importantly** [2] - 5:11, 13:5
**inadvertence** [1] - 6:4
**inappropriate** [1] - 22:4
**inappropriately** [1] - 26:7
**inaud** [9] - 6:20, 7:20, 14:3, 19:24, 20:9, 21:3, 21:17, 21:21, 30:8
**INC** [1] - 1:8, 2:10
**Inc** [1] - 4:7
**incomplete** [1] - 18:11
**incorrect** [3] - 6:17, 20:4, 29:21
**incredibly** [1] - 19:11
**indeed** [1] - 27:17
**indemnify** [2] - 6:15, 7:20
**indicated** [1] - 19:21
**indicating** [1] - 29:18
**infer** [4] - 15:1, 17:8, 17:14, 25:9
**inference** [4] - 15:1, 15:19, 16:10, 27:3
**inferences** [5] - 10:21, 11:4, 15:17, 15:22, 23:5
**information** [2] - 18:11, 20:9
**innocent** [1] - 13:7
**input** [1] - 27:6
**inquiry** [3] - 9:17, 12:16, 19:4
**insinuate** [1] - 16:9
**insinuated** [1] - 16:2
**instances** [2] - 5:4, 20:2
**instinct** [1] - 16:18
**instructed** [1] - 6:21
**instructions** [1] - 8:3

**INSURANCE** [3] - 1:4, 1:14, 1:22
**insurance** [10] - 6:21, 8:3, 12:13, 14:19, 14:20, 17:13, 19:24, 20:20, 20:24, 28:3
**Insurance** [8] - 3:5, 4:19, 8:23, 9:10, 12:18, 13:11, 14:15, 30:3
**insure** [5] - 7:12, 19:8, 21:6, 21:10, 21:12
**insured** [21] - 6:24, 7:19, 8:15, 9:1, 9:6, 9:21, 11:14, 11:21, 12:2, 12:18, 17:13, 19:19, 20:3, 20:8, 20:17, 20:19, 21:2, 29:10, 29:17, 29:21
**insured's** [1] - 13:2
**insureds** [5] - 8:20, 8:22, 9:9, 20:22
**insuring** [3] - 20:24, 21:13, 21:17
**intend** [2] - 21:10, 21:12
**intended** [3] - 7:12, 7:19, 19:8
**intends** [1] - 21:6
**intensive** [1] - 19:4
**intent** [2] - 19:5, 19:23
**interesting** [1] - 21:9
**interpret** [1] - 28:12
**interpreting** [1] - 28:4
**interrupt** [1] - 10:8
**intrinsic** [2] - 22:6, 28:11
**involving** [1] - 29:5
**Iqbal** [1] - 25:20
**issue** [15] - 8:19, 13:13, 15:2, 15:7, 17:8, 17:23, 18:2, 24:3, 24:15, 25:3, 25:22, 27:19, 28:22, 29:15, 30:20
**issued** [4] - 14:18, 24:6, 30:3
**issues** [9] - 5:7, 5:14, 7:4, 23:21, 25:15, 27:8, 27:23, 28:18, 30:16
**item** [1] - 27:14
**itself** [2] - 17:12, 21:13
**IVAN** [2] - 1:9, 2:16
**Ivan** [1] - 4:13

**J**

**JACQUELINE** [1] - 2:9
**Jacqueline** [1] - 4:7
**JANAINA** [2] - 1:7, 1:12
**Jenelle** [1] - 3:15
**JENELLE** [1] - 1:22
**jlachuisa@hinshawlaw.com** [1] - 1:25
**jlash@pbwt.com** [1] - 2:12
**JOHNSON** [4] - 1:8, 2:9
**Johnson** [2] - 4:7

**joined** [1] - 4:8
**joint** [1] - 27:21
**Jon** [1] - 4:13
**JON** [2] - 1:9, 2:15
**Judge** [5] - 2:19, 3:3, 4:11, 10:19, 14:7
**JUDGE** [1] - 1:19
**Judgment** [1] - 4:20
**judgment** [25] - 5:9, 5:16, 5:17, 5:25, 6:25, 7:16, 7:25, 10:11, 11:24, 11:25, 15:17, 15:25, 16:4, 16:6, 16:14, 16:15, 18:1, 18:10, 21:22, 22:3, 22:9, 26:7, 28:1, 28:16, 29:8
**jump** [1] - 23:11
**Jurman** [9] - 3:11, 6:7, 7:21, 18:24, 21:15, 23:13, 23:20, 24:24, 28:2
**JURMAN** [8] - 1:21, 3:11, 8:12, 11:18, 14:12, 17:7, 24:11, 31:17

