**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION**

CASE NO: 20-cv-61483-RAR

HALLMARK SPECIALTY INSURANCE
COMPANY,

    Plaintiff,

v.

LION HEART SURGICAL SUPPLY LLC, LION HEART SURGICAL SUPPLY CORP., FABIAN CONDE, JANAINA D. NASCIMENTO, JOHNSON & JOHNSON, ETHICON, INC. AND ETHICON, US, LLC, XS SUPPLY, LLC, JON M. BIRD, TYLER BERGER, IVAN RODIMUSHKIN, DAVID W. LONGDUE III, and BRENDAN THOMAS

    Defendants,

*and*

LION HEART SURGICAL SUPPLY CORP., FABIAN CONDE, JANAINA D. NASCIMENTO,

    Counter-Plaintiffs,

v.

HALLMARK SPECIALTY INSURANCE COMPANY

    Counter-Defendant.

_____/

**DEFENDANTS/COUNTER-PLAINTIFFS' RESPONSE TO HALLMARK SPECIALTY INSURANCE COMPANY'S STATEMENT OF MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY FINAL JUDGMENT AND DEFENDANTS/COUNTER-PLAINTIFFS'
<u>STATEMENT OF ADDITIONAL MATERIAL FACTS</u>**

Pursuant to Fed. R. Civ. P. 56 and S.D. Fla. L.R. 56.1, Defendants/Counter-Plaintiffs Lion Heart Surgical Supply LLC, Lion Heart Surgical Supply Corp., Fabian Conde, and Janaina D. Nascimento (collectively, the "LH Defendants") respond to Hallmark Specialty Insurance Company's Statement of Material Facts [D.E. 79]:

1. Undisputed.

2. Undisputed.

3. Undisputed that USG Insurance Services, Inc. ("USG") was the producer and underwriter for Hallmark regarding the commercial general liability policy at issue, but it also acted as a wholesale broker through a contract with PAG Insurance Services, Inc. ("PAG") and a contract with Hallmark. Ex. 1, USG/Hallmark Contract; Ex. 2, USG/PAG Contract.

4. Disputed. PAG's commercial accounts manager, Maggy Sosa, called Eric Pray, the USG underwriter handling Lion Heart Surgical Supply Corp.'s request for insurance, and instructed him that the named insured on the policy should be Lion Heart Surgical *Supply* Corp. Ex. 3, Sosa Dep., at 24:24-25; 41:21-25, 42:1-17; 53:22-25, 54:1-7; 59:12-24, 82:18-22; 83:1-11.

5. Disputed. PAG's commercial accounts manager, Maggy Sosa, called Hallmark's underwriter, Eric Pray, after initially sending the email to name Lion Heart Surgical Equipment, Corp. and instructed USG to change the named insured to Lion Heart Surgical Supply Corp. *Id.*

6. Disputed. Hallmark failed to cite to any record evidence to support its alleged undisputed material fact in violation of Local Rule 56.1. The court should thus strike paragraph six of Hallmark's statement. *See* S.D. Fla. L.R. 56.(d) ("if a party files and serves any Statement of Material Facts that does not comply with this rule, then the Court may strike the statement…"). PAG instructed USG to correct the named insured from Lion Heart Surgical *Equipment* Corp. to Lion Heart Surgical *Supply* Corp. Ex. 3 at 24:24-25; 41:21-25, 42:1-17; 53:22-25, 54:1-7; 59:12-24, 82:18-22; 83:1-11.

7. Disputed. Lion Heart Surgical Supply Corp.'s officer, Fabian Conde, signed insurance applications listing the correct named insured – Lion Heart Surgical Supply Corp. Those signed insurance applications, surplus lines disclosure, and terrorism insurance waiver, all identified Lion Heart Surgical Supply Corp. as the named insured and were emailed to Eric Pray at USG.  D.E. 79-1 at 83:20-25, 84:1-17; Ex. 4, Commercial Insurance Application; Ex. 5, Surplus Lines Disclosure; Ex. 6, Terrorism Insurance Waiver.

