UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

HALLMARK SPECIALTY INSURANCE
COMPANY,

               Plaintiff,

v.

LION HEART SURGICAL SUPPLY LLC, LION
HEART SURGICAL SUPPLY CORP., FABIAN
CONDE, JANAINA D. NASCIMENTO, JOHNSON
& JOHNSON, ETHICON, INC., ETHICON US, LLC,
XS SUPPLY, LLC, JON M. BIRD, TYLER BERGER,
IVAN RODIMUSHKIN, DAVID W. LONGDUE III,
and BRENDAN THOMAS,

               Defendants.

and

LION HEART SURGICAL SUPPLY CORP.,
FABIAN CONDE, and JANAINA D.
NASCIMENTO,

               Counter-Plaintiffs,

v.

HALLMARK SPECIALTY INSURANCE
COMPANY,

               Counter-Defendant.
_____/

Case No.  20-CIV-61483-RAR

## HALLMARK SPECIALTY INSURANCE COMPANY'S REPLY
## BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

The criminal act exclusion bars coverage for "'Personal and advertising injury' arising out of a criminal act by or at the direction of the insured."   Any *injury* "arising out of" a criminal act is barred from coverage.  Whether that criminal act is committed by one, some, or all of multiple insureds is irrelevant.  If a purported insured commits a criminal act, and the injury arises out of that conduct, there is no coverage for any and all insureds.  There is no dispute that a criminal act occurred.  The underlying action is based on that conduct.  The exclusion applies.  To craft their argument, the

Lion Heart defendants (collectively, "LHSSC") ignore the exclusion's actual language. LHSSC tellingly ignores the Florida case that applied the criminal act exclusion to bar coverage for all insureds. LHSSC's interpretation of the criminal act exclusion fails for multiple reasons: it is based on cases relying on policy language not in Hallmark's policy, cases that did not include language in the Hallmark criminal act exclusion, and cases that did not address and apply language contained in the Hallmark exclusion. Even if any of the Lion Heart defendants was an insured, which they are not, the criminal act exclusion bars all coverage for the underlying action.

Hallmark in its 2020 complaint, 2020 affirmative defenses, and reservation of rights letters provided notice that it would, and did, rely on any exclusion that did or may apply. The act became "criminal" in February 2021. That same month, Hallmark promptly issued related correspondence to LHSSC, as LHSSC admits (ECF No. 86-4). Hallmark never "waived" the criminal act exclusion nor could it as a matter of law. Hallmark properly included the exclusion in its motion for summary judgment.

Reformation is unavailable as a matter of undisputed fact and settled law. In opposition to Hallmark's motion, LHSSC did not present clear and convincing evidence that Hallmark made *any* mistake. Clear and convincing evidence is that which produces in the mind of the trier of fact a firm belief or conviction, without hesitancy, as to the truth of the allegations sought to be established. It is LHSSC's burden to meet that standard in opposition to this motion. It failed to do so.

Hallmark is entitled to summary judgment on all counts against all defendants.

I.      THE CRIMINAL ACTS EXCLUSION APPLIES

        A.  The Exclusion Bars Coverage For ALL Insureds

Hallmark has no obligation to provide a defense or indemnity to any insured for "'Personal and advertising injury' arising out of a criminal act by or at the direction of the insured." LHSSC simply ignores the actual language of the exclusion, most notably the phrase "arising out of". *See Golden Door Jewelry Creations v. Lloyds Underwriters Non-Marine Assn.,* 117 F.3d 1328, 1338 (11th Cir. 1997) ("'An interpretation which gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part… of no effect'"). Contrary to LHSSC's discussion of insuring and exclusionary policy terms, "[e]ven in the exclusionary context, 'arising out of' retains its broad interpretation.'" *Travelers Indem. Co. v. Figg Bridge Engr., Inc.,* 389 F.Supp.3d 1060, 1071 (S.D. Fla. 2019) (see ECF No. 78, at 14-15). "The Florida Supreme Court has held that the words 'arising out of' in an insurance policy are unambiguous and absolute in scope." *Horn v.*

*Liberty Underwriters, Inc.*, 2019 U.S. Dist. LEXIS 90194 (S.D. Fla. May 30, 2019, at 14-15, citing to and following *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So.2d 529, 532-33 (Fla. 2005).