**K**

**key** [1] - 7:16
**kind** [9] - 4:18, 7:15, 16:2, 16:21, 16:23, 20:3, 26:11, 27:8, 30:23
**known** [1] - 19:15
**knows** [2] - 27:9, 28:2
**Kynes** [1] - 2:14

**L**

**LA** [2] - 1:22, 3:15
**lacking** [1] - 15:21
**Lamb** [2] - 2:23, 3:21
**LAMB** [2] - 3:21, 4:1
**LASH** [2] - 2:9, 4:6
**Lash** [1] - 4:7
**last** [3] - 21:14, 21:16, 31:4
**Lauderdale** [2] - 1:23, 2:20
**LAUDERDALE** [1] - 1:2
**law** [7] - 7:22, 11:20, 13:9, 24:16, 25:12, 25:24, 28:10
**lawyers** [2] - 4:23, 18:17
**lead** [3] - 18:19, 18:21, 18:24
**least** [1] - 15:18
**leave** [2] - 5:19, 23:16
**LH** [1] - 22:15
**liable** [1] - 13:2
**lies** [1] - 10:12
**light** [2] - 5:20, 30:25
**limitations** [1] - 32:4
**limited** [6] - 27:13, 27:19, 27:22, 28:25, 29:12, 30:17
**line** [4] - 3:10, 3:23, 4:8, 29:25

**LION** [4] - 1:6, 1:7, 1:12, 2:5
**Lion** [33] - 3:5, 3:6, 3:20, 3:22, 4:5, 8:4, 9:9, 9:20, 10:3, 10:16, 14:17, 15:6, 19:2, 19:9, 19:10, 19:13, 19:15, 20:8, 21:11, 22:15, 22:16, 22:21, 29:3, 29:6, 29:11, 29:16, 29:19, 30:1, 30:8
**litigation** [3] - 24:4, 27:14, 31:2
**live** [1] - 11:17
**LLC** [13] - 1:6, 1:8, 1:9, 1:12, 2:5, 2:10, 2:14, 2:15, 4:8, 4:12, 4:13, 22:16, 22:21
**LLP** [4] - 1:22, 2:1, 2:5, 2:10
**loathe** [1] - 7:4
**Longdue** [1] - 4:14
**LONGDUE** [2] - 1:10, 2:16
**Look** [1] - 9:11
**look** [20] - 6:8, 7:16, 9:7, 10:2, 10:21, 11:5, 11:8, 11:12, 11:16, 12:3, 12:14, 14:24, 15:5, 18:5, 18:6, 26:13, 27:4, 28:6, 31:5
**looked** [1] - 5:6
**looking** [6] - 9:10, 15:4, 15:22, 23:23, 28:14
**LS** [1] - 6:20
**lulled** [1] - 15:6
**Lumberman's** [1] - 19:25

**M**

**mail** [3] - 9:19, 29:22, 29:25
**main** [2] - 5:13, 7:19
**major** [1] - 27:14
**malpractice** [1] - 13:11
**marker** [1] - 16:10
**markers** [2] - 16:8, 26:24
**Markman** [1] - 2:14
**Martin** [1] - 20:1
**material** [5] - 5:19, 5:24, 19:18, 25:1, 26:18
**materiality** [1] - 26:19
**matter** [10] - 3:5, 4:19, 14:13, 14:14, 18:3, 24:14, 24:17, 25:6, 26:13, 32:7
**mean** [14] - 10:23, 10:25, 11:11, 14:2, 14:6, 15:12, 16:13, 16:14, 21:14, 24:1, 25:4, 27:20, 28:1
**means** [1] - 13:6
**Miami** [1] - 2:6
**Middle** [3] - 3:24, 24:4, 30:20
**mind** [1] - 28:18
**minimum** [1] - 19:22
**minute** [1] - 20:19