8. Disputed. Although it is undisputed that USG bound coverage for Lion Heart Surgical Equipment Corp., this was a mistake, as the LH Defendants would not have bound coverage for a non-existent company. They signed an application naming Lion Heart Surgical Supply Corp. as the named insured, and Maggy Sosa at PAG called Eric Pray at USG to tell him that the named insured should read Lion Heart Surgical Supply Corp. Ex. 3 at 24:24-25; 41:21-25, 42:1-17; 53:22-25, 54:1-7; 59:12-24, 82:18-22; 83:1-11; Exs. 4 – 6.

9. Disputed. Although PAG's email instructed USG to amend the named insured to Lion Heart Surgical Equipment Corp., the subject line of the email correctly refers to "Lion Heart Surgical Supply Corp. Binder" and attached the "Lion Heart Surgical Supply Corp. App," which included a surplus lines disclosure and notice of terrorism insurance coverage listing Lion Heart Surgical Supply Corp. as the named insured. Ex. 7.  Moreover, PAG subsequently instructed USG to name Lion Heart Surgical Supply Corp. as the named insured. Ex. 3 at 24:24-25; 41:21-25, 42:1-17; 53:22-25, 54:1-7; 59:12-24, 82:18-22; 83:1-11.

10. Disputed. The check sent by PAG to USG identified "Lion Heart Surgical Equipment" on the memo line, but the check could not be sent on behalf of an entity that never existed. Moreover, the check sent to PAG came from an account bearing the name Lion Heart Surgical Supply. Ex. 8.

11. Disputed. USG made a mistake in binding coverage for Lion Heart Surgical Equipment Corp. – which never existed. Hallmark's agent and underwriter testified that it would not purposely bind coverage for a company that does not exist and would not put any coverage into effect for a business that does not exist. D.E. 79-2 at 64:21-25, 65:1-5 (Q: Would USG purposefully bind coverage for a company that doesn't exist. A: We would not. No, we wouldn't put any coverage into effect for a business that doesn't exist."). In addition, PAG's commercial accounts manager, Maggy Sosa, testified that she called Eric Pray at USG and instructed him that the named insured should be Lion Heart Surgical *Supply* Corp. Ex. 3 at 24:24-25; 41:21-25, 42:1-17; 53:22-25, 54:1-7; 59:12-24, 82:18-22; 83:1-11

12. Disputed. Hallmark's record citation does not support its alleged undisputed fact. Conde testified that he did not have any evidence that someone (other an PAG) did not follow his instructions. This statement does not erase the clear mistakes committed by Hallmark and its agent USG. Hallmark made a mistake by issuing the policy to Lion Heart Surgical Equipment Corp. – which never existed. Hallmark's agent and underwriter admitted that it would not purposefully bind coverage for a company that doesn't exist and wouldn't put any coverage into effect for a business that doesn't exist. D.E. 79-2 at 64:21-25, 65:1-5. Hallmark and USG were in possession of the LH Defendants' insurance applications that listed the correct entity – Lion Heart Surgical Supply Corp. Ex. 4 – 6. Hallmark and USG also did not verify whether Lion Heart Surgical Equipment Corp. even existed. Ex. 9, Pondrom Dep. at 76:6-14. PAG also instructed Hallmark's underwriter, USG, to identify Lion Heart Surgical Supply Corp. as the named insured. Ex. 3 at 41:21-25, 42:1-17; 53:22-25, 54:1-7; 59:12-24, 82:18-22; 83:1-11.

13. Disputed. Hallmark's record citations do not support its alleged undisputed fact. Conde testified that Hallmark also made a mistake in issuing the Policy despite having evidence of the correct named insured – Lion Heart Surgical Supply Corp. D.E. 79-1 at 83:20-25, 84:1-17.