It is (1) any injury (2) "arising out of" a criminal act that is barred from coverage.  Whether that injury is caused by one, some, or all of multiple insureds is beside the point.  If any insured commits a criminal act, and the injury arises out of that conduct, there is no coverage for any purported insured: Nascimento, Conde, LHLLC, LHSSC.  There is no dispute that Nascimento as a principal of LHLLC committed a criminal act (SOF ¶¶ 35-37) or that the underlying action is based on that same conduct (SOF ¶¶ 32-37).  LHSSC argued in the underlying action that such is the case (ECF No. 86-3).  The exclusion applies to bar coverage for all insureds.

LHSSC studiously ignored *Max Specialty Ins. Co. v. A Clear Title and Escrow Exch., LLC*, 114 F.Supp.3d 1191, 1195 (M.D. Fla. 2013) ("*Clear Title*").  That Florida decision barred coverage for all insureds for criminal acts committed by "the Insured."  *Clear Title* also rejected the insured's argument that the insurer waived the criminal acts exclusion.

LHSSC discussed "a", "an", and "the" insured in cases with distinguishable policy language, most from other states.  LHSSC's authorities either did not include the key phrase "arising out of" or the parties and therefore the court did not discuss or apply it.  Cases are not authority for propositions not addressed.  In addition, LHSSC's cases included policy language not present in Hallmark's policy and, therefore, are not relevant to application of the criminal act exclusion in this case.  LHSSC also failed to disclose to the Court cases from the Florida Supreme Court that held "the Insured" applied to all insureds.  *See, e.g.*, *State Farm Mut. Auto. Ins. Co. v. Menendez*, 70 So.3d 566, 570-71 (2011) (auto); *Webb v. Am. Fire & Cas. Co.*, 148 Fla. 714, 717-18 (1941) (auto).  The distinction that LHSSC attempts to draw is overcome in any event by the actual language of the criminal act exclusion in the Hallmark policy.

Even if LHSSC's argument was relevant to the interpretation of the exclusion, which it is not, Nascimento was a member and manager of LHLLC and was sued in that capacity (ECF No. 41-1, ¶ 18; SOF 35, 36).  She operated and controlled LHLLC and her actions are the actions of LHLLC.  Both performed the criminal act to which the exclusion applies.  Even if either or both were insured under the Hallmark policy, each would be "the insured" who and which performed the criminal act.

Perhaps not surprisingly, LHSSC makes inconsistent arguments.  First, LHSSC argues that it is owed insurance coverage because it is the successor of LHLLC.  LHSSC then argues that the criminal acts exclusion cannot apply to LHSSC because LHLLC, not LHSSC, committed the criminal acts.  Even if the argument was relevant to interpretation of the exclusion (which it is not), LHSSC

cannot have it both ways.  As successor to LHLLC, a criminal actor, LHSSC could only be a criminal actor, as is Nascimento.

        B. <u>Lion Heart's "Waiver" Argument Fails</u>

      As a matter of law, Hallmark cannot waive a policy exclusion that bars coverage for the claim. *See EmbroidMe.com, Inc. v. Travelers Prop. Cas. Co. of Am.*, 845 F.3d 1099, 1115 (11th Cir. 2017) ("regardless of whether the insurer has violated the [Claims Administration Statute], this statute cannot be used to 'create or extend coverage' that otherwise does not exist, which is what would happen if the CAS could create coverage in contradiction of an express coverage exclusion").  In any event, Hallmark asserted the following affirmative defenses, among others, against LHSSC's counterclaim (ECF No. 59, at 6):

<u>TWELFTH DEFENSE</u>

      The counterclaim, and each cause of action therein, is barred in whole or part by the…exclusions contained in the Hallmark policy.  Counterclaimants' claims against Hallmark are barred in whole or in part on the ground that under the terms and conditions of the Hallmark policy, Hallmark had and has no obligation to pay the defense expenses, costs or indemnity sought in the counterclaim.

<u>SIXTEENTH DEFENSE</u>

      The Hallmark policy contains various exclusions that bar or limit coverage.  Counterclaimants' claims are barred to the extent that they are premised on any or actual or alleged coverage for loss that is subject to an exclusion.