**miss** [1] - 4:22
**missed** [1] - 8:11
**missing** [3] - 5:2, 7:22, 24:7
**mistake** [40] - 5:14, 6:2, 6:5, 6:18, 7:3, 7:8, 7:17, 8:6, 8:8, 10:2, 11:6, 11:16, 12:7, 12:23, 13:4, 13:25, 14:5, 15:19, 16:9, 16:19, 17:19, 17:20, 17:21, 19:6, 19:7, 20:4, 23:4, 24:15, 24:22, 25:2, 25:6, 25:7, 25:18, 26:11, 26:25, 27:24, 28:7, 29:15, 29:19, 29:22
**misunderstandings** [1] - 23:24
**MORISON** [2] - 2:1, 3:14
**Morison** [1] - 2:1
**morning** [5] - 3:3, 3:19, 4:4, 4:6, 4:11
**morning's** [2] - 26:21, 27:6
**Morrison** [1] - 3:14
**most** [8] - 5:21, 7:3, 10:13, 10:18, 12:21, 13:5, 23:12, 28:1
**MOTION** [1] - 1:17
**Motion** [1] - 4:20
**motion** [7] - 5:9, 11:24, 24:8, 27:12, 27:17, 29:8, 30:25
**motions** [2] - 4:25, 28:15
**motorist** [1] - 20:18
**Mount** [2] - 9:3, 20:22
**moving** [2] - 5:20, 5:21
**MR** [12] - 3:11, 3:14, 3:21, 4:1, 4:4, 4:11, 8:12, 11:18, 14:12, 17:7, 24:11, 31:17
**MS** [7] - 3:15, 3:19, 4:6, 19:1, 22:13, 28:24, 31:16
**mutual** [27] - 5:14, 6:1, 6:5, 6:18, 7:3, 7:8, 7:17, 8:6, 8:8, 11:6, 11:16, 15:19, 16:9, 16:19, 17:19, 17:20, 19:6, 23:4, 24:15, 24:22, 25:2, 25:6, 25:18, 26:11, 26:25, 27:23, 29:15
**Mutual** [1] - 19:25

**N**

**naked** [1] - 10:6
**name** [9] - 6:18, 6:22, 8:3, 10:23, 14:3, 22:20, 26:22, 30:1, 30:7
**named** [2] - 6:23, 9:1, 9:5, 9:21, 10:3, 11:21, 20:3, 20:22, 21:1, 29:17, 29:21
**names** [4] - 10:15, 12:2, 12:4, 14:1
**narrowly** [2] - 28:14, 30:14
**narrowly-tailored** [2] -

**NASCIMENTO** [2] - 1:8, 1:12
**Nascimiento** [2] - 19:15, 22:14
**nature** [5] - 9:24, 10:11, 10:12, 18:11, 28:19
**necessarily** [5] - 11:25, 15:10, 15:20, 28:17, 29:9
**need** [5] - 10:2, 12:18, 28:17, 29:7, 30:16
**needs** [3] - 19:22, 22:7, 27:7
**never** [13] - 6:22, 13:13, 13:14, 13:16, 14:17, 15:9, 17:10, 17:13, 19:10, 19:19, 21:7, 22:15, 23:9
**new** [2] - 12:12, 12:13
**New** [1] - 2:11
**next** [1] - 8:19
**NO** [1] - 1:2
**non** [4] - 5:20, 5:21, 21:4, 21:6
**non-existent** [1] - 21:6
**non-existing** [1] - 21:4
**non-moving** [2] - 5:20, 5:21
**none** [1] - 10:4
**note** [1] - 24:9
**noted** [1] - 23:22
**nothing** [5] - 13:20, 15:8, 17:14, 21:1, 24:15
**notice** [2] - 12:16, 13:12
**number** [3] - 3:4, 18:17, 23:15
**nuts** [1] - 10:18
**NY** [1] - 2:11

**O**

**observing** [1] - 3:23
**obviously** [1] - 27:11
**occurred** [2] - 13:15, 32:3
**OF** [1] - 1:1
**office** [1] - 14:21
**officers** [1] - 22:14
**Official** [1] - 2:19
**Omar** [1] - 4:4
**OMAR** [1] - 2:5
**Omar@wolfepincavage.com** [1] - 2:8
**one** [3] - 3:24, 5:13, 7:5, 7:13, 10:17, 10:23, 11:1, 11:2, 11:3, 11:14, 12:13, 15:12, 17:5, 18:18, 21:1, 21:15, 23:8, 26:6, 26:23, 28:5, 28:10, 31:4
**ongoing** [2] - 6:15, 24:3
**onus** [1] - 8:20
**open** [1] - 3:2
**opened** [1] - 26:20