4

Hallmark and USG also made a mistake by issuing the policy to Lion Heart Surgical Equipment Corp.– which never existed. Hallmark's agent and underwriter admitted that it would not purposefully bind coverage for a company that doesn't exist and wouldn't put any coverage into effect for a business that doesn't exist. D.E. 79-2 at 64:21-25, 65:1-5. Hallmark and USG also did not verify whether Lion Heart Surgical Equipment Corp. even existed. Ex. 9 at 76:6-14. PAG also instructed Hallmark's underwriter, USG, to name Lion Heart Surgical Supply Corp. as the named insured. Ex. 3 at 41:21-25, 42:1-17; 53:22-25, 54:1-7; 59:12-24, 82:18-22; 83:1-11. Conde signed insurance applications listing the correct named insured – Lion Heart Surgical Supply Corp. Those signed insurance applications, surplus lines disclosure, and terrorism insurance waiver, all identified Lion Heart Surgical Supply Corp. as the named insured. Ex. 4 – 6. Conde also instructed PAG to name Lion Heart Surgical Supply Corp. as the named insured multiple times. Ex. 10 – 11.[1]

      14.    Disputed. PAG instructed Hallmark's underwriter, USG, to identify Lion Heart Surgical Supply Corp. as the named insured on August 23, 2018, after initially sending an email to name Lion Heart Surgical Equipment, Corp. Ex. 3 at 41:21-25, 42:1-17; 53:22-25, 54:1-7; 59:12-24, 82:18-22; 83:1-11.

      15.    Disputed. PAG instructed Hallmark's underwriter, USG, to identify Lion Heart Surgical Supply Corp. as the named insured. Ex. 3 at 41:21-25, 42:1-17; 53:22-25, 54:1-7; 59:12-24, 82:18-22; 83:1-11.

      16.    Disputed. Whether USG received a copy of the certificate of insurance would not be known to Hallmark, despite their agency relationship, and the affidavit of Hallmark's Fed. R. Civ. P. 30(b)(6) representative would not be dispositive of this alleged fact.

      17.    Undisputed.

---

[1] Exs. 10 & 11 are composite exhibits with certified translations of the emails.

18. Disputed. While the policy incorrectly designates Lion Heart Surgical Equipment Corp. as the named insured on the declaration page, the policy also covers the executive officers of the named insured, including Conde and Nascimento. D.E. 79-3, the Hallmark Policy.

19. Undisputed.

20. Disputed. While the Policy identifies Lion Heart Surgical Equipment Corp. as the named insured, the LH Defendants have consistently asserted that the Policy was mistakenly issued to a non-existent entity, Lion Heart Surgical Equipment Corp., and that Lion Heart Surgical *Supply Corp.* was the intended named insured on the Hallmark Policy. At all times, the LH Defendants intended to insure Lion Heart Surgical Supply Corp. Ex. 3 at 41:21-25, 42:1-17; 53:22-25, 54:1-7; 59:12-24, 82:18-22; 83:1-11; Ex. 4, 5, 6, 8, 10, 11; D.E. 79-1 at 20:14-19, 30:7-11, 40:20-23, 51:10-16, 119:4-10; D.E. 49 at ¶¶ 9,14, 20.

21. Disputed. The LH Defendants did not contest the accuracy of the Hallmark Policy but contest that Lion Heart Surgical Equipment Corp. is the correct named insured. D.E. 49 at ¶¶ 9,14, 20.

22. Undisputed. The underlying complaint speaks for itself.

23. Undisputed. The underlying complaint speaks for itself.

24. Disputed. While the Policy identifies Lion Heart Surgical Equipment Corp. as the named insured, the LH Defendants have consistently asserted that the Policy was mistakenly issued to a non-existent entity, Lion Heart Surgical Equipment Corp., and that Lion Heart Surgical *Supply Corp.* was the intended named insured on the Hallmark Policy. At all times, the LH Defendants intended to insure Lion Heart Surgical Supply Corp. Ex. 3 at 41:21-25, 42:1-17; 53:22-25, 54:1-7; 59:12-24, 82:18-22; 83:1-11; Ex. 4, 5, 6, 8, 10, 11; D.E. 79-1 at 20:14-19, 30:7-11, 40:20-23, 51:10-16, 119:4-10; D.E. 49 at ¶¶ 9,14, 20.

25. Undisputed.

26. Undisputed. The LH Defendants state, however, that Lion Heart Surgical Equipment Corp. is a non-existent entity that was never formed, never conducted business, and never came into existence, and, thus, cannot be a named party to the Underlying Action. D.E. 79-1 at 21:22-25, 22:1-10.