<u>THIRTY-NINTH AFFIRMATIVE DEFENSE</u>

      The counterclaim fails to allege with any particularity the terms, provisions, exclusions, conditions, or limitations allegedly contained in any insurance contract entered into by Hallmark or any other defendant.  Hallmark is therefore unable to set forth all potentially applicable defenses and specifically reserves its rights to later allege any theories and/or additional affirmative defenses, policy defenses and/or applicable policy terms, conditions, limitations or exclusions based on information which may become apparent during the continuing course of discovery or other investigation in this litigation.

      Hallmark sought the Court's adjudication on Hallmark's rights under the Policy, which Hallmark attached, and incorporated in its entirety, as Exhibit B to the complaint.  The criminal act exclusion is set forth in the Policy (ECF No. 41-2 at 24, 94).  Hallmark identified, but did not limit the pleading to, the issue of the identity of any "Insured".  Hallmark included all issues (ECF No. 41, ¶¶ 1, 14, 16, 19, 21, 23, 34, 38, 42).

4

Hallmark, in its complaint, affirmative defenses, and reservation of rights letters, provided notice that it would, and did, rely on all exclusions that did or may apply.  LHSSC was on notice that Hallmark did and would rely on any policy term including, without limitation, any policy exclusion that applied or may apply.  LHSSC did not dispute any of the underlying facts.  Instead, it willfully ignores the actual language of the exclusion, applicable Florida law, and asserts "waiver".  The criminal act exclusion is expressly set forth in the Policy within the coverage section under which LHSSC sought coverage (personal and advertising injury). The assertion that LHSSC was not "on notice" is baseless.

There is no procedural impediment to the Court applying the criminal act exclusion here.  The LHSSC defendants need no discovery on the issue--they committed the act.  The criminal case was based on the same conduct alleged in the underlying action (SOF ¶¶ 32-35; ECF No. 41-1).  LHSSC argued in the underlying action that such is the case (ECF No. 86-3).  The principal pled guilty to those facts (SOF 33, 35, 36).  The criminal act exclusion in the Hallmark policy undoubtedly applies to the underlying action (ECF No. 78 at 13-16; ECF No. 79, ¶¶ 32-38).  If the Court disagrees, Hallmark requests leave to amend or supplement its complaint and answer to allege more specifically the criminal act exclusion on the grounds that those 2021 facts did not exist at the time that Hallmark filed those 2020 pleadings.  The criminal acts exclusion applied when Nascimento pled guilty, as LHSSC admits, in February 2021.  Hallmark promptly sent a supplemental reservation of rights letter on February 23, 2021, as LHSSC admits.

II.     LHSSC OFFERED NO CLEAR AND CONVINCING
        EVIDENCE OF MUTUAL MISTAKE

A.  There Is No Genuine Issue Of Material Fact That
    Could Satisfy The Clear And Convincing Standard

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts…In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial'…Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586-87 (1986) (no genuine issue for trial regarding conspiracy and competitive conduct; court may not infer states of mind).

"The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no

*genuine* issue of *material* fact.' *Anderson v. Liberty Lobby, Inc*., 47 U.S. 242, 247-48 (1986)…When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S., 372, 380 (2007) (emphasis in original). "Speculation does not create a genuine issue of fact; instead it creates a false issue, the demolition of which is a primary goal of summary judgment." *Cordoba v. Dillards, Inc*., 419 F.3d 1169, 1181 (11th Cir. 2005).

The standard in this case is higher. A "clear and convincing" standard, such as that applicable to reformation based on "mutual mistake", must be applied on summary judgment. *See Anderson v. Liberty Lobby, Inc*., 47 U.S. 242, 244 (1986) ("the determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case. This is true at both the directed verdict and summary judgment stages"). "Clear and convincing evidence is evidence that produces in the mind of the trier of fact a firm belief or conviction, without hesitancy, as to the truth of the allegations sought to be established." *Cincinnati Ins. Co. v. Quorum Mgmt. Corp*., 186 F.Supp.3d 1307, 1326 (M.D. Fla. 2016) ("*Quorum*").