**operated** [1] - 22:15
**operational** [1] - 21:11
**opportunity** [2] - 24:12, 25:17
**opposed** [1] - 21:4
**opposite** [1] - 13:8
**opus** [1] - 27:8
**oral** [1] - 5:2
**order** [3] - 24:7, 27:5, 31:5
**otherwise** [1] - 5:6
**outcome** [1] - 29:8
**outside** [2] - 7:4, 28:6
**oversimplify** [1] - 6:14
**own** [18] - 8:22, 8:23, 10:1, 10:5, 10:11, 12:17, 12:22, 13:3, 13:4, 13:10, 13:14, 14:15, 14:19, 15:7, 17:10, 24:17, 25:23
**owned** [2] - 19:15, 22:15

**P**

**PA** [1] - 2:14
**PAG** [8] - 8:23, 9:10, 9:24, 12:6, 12:18, 13:11, 13:13, 14:15, 15:6, 15:8, 15:13, 16:22, 17:10, 17:12, 24:19, 25:18, 29:1, 30:2
**PAG's** [1] - 13:10
**paid** [1] - 30:7
**pandemic** [2] - 4:23, 32:3
**paragraph** [4] - 10:14, 22:13, 22:19, 31:5
**paragraphs** [2] - 23:22, 29:15
**parole** [1] - 28:11
**part** [3] - 14:16, 15:16, 16:7
**particular** [4] - 5:8, 12:2, 15:2, 18:18
**parties** [6] - 19:5, 19:23, 23:8, 23:12, 23:15, 28:9
**party** [1] - 5:21
**party's** [1] - 5:20
**path** [1] - 5:5
**Patterson** [1] - 2:10
**people** [1] - 18:22
**perhaps** [2] - 4:22, 12:12
**ph** [1] - 9:2
**picture** [1] - 15:24
**PINCAVAGE** [6] - 2:4, 3:19, 19:1, 22:13, 28:24, 31:16
**pincavage** [1] - 28:13
**Pincavage** [6] - 2:5, 3:20, 19:1, 23:10, 23:18, 27:16
**placed** [1] - 14:25
**PLAINTIFF** [1] - 1:21
**plaintiff** [6] - 1:5, 3:7, 3:9, 3:11, 3:14, 3:16
**plan** [1] - 21:8
**pleading** [5] - 5:20, 6:25,

7:16, 12:15, 15:18
**Pleadings** [1] - 4:20
**pleadings** [37] - 5:10, 5:16, 5:18, 5:23, 5:24, 5:25, 6:12, 7:25, 8:9, 10:10, 11:24, 12:3, 12:22, 13:13, 14:2, 14:24, 15:25, 16:7, 16:14, 16:15, 16:25, 17:12, 18:1, 18:10, 18:15, 21:19, 22:3, 22:4, 22:11, 23:7, 24:1, 25:8, 25:13, 26:6, 26:7, 27:2, 31:12
**pleasure** [1] - 8:12
**pled** [6] - 6:8, 8:17, 8:24, 9:7, 9:8, 13:18
**PO** [1] - 2:14
**point** [22] - 8:16, 9:15, 15:1, 15:2, 15:20, 18:1, 18:4, 21:14, 22:2, 22:5, 24:24, 25:9, 25:12, 25:15, 25:19, 25:22, 25:24, 26:2, 26:4, 27:7, 29:14, 30:18
**pointed** [3] - 21:24, 23:21, 29:19
**pointing** [1] - 16:21
**points** [2] - 17:4, 22:25
**policies** [1] - 7:5
**policy** [7] - 6:18, 10:3, 24:20, 25:3, 28:4, 29:11, 30:3
**position** [1] - 6:17
**possibility** [2] - 16:23, 16:24
**possible** [2] - 26:25, 31:6
**posture** [1] - 23:3
**preclude** [1] - 6:12
**premium** [3] - 20:13, 20:24, 30:7
**premiums** [1] - 21:7
**presence** [1] - 26:25
**present** [1] - 2:22
**presumption** [3] - 9:5, 11:20, 11:23
**pretty** [6] - 7:9, 10:23, 19:4, 19:17, 27:25, 28:25
**pretty-distinct** [1] - 19:17
**prevail** [1] - 7:24
**prevent** [1] - 7:2
**problem** [1] - 13:23
**problematic** [1] - 6:19
**procedural** [2] - 7:25, 23:3
**Procedure** [1] - 4:21
**procedure** [1] - 16:12
**proceeding** [1] - 6:2
**proceedings** [4] - 3:2, 18:12, 29:10, 32:7
**process** [1] - 7:11
**prompt** [1] - 27:20
**proper** [1] - 16:16
**prospectively** [1] - 15:4