27. Undisputed.

28. Disputed. While the Policy identifies Lion Heart Surgical Equipment Corp. as the named insured, the LH Defendants have consistently asserted that the Policy was mistakenly issued to a non-existent entity, Lion Heart Surgical Equipment Corp., and that Lion Heart Surgical *Supply Corp.* was the intended named insured on the Hallmark Policy. At all times, the LH Defendants intended to insure Lion Heart Surgical Supply Corp. Ex. 3 at 41:21-25, 42:1-17; 53:22-25, 54:1-7; 59:12-24, 82:18-22; 83:1-11; Ex. 4, 5, 6, 8, 10, 11; D.E. 79-1 at 20:14-19, 30:7-11, 40:20-23, 51:10-16, 119:4-10; D.E. 49 at ¶¶ 9,14, 20.

29. Undisputed.

30. Undisputed.

31. Undisputed. Lion Heart Surgical Supply, LLC was converted to Lion Heart Surgical Supply Corp. on July 10, 2018 – before the Policy incepted. Ex. 12.

32. Disputed. Hallmark has not asked the Court to issue a declaration regarding the Policy's Criminal Acts exclusion and never pled this exclusion in its Amended Complaint or its Affirmative Defenses. D.E. 41 & 59. Accordingly, this exclusion is not properly before the Court. In addition, Nascimento did not plead guilty to the exact "acts and transactions" at issue in the Underlying Action. Compare D.E. 79-6 (Information against Nascimento) with D.E. 41-1 (the Second Amended Complaint in the Underlying Action). Moreover, Nascimento pled guilty to crimes committed in connection Lion Heart Surgical Supply, LLC – a predecessor entity that is not an insured under the Policy. D.E. 79 at ¶ 29.

7

33. Disputed. Hallmark has not asked the Court to issue a declaration regarding the Policy's Criminal Acts exclusion and never pled this exclusion in its Amended Complaint or its Affirmative Defenses. D.E. 41 & 59. Accordingly, this exclusion is not properly before the Court and any "facts" related to Nascimento's criminal charges are not material and have no bearing on whether there is insurance coverage for Lion Heart Surgical Supply Corp., Fabian Conde, and Janaina Nascimento under the Policy issued by Hallmark.

34. Disputed. Hallmark has not asked the Court to issue a declaration regarding the Policy's Criminal Acts exclusion and never pled this exclusion in its Amended Complaint or its Affirmative Defenses. D.E. 41 & 59. Accordingly, this exclusion is not properly before the Court and any "facts" related to Nascimento's criminal charges are not material and have no bearing on whether there is insurance coverage for Lion Heart Surgical Supply Corp., Fabian Conde, and Janaina Nascimento under the Policy issued by Hallmark.

35. Disputed. Hallmark has not asked the Court to issue a declaration regarding the Policy's Criminal Acts exclusion and never pled this exclusion in its Amended Complaint or its Affirmative Defenses. D.E. 41 & 59. Accordingly, this exclusion is not properly before the Court. In addition, Nascimento did not plead guilty to the exact "acts and transactions" at issue in the Underlying Action. Compare D.E. 79-6 with D.E. 41-1. Moreover, Nascimento pled guilty to crimes committed in connection with Lion Heart Surgical Supply, LLC – a predecessor entity that is not an insured under the Policy. D.E. 79 at ¶ 29.

36. Disputed. Nascimento only admitted that she operated Lion Heart Surgical Supply, LLC. D.E. 69. There was no finding that she acted on behalf Lion Heart Surgical Supply, LLC. *Id.*

37. Disputed. Hallmark has not asked the Court to issue a declaration regarding the Policy's Criminal Acts exclusion and never pled this exclusion in its Amended Complaint or its Affirmative Defenses. D.E. 41 & 59. Accordingly, this exclusion is not properly before the Court.

In addition, Nascimento did not plead guilty to the exact "acts and transactions" at issue in the Underlying Action. Compare D.E. 79-6 with D.E. 41-1. Moreover, Nascimento pled guilty to crimes committed in connection with Lion Heart Surgical Supply, LLC – a predecessor entity that is not an insured under the Policy. D.E. 79 at ¶ 29.