Discovery confirmed what Hallmark alleged in its complaint and in its motion for judgment on the pleadings. PAG authenticated its August 23 e-mail instructing USG to identify "Lion Heart Surgical Equipment Corp." as the "Named Insured" on the Hallmark 2018/2019 policy. PAG testified that it instructed USG on April 23 to identify "Lion Heart Surgical Equipment Corp." as the "Named Insured"; that USG correctly identified LHSEC as the "Named Insured" pursuant to PAG's April 23 e-mail; that PAG understood Lion Heart wanted the name changed from "Lion Heart Equipment, LLC" to "Lion Heart Surgical Equipment Corp."; that PAG claims PAG knew it made a mistake but did not verify the name on the policy nor contact USG (or Hallmark) after receiving a copy of the policy to "correct" the "Named Insured"; that PAG made no note or other entry in its file regarding PAG's "mistake", including that the insured was anyone other than LHSEC; that PAG sent the policies to Lion Heart, which never questioned the "Named Insured" on the policies; and that PAG had no authority to issue the Certificate of Insurance to Lion Heart, which was never sent to USG or Hallmark in any event (ECF No. 85-3 (deposition transcript of PAG representative Maggy Sosa), at 37:13-39:12, 40:23-41:19, 44:25-45:10, 45:11-46:4, 47:2-6, 47:22-49:13, 49:21-50:4, 56:23-57:6, 65:9-66:20, 68:19-69:10, 78:17-22, 82:18-83:3, 83:24-84:13; 85-7; ECF NO. 86 at 8). Any purported communications solely between LHSSC and PAG obviously provide no notice to USG or Hallmark

(e.g., the Certificate of Insurance, any e-mails between them regarding the name of the insured, or any checks from Lion Heart to PAG) (ECF No. 85-3, 56:5-22).

LHSSC testified and admits that PAG instructed USG to identify "Lion Heart Surgical Equipment Corp." as the "Named Insured" (SOF ¶¶ 4, 69). USG, as did PAG, authenticated the April 23 PAG e-mail (ECF No. 41-3; SOF ¶ 4; SOF Exhibit 2 Declaration of Eric Pray ("Pray Decl."), ¶¶ 1-6). LHSSC admitted in its counterclaim that LHSEC was identified on a *signed* application (ECF No. 49 LHSSC counterclaim ¶¶ 4, 15; SOF ¶ 7). Even on the *unsigned* application inexplicably relied on in LHSSC's opposition, PAG identified "Lion Heart Surgical *Equipment* LLC" as the initial named insured (ECF No. 85-15 at 4; ECF No. 86 at 3), prior to submitting the final, signed application.

PAG sent various documents with "Lion Heart Equipment" as well as "Lion Heart Surgical", LLC/Inc./Corp. as the prospective insured, *prior* to PAG's final and definitive August 23 e-mail instructing USG to name LHSEC. Those events only serve to demonstrate why the August 23 e-mail was sent and is dispositive of the issue, as are all the subsequent documented exchanges. If the August 23 e-mail was not definitive, PAG would not have felt the need to create a "phantom" phone call, after more than two years, in the complete absence any evidence whatsoever from anyone.

The recently conjured April 23, 2018 call from PAG to USG, after the instructive e-mail (SOF ¶ 4; ECF No. 86 at 4), is demonstrably an invention. The documentary evidence establishes that no such call was made: PAG's telephone records show no call made by PAG to USG on August 23, 2018, and no call made from PAG to Eric Pray's cell phone number for the entire month of August 2018 (SOF ¶ 4; SOF Exhibit 1 Declaration of Jenelle La Chuisa Declaration ("La Chuisa Decl."), ¶¶ 1-8; SOF Exhibit 2 Pray Declaration, ¶¶ 1-14). In addition: (1) PAG paid the premium on behalf of "Lion Heart Surgical *Equipment*" on September 5, 2018, 13 days *after* the purported call (SOF ¶¶ 4, 10; ECF No. 85-3, 57:7-58:9); (2) LHSEC was admittedly the sole "Named Insured" on both the 18/19 *and* the *renewal* 19/20 policies (SOF ¶¶ 4, 18; ECF No. 85-3, 64:4-65:19); (3) LHSEC was admittedly the "Named Insured" on applications that PAG prepared and sent, including for the *renewal* 19/20 Hallmark policy (SOF ¶ 7); (4) no one from PAG or LHSSC *ever* contacted USG or Hallmark to purportedly "correct" the named insured on the 18/19 or the *subsequent* 19/20 policy (SOF ¶¶ 4, 5, 14-17; ECF No. 85-3, 65:9-66:15); (5) PAG produced no documentation whatsoever in response to Hallmark's subpoena mentioning any purported phone call, any note or other entry in its file referencing the call or even that a mistake had been made by PAG in the name of the insured, or any record from a phone service provider (SOF ¶ 4; SOF Exhibit 1 La Chuisa Decl., ¶ 9); (6) LHSSC produced no record of any such phone call with its response to Hallmark's motion for summary