**Prough** [1] - 2:1
**PROULX** [2] - 2:18, 32:11
**proulx@flsd.uscourts.
gov** [1] - 2:21
**provided** [1] - 11:22
**Publix** [1] - 19:24
**purported** [1] - 6:22
**purposely** [1] - 12:3
**pursuant** [1] - 4:21
**pursue** [2] - 25:23, 25:24
**purview** [1] - 25:14
**put** [4] - 9:24, 10:8, 14:17,
25:25
**putting** [1] - 8:20, 9:2

**Q**

**query** [1] - 25:2
**questions** [1] - 11:19
**quite** [2] - 7:4, 13:7

**R**

**ramp** [1] - 28:15
**ramp-up** [1] - 28:15
**rather** [1] - 21:13
**read** [3] - 5:3, 5:10, 22:2
**reading** [1] - 26:16
**real** [1] - 30:19
**reality** [1] - 7:3
**really** [9] - 5:14, 6:7, 10:10,
11:1, 11:2, 15:12, 16:22,
27:23, 29:4
**reason** [1] - 21:10
**reasons** [1] - 12:4
**received** [1] - 9:22
**recognize** [1] - 19:3
**record** [12] - 3:9, 4:17,
14:16, 17:18, 18:6, 22:19,
22:24, 24:23, 26:8, 26:10,
26:17, 28:16
**refer** [1] - 17:12
**reformation** [8] - 6:3, 6:12,
7:2, 8:5, 10:5, 16:24, 19:4,
27:24
**reinsurance** [1] - 28:3
**rejection** [1] - 20:18
**relationship** [1] - 13:4
**relevancy** [2] - 26:20, 26:22
**relevant** [1] - 9:16
**relief** [3] - 6:1, 7:6, 9:13
**relying** [1] - 31:12
**remaining** [1] - 29:5
**remedy** [4] - 13:5, 13:9,
16:23, 25:24
**remotely** [1] - 32:5
**reply** [1] - 23:20
**report** [1] - 27:21
**REPORTED** [1] - 2:18
**reporter** [1] - 18:20

**reporting** [1] - 32:5
**represent** [1] - 3:21
**representing** [1] - 4:12
**request** [1] - 29:17
**requested** [3] - 11:21,
16:24, 25:3
**reread** [1] - 26:6
**reservation** [1] - 30:21
**resolved** [1] - 30:24
**response** [1] - 17:3
**responsibility** [1] - 16:7
**responsible** [1] - 13:16
**rest** [1] - 31:14
**result** [2] - 17:22, 25:10
**resulted** [1] - 6:18
**retrospect** [1] - 12:11
**retrospective** [1] - 25:11
**reveal** [1] - 5:24
**rightfully** [1] - 12:8
**rightly** [1] - 10:10
**rights** [1] - 30:21
**ringer** [1] - 25:25
**risk** [3] - 20:12, 20:23, 21:2
**rjurman@hinshawlaw.
com** [1] - 1:24
**RODIMUSHKIN** [2] - 1:9,
2:16
**Rodimushkin** [1] - 4:14
**Rodolfo** [1] - 2:19
**RODOLFO** [1] - 1:18
**Rory** [1] - 3:11
**RORY** [1] - 1:21
**RPR** [2] - 2:18, 32:11
**RUIZ** [1] - 1:18
**Ruiz** [2] - 2:19, 3:4
**rule** [3] - 16:3, 21:22, 24:4
**Rules** [1] - 4:21
**running** [1] - 16:18
**runs** [1] - 27:1