      38.      Disputed. It is undisputed that Nascimento paid restitution, but the LH Defendants dispute the materiality of this fact. Hallmark has not asked the Court to issue a declaration regarding the Policy's Criminal Acts exclusion and never pled this exclusion in its Amended Complaint or its Affirmative Defenses. D.E. 41 & 59. Accordingly, this exclusion is not properly before the Court and any "facts" related to Nascimento's criminal charges are not material and have no bearing on whether there is insurance coverage for Lion Heart Surgical Supply Corp., Fabian Conde, and Janaina Nascimento under the Policy issued by Hallmark.

## DEFENDANTS/COUNTER-PLAINTIFFS' STATEMENT OF ADDITIONAL MATERIAL FACTS

39. USG is an insurance wholesale broker or broker that acts as the "middleman between retail agents and the insurance carrier themselves." D.E. 79-2 at 12:5-8.

40. USG also performs underwriting tasks including reviewing information that is submitted to USG, developing the premium necessary to cover expenses, and producing a binder/policy once an insured (through its retail agent) chooses to do so. *Id.* at 13:10-21.

41. USG acted as the underwriter on behalf of Hallmark dealing with the LH Defendants' agent, PAG, relating to the Policy at issue. *Id.* at 14:24-25, 15:1-8.

42. PAG and USG operate under a "Preferred Limited Producers Agreement," which sets forth the terms by which USG and PAG interact with each other. Ex. 2; D.E. 79-2 at 16:22-25, 17:1-8, 70:1-8.

43. USG is Hallmark's agent pursuant to the contract dated May 7, 2018, which sets forth USG's authority to act on behalf of Hallmark. Ex. 1; D.E. 79-2 at 14:24-25, 15:1-2.

44. Pursuant to the USG/Hallmark Contract, Section I – Authority of the Agent, USG is permitted to "solicit to solicit, receive, and transmit to the manager [Hallmark Specialty Underwriters, Inc.] proposals for insurance contracts for those lines of business and up to the maximum limits of coverage specified in Schedule A of this agreement." Ex. 1 at Section 1(A).

45. Pursuant to this section, USG would "receive applications of insurance from a retail agent or agency, underwrite it and then transmit it to Hallmark once coverage has gone into effect." D.E. 79-2 at 23:23-24, 24:1-11.

46. USG does not have to contact Hallmark in order to get approval to bind coverage if the applicant seeks coverage that falls within the scope of USG's authority under the USG/Hallmark Contract and within Hallmark's underwriting guidelines for the type of risk presented. *Id.* at 24:12-25, 25:1-10.

47. USG also has access to Hallmark's internal systems to rate risk and determine premiums and can create documents bearing Hallmark's logo, such as the Proposal for Business Insurance that USG created for this risk. *Id.* at 43:23-25, 44:1-12; Ex. 13, Proposal for Business Insurance.

48. The following information was used by USG (through Hallmark's rating system) to determine the premium to charge when it wrote the risk for the Policy at issue. D.E. 79-2 at 44:17-25, 45:1-7.

   a. The classification number. USG used one classification because the applicant only did one type of business activity. *Id.* at 45:15-25, 46:1-16.
   b. The class code. USG determined the class code as "16750 Internet Retailers." *Id.* at 47:21-25, 48:1-8.
   c. The physical address and county where the risk is located. *Id.* at 47:9-20.
   d. The premium basis or exposure. USG used the applicant's gross sales of $500,000. *Id.* at 48:9-11.
   e. The premium/operations rate. USG assigned a rate of .71 using Hallmark's HSU rating system. *Id.* at 48:12-20.

49. USG is also authorized to "amend, delete, or make adjustment in coverage for inforce (sic) policies." Ex. 1 at Section I(C).

50. USG has Hallmark's authority to change the name of the named insured, and this is the type of amendment that USG can make without Hallmark's approval. D.E. 79-2 at 25:11-16, 26:21:25, 27:11-22.