judgment (ECF No. 85, 86); (7) LHSSC did not mention any such phone call in, nor produce any supporting evidence with, its answer to Hallmark's complaint, its counterclaim, its response to Hallmark's motion for judgment on the pleadings, or in discovery (ECF No. 49, 61; SOF ¶ 4; SOF Exhibit 1 La Chuisa Decl., ¶¶ 11, 14); (9) PAG's Maggy Sosa repeatedly postponed her deposition and then, on the record, would not proceed on the fourth deposition date after she had received a threatening letter from LHSSC counsel the day before (SOF ¶ 4; SOF Exhibit 1 La Chuisa Decl., ¶ 10); (10) LHSSC's counsel made no mention of any such phone call, but only the April 23 e-mail, in her March 31, 2021 pre-deposition notice of claim letter to PAG (SOF ¶ 4; SOF Exhibit 1 La Chuisa Decl., ¶ 11); (11) only after LHSSC's counsel had sent Sosa correspondence on March 31, 2021 stating "in the event that the Court finds there is no coverage for Lion Heart…my clients will prosecute a claim against PAG for negligence and failure to procure insurance", and only after Sosa retained counsel did she--for the very first time in the intervening 2 ½ years--purport to have made a phone call to USG on April 23 following her e-mail instructing USG to name LHSEC as the named insured (SOF ¶ 4; SOF Exhibit 1 La Chuisa Decl., ¶ 12; ECF No. 85-3, 67:6-18); (12) neither Sosa nor her counsel responded to Hallmark's request at Sosa's April 6 deposition and by e-mail that same day for the phone records responsive to the prior subpoena (ECF No. 85-3, 42:8-43:5, 47:17-21, 59:25-60:8; SOF Exhibit 1 La Chuisa Decl., ¶ 13; SOF ¶ 4); (13) LHSSC has not offered any documentary evidence whatsoever to support that purported phone call ever occurred, notwithstanding Hallmark's reservation of rights letter dated May 26, 2020 (almost a year ago) (SOF ¶ 4; ECF No. 86-2; ECF No. 85-3, 42:8-43:5, 47:17-21, 60:16-61:22; SOF Exhibit 1 La Chuisa Decl. ¶ 14); (14) the documentary evidence establishes that no such call was made: PAG's telephone records show no call made by PAG to USG on August 23, 2018, and no call made from PAG to Eric Pray's cell phone number for the entire month of August 2018 (SOF ¶ 4; SOF Exhibit 1 La Chuisa Decl., ¶¶ 1-8); (15) PAG admitted that it is not customary practice to request a policy change by telephone call, but rather the custom and practice requires any purported changes to be in writing (SOF ¶ 4; ECF No. 85-3, 43:20-23); and (16) PAG did not produce any confirming e-mail or other documentation regarding the alleged phone conversation from PAG to USG, because there is none (SOF ¶ 4; ECF No. 85-3, 45:11-45:13).   Sosa's testimony was also--at best-- equivocal on her memory of the purported call (SOF ¶ 4; ECF No. 85-3, 59:7-61:8, 61:15-63:22).   Even if the purported telephone call is not a fiction, it does not overcome all contrary evidence sufficient to produce "in the mind of the trier of fact a firm belief or conviction, *without hesitation*, as to the truth" that a *mutual* mistake was made.  *See Quorum*, 186 F.Supp.3d at 1326.

USG testified that there is no evidence that any such a phone call was made; that USG recalls no such phone call; that any such call would have been logged; that no such call was logged; that any changes to a policy must be provided in writing; that it never received any such written request from PAG (SOF ¶ 4; SOF Exhibit 2 Pray Decl. ¶¶ 1-14).  Testimony that PAG and USG talked by phone over the course of their business relationship, even if "more than 100 times", establishes no relevant fact.