**S**

**safe** [3] - 8:7, 31:14, 31:18
**satisfied** [1] - 30:12
**saw** [1] - 16:19
**scale** [1] - 16:11
**scheduling** [1] - 27:21
**scope** [2] - 27:23, 30:17
**screens** [1] - 18:4
**scrivener** [1] - 10:22
**scrivener's** [3] - 6:4, 12:10,
18:2
**search** [1] - 24:23
**second** [6] - 8:25, 12:9,
13:11, 15:6, 17:25, 27:4
**seconds** [1] - 17:7
**secure** [1] - 8:7
**see** [6] - 8:9, 12:4, 15:18,
16:8, 16:10, 26:24
**seeing** [2] - 4:22, 5:5

**sense** [2] - 27:21, 28:13
**served** [1] - 22:5
**services** [1] - 13:10
**Services** [6] - 8:23, 9:10,
12:18, 13:11, 14:16, 30:3
**set** [1] - 27:12
**several** [1] - 29:23
**Shamaa** [1] - 4:5
**SHAMAA** [2] - 2:5, 4:4
**shared** [1] - 22:25
**short** [2] - 17:1, 22:11
**shown** [1] - 19:7
**shy** [1] - 16:6
**side** [6] - 4:2, 13:6, 17:5,
18:16, 18:18, 23:14
**sides** [3] - 19:8, 26:14, 31:4
**signed** [1] - 30:1
**silence** [1] - 23:18
**similarity** [1] - 26:22
**simple** [2] - 10:13, 20:4
**simply** [1] - 29:7
**single** [2] - 14:25, 25:8
**sins** [1] - 15:8
**sit** [2] - 27:3, 31:4
**slightly** [1] - 16:12
**small** [1] - 21:17
**smoke** [1] - 18:4
**snafu** [1] - 13:23
**snookered** [1] - 24:20
**solely** [1] - 17:12
**someone** [2] - 5:18, 23:10
**sometimes** [2] - 4:24, 31:10
**somewhat** [1] - 15:23
**soon** [1] - 31:6
**sorry** [1] - 10:7
**sort** [2] - 12:7, 27:8
**sorts** [1] - 20:25
**sought** [1] - 20:16
**SOUTHERN** [1] - 1:1
**spaces** [1] - 15:15
**spar** [1] - 21:21
**SPECIALITY** [3] - 1:4, 1:14,
1:22
**Specialty** [2] - 3:5, 4:19
**specifically** [1] - 20:16
**spelled** [1] - 25:18
**spoken** [1] - 23:19
**stage** [1] - 26:15
**standard** [8] - 6:25, 11:23,
15:18, 21:22, 25:20, 26:8,
26:15, 27:1
**starts** [1] - 16:15
**state** [2] - 18:20, 28:18
**state-of-mind** [1] - 28:18
**statement** [1] - 30:2
**STATES** [2] - 1:1, 1:19
**stay** [1] - 31:18
**Ste** [2] - 1:23, 2:6
**Stenographer** [1] - 2:19

**step** [1] - 11:9
**strong** [1] - 11:22
**structured** [1] - 21:19
**subject** [2] - 29:25, 32:4
**subpoenas** [1] - 29:1
**sued** [1] - 29:6
**Suite** [1] - 2:2
**summary** [4] - 11:25, 16:4,
22:9, 28:16
**SunBiz** [1] - 19:13
**SUPPLY** [7] - 1:6, 1:7, 1:8,
1:12, 2:5, 2:14, 2:15
**Supply** [11] - 3:6, 3:7, 4:12,
4:13, 10:17, 10:25, 11:2,
20:8, 21:11, 30:2, 30:8
**supply"** [1] - 11:3
**supports** [1] - 24:16
**Supreme** [2] - 9:3, 25:19
**Surgical** [22] - 3:6, 8:4,
9:20, 10:4, 10:16, 10:17,
11:2, 11:21, 19:10, 19:15,
20:8, 21:11, 22:16, 22:21,
29:20, 30:2, 30:8
**surgical** [1] - 12:24
**SURGICAL** [4] - 1:6, 1:7,
1:12, 2:5
**survive** [1] - 27:17
**SW** [1] - 2:6
**swapped** [1] - 10:22