51. USG admitted that a one-word difference between Lion Heart Surgical *Supply* Corp. and Lion Heart Surgical *Equipment* Corp. would not affect the policy or premium. *Id.* at 50:10-21, 52:19-24, 53:13-21, 58:9-21.

52. USG also admitted that it could change the named insured from Lion Heart Surgical *Equipment* Corp. to Lion Heart Surgical *Supply* Corp. without any change associated with the premium. *Id.* at 58:9-21.

53. USG admitted that the name of the named insured does not impact Hallmark's rating or premium. Ex. 14, Hallmark Underwriting Guidelines; D.E. 79-2 at 52:19-24.

54. Hallmark admitted that the named insured entered into Hallmark's rating portal for classification 16750 internet retailers is "totally irrelevant to the premium calculation." Ex. 9 at 46:9-18.

55. Hallmark did nothing relating to the issuance of the policy at issue, as USG made all decisions regarding the policy on behalf of Hallmark. *Id.* at 33:3-22.

56. Hallmark does not know whether Lion Heart Surgical Equipment Corp. actually existed, and Hallmark does not want to know whether a named insured even exists prior to issuing a policy. *Id.* at 74:8-15.

57. On August 22, 2018, at 9:33 a.m., PAG emailed USG requesting a quote for commercial general liability insurance. The email attached two applications named Lion Heart Revised Accord 125 and Lion Heart Surgical Supply Accord 126. Ex. 15.

58. The application two different named insureds: Lion Heart Surgical Supply LLC on the general liability section and Lion Heart Surgical Equipment Corp. on the commercial property section. *Id*.

59. After receiving PAG's email and the unsigned application, Eric Pray, an underwriter at USG, forwarded the application to USG's submissions department on August 22, 2018, at 11:46 a.m., where a USG employee manually typed in the name and address, and returned the file to Mr. Pray. D.E. 79-2 at 34:13-25, 35:1-11; Ex. 15.

60. On August 22, 2018, at 1:59 p.m., USG emailed a General Liability Quote, a Broker Agent Summary, Statement of Diligent Effort, and Florida Surplus Lines Disclosure back to PAG. Ex. 16.

61. Even though the commercial general liability section listed "Lion Heart Surgical Supply" as the proposed named insured, USG's processing center incorrectly typed the named insured as Lion Heart Surgical Equipment, LLC. *Id.*; D.E. 79-1 at 39:1-19.

62. On August 22, 2018, PAG emailed Lion Heart Surgical Supply Corp.'s officer, Conde, a summary of insurance coverage with the subject line "Lion Heart Surgical Equipment, LLC." Ex. 10

63. Conde responded on August 23, 2018, at 1:14 p.m. and instructed PAG to correct the policy to reflect "LION HEART SURGICAL SUPPLY CORP." as the named insured and to confirm it would not affect the LH Defendants' other insurance policies. *Id.*

64. Sosa confirmed it would not and advised Conde to sign the documents and PAG will correct the name afterward. *Id.*

65. That same day, Conde executed a completed commercial insurance application, a surplus lines disclosure and acknowledgment, and policyholder disclosure notice of terrorism insurance coverage which listed Lion Heart Surgical Supply Corp. as the named insured in the commercial property section and commercial general liability section. Ex. 4 – 6.

66. These documents were filled out by Sosa for Conde to sign. Ex. 3 at 79:10-13, 81:5-8.

67. PAG then emailed Conde at 3:12 p.m. asking him to confirm the name of the named insured. Ex. 10.

68. Conde responded three minutes later at 3:15 p.m. and confirmed the named insured as: LION HEART SURGICAL SUPPLY CORP. Ex. 11 (emphasis in the original).

69. Unbeknownst to the LH Defendants, PAG emailed USG at 4:17 p.m. with the subject line "Lion Heart Surgical Corp Binder 8/23/2018" and attached the "Lion Heart Surgical

13

Supply Corp. Bind[er] App[lication]." However, the body of the email stated the named insured should be: Lion Heart Surgical Equipment Corp. D.E. 41-3.