LHSSC did not dispute any fact established by Hallmark.  An equivocal statement regarding a purported phone call, contrary to all evidence, unsupported by any evidence, offered years after the dispute arose, dispositive motion filed, discovery closed, followed by the pre-deposition threat of Lion Heart counsel (one day prior to the scheduled date of PAG's deposition), fails entirely to meet LHSSC's burden to provide clear and convincing evidence that USG and, therefore, Hallmark made any mistake whatsoever.  LHSSC did not provide clear and convincing evidence that Hallmark made any mistake in naming LHSEC as the "Named Insured" on both Hallmark policies.  LHSSC did not provide evidence that produces in the mind of the trier of fact a firm belief or conviction, without hesitancy, as to the truth of the allegations sought to be established that any mutual mistake was made that would support reformation.  The evidence, including the testimony of PAG and LHSSC, defeats any argument that Hallmark made any mistake or that the policy may be reformed.  There is no *genuine* issue of material fact.  Neither Hallmark policy may be reformed to amend the "Named Insured" from LHSEC to LHSSC.

LHSSC, an entity that is not named in the policy, has no rights under the policy including, without limitation, to demand that it be added as an insured.  LHSSC's remedy, if any, is against PAG.  Whether or not LHSEC filed with the Florida Secretary of State is beside the point.  LHSEC could have been a sole proprietorship.  That LHSEC may not have existed is irrelevant.  As explained in the motion, neither USG nor Hallmark had any legal obligation to determine whether the named insured was a registered, or an otherwise existing, entity.  LHSSC provided no authority that either had any such obligation.  Even if PAG made a unilateral mistake in instructing that the insured be LHSEC, Hallmark is not responsible for that mistake (PAG is admittedly not an agent of Hallmark).  Both parties agreed to LHSEC as the insured on *two* policies.  Hallmark made no mistake in naming LHSEC as the mutually agreed insured on *two* policies.  No mutual mistake was made in naming LHSEC as the insured.  Only if all established material facts, all precedent, and LHSSC's burden of presenting clear and convincing evidence are ignored could reformation be ordered.

B.  A "Simple" Mistake Made By One Party Does Not Permit Reformation

LHSSC attempts to avoid the requirement of a mutual mistake by claiming that a "simple" mistake" by one party permits reformation.  LHSSC is wrong.  The Eleventh Circuit in *Golden Door*, 8 F.3d at 766 explained that even in *Lumbermens Mut. Cas. Co. v. Martin*, 399 So.2d 536, 537 (1981), the parties agreed to the name of the insured and there was a mutual error in committing that agreement to paper.  Here, there was no error in committing to paper LHSEC as the agreed insured.  In addition, *Lumbermens* is a half-page opinion with no discussion whether the "simple" mistake was mutual or unilateral, and no discussion regarding who made the mistake, how or when.  Even if *Lumbermens* held what LHSSC claims it does (which it does not), it would be contrary to all later authority.  So too *Hanover Ins. Co. v. Publix Market, Inc*., 198 So.2d 346 (Fla. 4th DCA 1967), a one-page opinion with no discussion of applicable law or relevant facts.

C.  LHSSC Established No "Inequitable" Conduct By Hallmark

Flailing about for an argument, LHSSC claims that Hallmark acted "inequitably".  Nonsense. "Inequitable" conduct for the purpose of analyzing a mistake is measured at the time the policy was prepared, not at the time of a claim.  All parties, including PAG and LHSSC, have testified that Hallmark did exactly as PAG instructed.  As a matter of law and fact, naming LHSEC as the insured was not and cannot be somehow "inequitable".

LHSSC inexplicably references the premium calculation.  LHSSC, with tortured logic and sans authority, argues that Hallmark had an obligation to provide coverage for a non-insured at the time of the claim.  LHSSC is wrong.  Under no circumstance whatsoever does a premium calculation result in coverage for a non-insured.   The premium calculation does not dictate who the insured is or may be.  It is based on generic classifications (business activity), class codes (16750 internet retailers), general locations, reported amount of business, applied to an algorithm.  Based on LHSSC's argument, any entity that comes within that description would be an insured under the policy.  That is, of course, absurd.  As explained in the motion, the name of insureds on a policy determines who, and who is not, entitled to coverage.  As a matter of law, the name on the policy, not the premium calculation, determines who is, and is not, entitled to coverage.