**T**

**tailored** [3] - 28:14, 28:21,
30:14
**talks** [1] - 9:4
**Tampa** [1] - 2:15
**tantamount** [1] - 6:5
**team** [2] - 23:11, 23:19
**technological** [1] - 32:4
**TELEPHONIC** [1] - 1:17
**ten** [1] - 17:7
**term** [1] - 10:23
**THE** [22] - 1:1, 1:18, 1:21,
2:4, 2:9, 2:13, 3:3, 3:13,
3:17, 3:24, 4:2, 4:10, 4:15,
10:7, 13:21, 15:10, 18:8,
21:14, 22:23, 26:4, 30:10,
31:18
**themselves** [1] - 3:12
**theories** [1] - 27:15
**theory** [4] - 6:2, 7:17, 11:6,
14:7
**therefore** [1] - 32:4
**Thereupon** [1] - 31:21
**Third** [1] - 20:1
**Thomas** [1] - 4:14
**THOMAS** [2] - 1:10, 2:17
**three** [1] - 11:12
**throw** [1] - 25:21
**thrusts** [1] - 5:13

**tilt** [1] - 16:11
**TIMOTHY** [1] - 2:9
**Timothy** [1] - 4:9
**title** [1] - 29:25
**today** [7] - 3:23, 4:18, 23:22, 28:6, 28:14, 30:24, 31:9
**together** [1] - 11:13
**Tolden** [1] - 9:2
**tough** [3] - 11:15, 15:11, 26:19
**towards** [1] - 19:18
**transcription** [1] - 32:7
**trial** [1] - 19:23
**true** [1] - 5:19
**try** [3] - 23:24, 24:4, 31:5
**trying** [3] - 15:14, 17:22, 26:17
**tunnel** [1] - 31:1
**turn** [6] - 8:10, 17:5, 18:16, 18:23, 24:8, 27:10
**turning** [1] - 15:23
**turns** [1] - 15:13
**twaters@pbwt.com** [1] - 2:12
**twice** [1] - 29:19
**two** [1] - 30:5
**TYLER** [2] - 1:9, 2:15
**Tyler** [2] - 2:10, 4:13
**type** [4] - 6:4, 20:11, 28:5, 30:25
**types** [2] - 4:25, 20:21
**typographical** [1] - 20:6

## U

**U.S** [2] - 2:10, 4:8
**ultimately** [1] - 27:11
**unclean** [1] - 13:6
**under** [6] - 11:20, 11:23, 21:22, 29:10, 30:21
**underlying** [3] - 3:22, 6:16, 6:23
**underwriting** [2] - 7:11, 20:9
**undisputed** [3] - 6:11, 7:18, 8:4
**unfortunately** [1] - 14:21
**unilateral** [1] - 17:21
**uninsured** [1] - 20:18
**unique** [1] - 16:12
**UNITED** [2] - 1:1, 1:19
**up** [5] - 3:4, 11:15, 12:16, 23:22, 28:15
**US** [1] - 1:9
**USG** [5] - 10:2, 13:14, 14:18, 29:1

## V

**valuable** [1] - 24:2
**vehicle** [3] - 7:25, 16:12, 16:16
**vergence** [1] - 5:23
**versus** [3] - 3:5, 3:7, 19:24
**viability** [1] - 5:9
**viewing** [1] - 5:21
**vs** [2] - 1:5, 1:14

## W

**wait** [1] - 12:9
**Wait** [1] - 20:19
**Walnut** [1] - 2:2
**wants** [3] - 9:6, 18:18, 18:23
**warrant** [1] - 9:1
**wary** [1] - 28:8
**WATERS** [1] - 2:9
**Waters** [1] - 4:9
**wcm@morisonprough.law** [1] - 2:3
**Webb** [1] - 2:10
**WHICH** [1] - 2:14
**white** [2] - 15:24, 16:14
**whole** [4] - 13:1, 13:23, 14:1, 23:19
**WILLIAM** [1] - 2:1
**William** [1] - 3:14
**windfall** [1] - 25:10
**window** [1] - 30:15
**wish** [1] - 20:19
**Wolfe** [1] - 2:5
**wonder** [1] - 10:20
**word** [3] - 11:3, 21:1
**wrap** [1] - 23:22
**written** [5] - 7:5, 8:3, 28:9, 31:12
**wrote** [1] - 30:10

## X

**XS** [5] - 1:8, 2:14, 2:15, 4:12, 4:13

## Y

**year** [2] - 13:19, 25:25
**York** [1] - 2:11
**yourself** [1] - 7:17
**yourselves** [1] - 31:9

## Z

**zero** [4] - 12:5, 17:18, 24:16, 24:22