70. Sosa called USG's underwriter (Eric Pray) later that day and instructed him to change the named insured to Lion Heart Surgical Supply Corp. Ex. 3 at 41:21-25, 42:1-17; 53:22-25, 54:1-7; 59:12-24, 82:18-22; 83:1-11.

71. Although USG's representative, Randy Stockburger, was not personally involved in issuing this Policy, he testified that he has spoken to Sosa, "well over 100 times." D.E. 79-2 at 15:3-12.

72. Sosa testified that she had developed a rapport with Pray after working with him at a prior job and called him frequently. Ex. 3 at 42:20-25, 43:1-19.

73. On August 30, 2018, PAG sent Conde a certificate of insurance listing Lion Heart Surgical Supply Corp. as the named insured. Ex. 17.

74. Conde reasonably believed that the named insured was corrected, and commercial general liability insurance had been issued to Lion Heart Surgical Supply Corp, as he requested. D.E. 79-1 at 37:25, 38:1-7, 173:7-25, 174:1-8.

75. At no point did the LH Defendants ever use the word "equipment" or contemplate using "equipment" as part of the company name. D.E. 79-1 at 33:9-13, 35:19-25, 36:1-11.

        Respectfully submitted,

        **WOLFE | PINCAVAGE**
        2937 SW 27th Avenue, Suite 302
        Miami, FL 33133
        Office: 786.409.0800

By:  /s/ Danya J. Pincavage, Esq.
      Danya J. Pincavage
      Fla. Bar No.: 14616
      danya@wolfepincavage.com
      Omar Ali-Shamaa
      Fla. Bar No.: 121461
      omar@wolfepincavage.com

      *Attorneys for Lion Heart Surgical Supply, LLC, Lion Heart Surgical Supply Corp., Fabian Conde and Janaina D. Nascimento*

### CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that on this 13th day of April 2021, the foregoing was filed with the Court's CM/ECF system, which will send notice to the parties in this ligation *via* Email as follows:

| | |
|---|---|
| Rory Eric Jurman, Esq.<br>Hinshaw & Culbertson LLP<br>One East Broward Blvd, Suite 1010<br>Ft. Lauderdale, FL 33301<br>rjurman@hinshawlaw.com<br><br>*and*<br><br>William C. Morison<br>wcm@morisonprough.law<br>Morison & Prough, LLP<br>2540 Camino Diablo, Suite 100<br>Walnut Creek, CA 94597<br>Phone: 925-937-9990<br>Fax: 925-937-3272<br>*Counsel for Hallmark Specialty Insurance Company* | Gus Michael Centrone<br>gcentrone@kmf-law.com<br>James E. Felman<br>jfelman@kmf-law.com<br>Katherine Earle Yanes<br>kyanes@kmf-law.com<br>Kynes Markman & Felman, P.A.<br>PO Box 3396<br>Tampa, FL 333601<br>Phone: 813-229-1118<br>Fax: 813-221-6750<br>*Counsel for Defendant XS Supply, LLC* |
| Alice R. Huneycutt<br>Florida Bar No. 293105<br>STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P. A.<br>SunTrust Financial Centre, Suite 2100 | |

| | |
|---|---|
| 401 E. Jackson Street (33602)<br>Post Office Box 3299<br>Tampa, Florida 33601<br>Telephone: (813) 222-5031<br>Facsimile: (813) 222-5089<br>Primary: ahuneycutt@stearnsweaver.com<br>Secondary: mkish@stearnsweaver.com<br><br>*and*<br><br>Geoffrey Potter<br>(NY Bar No: 2252302)<br>Joshua R. Stein<br>(NY Bar No: 5387394)<br>Jacqueline Lash<br>(NY Bar No: 5534953)<br>PATTERSON BELKNAP WEBB & TYLER LLP<br>1133 Avenue of the Americas<br>New York, NY 10036-6710<br>Telephone: (212) 336-2000<br>Fax: (212) 336-2222<br>gpotter@pbwt.com<br>jstein@pbwt.com<br>jlash@pbwt.com<br><br>*Attorneys for Defendants Johnson & Johnson, Ethicon, Inc., and Ethicon US, LLC* | |

                        By:    /s/ Danya J. Pincavage
                                 Danya J. Pincavage