Raising coverage defenses at the time a claim is made is not "inequitable".  That is *precisely* when coverage defenses are to be made.  In addition to being irrelevant for the purpose of the reformation analysis, every insurer has the right to raise coverage defenses as the facts become known.

III.    <u>CONCLUSION</u>

WHEREFORE, Hallmark respectfully requests that the Court enter summary judgment in its favor and against all defendants on Hallmark's Amended Complaint (ECF No. 41) and counter-claimants' counterclaim (ECF No. 47).

Dated: April 20, 2021                              Respectfully submitted,

**HINSHAW & CULBERTSON, LLP**          **MORISON & PROUGH, LLP**


/s/Rory Eric Jurman                                   /s/ William C. Morison

Rory E. Jurman, Esq.                               William C. Morison, Esq.
Florida Bar No.: 194646                            California State Bar No.: 99981
rjurman@hinshawlaw.com                             wcm@morisonprough.law
One East Broward Boulevard, Suite 1010             2540 Camino Diablo, Suite 100
Fort Lauderdale, Florida 33301                     Walnut Creek, California 94597
T: (954) 467-7900; F: 954-467-1024                 T: (925) 937-9990; F: (925) 937-3272
Attorneys for Plaintiff/Counter-defendant          Attorneys for Plaintiff/Counter-defendant
Hallmark Specialty Insurance Company               Hallmark Specialty Insurance Company


ID 6683

11

**SERVICE LIST**

| | |
|---|---|
| Danya J. Pincavage (FL Bar 14616)<br>Omar M. Ali-Shamaa (FL Bar 121461)<br>WOLFE \| PINCAVAGE<br>2937 SW 27th Avenue, Suite 302<br>Miami, FL 33133<br>T: (786) 409-0800<br>Primary: danya@wolfepincavage.com; omar@wolfepincavage.com<br>Secondary: monica@wolfepincavage.com;<br>service@wolfepincavage.com<br><br>*Attorneys for Lion Heart Surgical Supply*<br>*LLC, Lion Heart Surgical Supply Corp.,*<br>*Fabian Conde, and Janaina D. Nascimento* | Alice R. Huneycutt (FL Bar 293105)<br>STEARNS WEAVER MILLER WEISSLER<br>ALHADEFF & SITTERSON, P.A.<br>SunTrust Financial Centre, Suite 2100<br>401 E. Jackson Street<br>Tampa, Florida 33602<br>Post Office Box 3299<br>Tampa, Florida 33601<br>T: (813) 222-5031<br>F: (813) 222-5089<br>Primary: ahuneycutt@stearnsweaver.com<br>Secondary:dangel@stearnsweaver.com,<br>mkish@stearnsweaver.com |
| Gus M. Centrone (FL Bar 0030151)<br>James E. Felman (FL Bar 775568)<br>Katherine E. Yanes (FL Bar 159727)<br>KYNES MARKMAN & FELMAN, P.A.<br>P.O. Box 3396<br>Tampa, Florida 333601<br>T: (813) 229-1118<br>F: (813) 221-6750<br>Primary: gcentrone@centroneshrader.com;<br>jfelman@kmf-law.com; kyanes@kmf-law.com<br>Secondary: cbarteaux@kmf-law.com;<br><br>*Attorneys for XS Supply, LLC, Jon M. Bird,*<br>*Tyler Berger, Ivan Rodimushkin, David W.*<br>*Longdue III, and Brendan Thomas* | Geoffrey Potter (NY Bar 2252302 PHV)<br>Timothy Waters (NY Bar 4683157 PHV)<br>Joshua R. Stein (NY Bar 5387394 PHV)<br>Jacqueline Lash (NY Bar 5534953 PHV)<br>PATTERSON BELKNAP<br>WEBB & TYLER LLP<br>1133 Avenue of the Americas<br>New York, New York 10036-6710<br>T: (212) 336-2000<br>F: (212) 336-2222<br>Primary: gpotter@pbwt.com;<br>twaters@pbwt.com; jstein@pbwt.com;<br>jlash@pbwt.com<br>*Attorneys for Johnson & Johnson, Ethicon,*<br>*Inc., Ethicon US, LLC* |