**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

CASE NO: 20-cv-61483-RAR

HALLMARK SPECIALTY INSURANCE
COMPANY,

    Plaintiff,

v.

LION HEART SURGICAL SUPPLY LLC, LION HEART SURGICAL SUPPLY CORP., FABIAN CONDE, JANAINA D. NASCIMENTO, JOHNSON & JOHNSON, ETHICON, INC. AND ETHICON, US, LLC, XS SUPPLY, LLC, JON M. BIRD, TYLER BERGER, IVAN RODIMUSHKIN, DAVID W. LONGDUE III, and BRENDAN THOMAS

    Defendants,

*and*

LION HEART SURGICAL SUPPLY CORP., FABIAN CONDE, JANAINA D. NASCIMENTO,

    Counter-Plaintiffs,

v.

HALLMARK SPECIALTY INSURANCE COMPANY

    Counter-Defendant.

_____/

**DEFENDANTS/COUNTER-PLAINTIFFS' SUR-REPLY TO HALLMARK SPECIALTY INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT**

The Court should disregard Hallmark's newly obtained evidence attached to Hallmark's reply brief because that evidence was obtained after the close of discovery.  If the Court does consider the AT&T records and affidavit of a former USG Insurance Services employee, that evidence creates additional genuine issues of material fact which further preclude judgment as a matter of law.  Whether PAG Insurance told USG Insurance Services to correct the named insured is a critical fact that must be resolved to determine whether a simple or mutual mistake occurred, requiring reformation of the subject insurance policy.  In support, Lion Heart Surgical Supply Corp., Fabian Conde, and Janaina Nascimento (collectively, the "LH Defendants") state as follows:

I.     **BACKGROUND**

Discovery concluded on April 6, 2021, and pretrial motions, including motions for summary judgment, were due on April 20, 2021. D.E. 46. Hallmark nonetheless chose to file its motion for summary judgment [D.E. 78] on March 23, 2021 – two weeks prior to the close of discovery. Hallmark took the deposition of Maggy Sosa of PAG Insurance Services, Inc. ("PAG") on the final day of the discovery period.[1] Ms. Sosa testified that she spoke with Eric Pray, former associate producer/broker at USG Insurance Services, Inc. ("USG"), by telephone after submitting the application, and requested that he correct the named insured to Lion Heart Surgical Supply Corp. D.E. 85-3 at 41:21-25, 42:1-17, 53:22-25, 54:1-7, 59:12-24, 82:18-22, 83:1-11.

A week after Ms. Sosa's deposition (and the discovery deadline), Hallmark served a subpoena on AT&T requesting PAG's phone records for the entire month of August 2018. D.E. 88-1 at Ex. 1. AT&T subsequently produced 212 pages of telephone records in response to Hallmark's subpoena. D.E. 88-1. While the phone records do not appear to show any calls between

---

[1] Ms. Sosa requested to have her deposition rescheduled several times.

PAG and Mr. Pray on August 23, 2018, there was an eleven-minute and twenty-second call between PAG and Mr. Pray the following day, on August 24, 2018 at 2:35 p.m. D.E. 88-1, at p. 173.[2]

Two hours before that phone call, Mr. Pray emailed Ms. Sosa at 11:32 a.m. with a copy of the binder confirmation and instructed Ms. Sosa to contact him if she had any questions or needed any further assistance. Ex. 1. Like USG's other mistakes, the binder summary contained three variations of the named insured: Lion Heart Surgical Equipment Corp., Lion Heart Surgical Equipment, and Lion Heart Surgical Equipment, LLC. *Id.* p. 2. The telephone records appear to confirm Ms. Sosa's testimony that she spoke with Mr. Pray and instructed him that the named insured should be Lion Heart Surgical *Supply* Corp. – albeit one day later than she recollected at her deposition. D.E. 85-3 at 24:24-25; 41:21-25, 42:1-17; 53:22-25, 54:1-7; 59:12-24, 61:6-9, 82:18-22; 83:1-11. Tellingly, Hallmark did not mention or address the August 24, 2018 phone call in its reply.

On April 20, 2021, Hallmark filed its reply, attaching the AT&T records and an affidavit from USG's former employee, Eric Pray, that was executed on April 14, 2021 (also after the close of discovery). In his affidavit, Mr. Pray claims that he does not recall speaking to Ms. Sosa in August 2018, despite having the eleven-minute and twenty-second phone call on August 24, 2018. Mr. Pray's affidavit also references the "account notes" for the policy, which Hallmark never produced during discovery, and USG did not produce in response to the LH Defendants' subpoena. D.E. 88-2. Notably, Hallmark did not explain how Mr. Pray determined he did not have any account notes even though he stopped working for USG in September 2020 and presumably no longer has access to his former employer's files.

---

[2] Eric Pray's direct line in August 2018 was 813-466-3566. *See* D.E. 85-15.

Hallmark has repeatedly failed to comply with this Court's orders. *See*, *e.g.,* D.E. 93. Hallmark procured the aforementioned records after the discovery cutoff in violation of the trial order and S.D. Fla. L.R. 26.1(d). As Magistrate Judge Strauss recently observed in denying Hallmark's *ore tenus* motion to compel discovery from Defendants Johnson & Johnson and Ethicon, Hallmark filed its motion for summary judgment two weeks early because it evidently believed it did not need any additional discovery to prevail on its claims for declaratory judgment. D.E. 93 at p. 3. Hallmark should not be permitted now to use the newly obtained records that it obtained after the close of discovery. Even if the Court were to consider the AT&T records and the Pray affidavit, these new documents further support the LH Defendants' position that genuine issues of material fact exist that preclude the entry of judgment as a matter of law on Hallmark's motion for summary judgment.

## II.   ARGUMENT

### A.   *The Court Should Disregard The AT&T Records and Pray Affidavit Because Hallmark Obtained These Documents After the Close of Discovery.*

"The deadline established by a scheduling order means the full completion of discovery by that deadline." D.E. 93 (Order Denying Hallmark's *Ore Tenus* Motion to Compel and Cancelling Discovery Hearing) (*citing United States ex. Rel. Matheny v. Medco Health Sols., Inc.*, No. 08-14201-CIV, 2013 WL 12076540, at *1-*2) (S.D. Fla. March 2013). Pursuant to S.D. Fla. L.R. 26.1(d), "subpoenas seeking the production of documents must be served in sufficient time that the response is due on or before the discovery cutoff. Failure by the party seeking discovery to comply with this paragraph obviates the need to respond or object to the discovery, appear at the deposition, or move for a protective order." Here, the deadline to complete discovery was April 6, 2021. D.E. 46.

Hallmark's reply and reply statement of material facts [D.E. 87 & 88] patently present new evidence that it obtained after the discovery cutoff, in violation of S.D. Fla. L.R. 26.1(d). Hallmark

4

served a subpoena on AT&T on April 13, 2021 – a week after the discovery cutoff. Hallmark also secured an affidavit from Mr. Pray on April 14, 2021 which purportedly relies on USG's internal account notes that neither Hallmark nor USG produced during discovery. As the Honorable Magistrate Judge Jared M. Strauss noted, Hallmark's discovery efforts were intentional and could have been made within the discovery cutoff. D.E. 93 at p. 3, n. 1 ("I note that [Hallmark] filed its motion for summary judgment on March 23, 2021. The deadline for all pre-trial motions was set for April 20, 2021. Therefore, I infer that [Hallmark] does not believe the discovery requests at issue are required for it to prevail on its claim for a declaratory judgment."). Hallmark served a subpoena duces tecum on PAG in January 2021 and could have requested a list of its phone numbers at that time. In short, Hallmark could have procured the call records from AT&T well before the discovery cutoff. Hallmark could have also procured the phone records from its agent, USG. Instead, Hallmark chose to file its motion for summary judgment weeks before the deadline and then procured additional evidence after the discovery cutoff – and after the LH Defendants already filed their response – to use in its reply. The Court should not reward Hallmark's gamesmanship and disregard the AT&T records and Pray affidavit.

Hallmark also failed to seek any extension of the discovery deadline from the Court. As Magistrate Judge Strauss explained, Hallmark offered no reason why good cause exists to extend the discovery deadline because none exists. D.E. 93 at p. 3. Hallmark had almost seven months to conduct discovery in order to avoid any last-minute disputes or requests. Instead, Hallmark served its subpoena on AT&T and procured Mr. Pray's affidavit after the discovery cutoff.  Hallmark's effort not only demonstrates its disregard for the Court's orders but also its lack of diligence in pursuing this action. *Id.* at 4 ("[Hallmark] has fail[ed] to demonstrate diligence in properly pursuing its case, which additionally precludes finding that good cause exists to extend the discovery deadline…". The Court should therefore disregard the AT&T records and Pray affidavit.

5

> **B.      If The Court Considers Hallmark's Improper Evidence, It Creates Further Questions Of Material Fact Precluding Judgment As A Matter Of Law.**

Hallmark's newly obtained evidence creates further genuine issues of material fact, thereby precluding judgment as a matter of law. Mr. Pray attested that he didn't recall speaking to Ms. Sosa after the August 23, 2018 email and that there were not any notes relating to a call between him and PAG in the internal file. D.E. 88-2 at ¶¶ 7, 9.  The AT&T records, however, indicate that Mr. Pray had an eleven-minute and twenty-second call with PAG on August 24, 2018 at 2:35 p.m. – the day after PAG submitted Lion Heart Surgical Supply Corp.'s completed application for insurance. D.E. 88-1, at p. 173. Mr. Pray's affidavit further conflicts with Ms. Sosa's testimony that a phone conversation occurred.  The Court cannot resolve this conflicting testimony on a motion for summary judgment, nor can it gauge the witnesses' respective credibility. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict"); *see also Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996) ("Where the non-movant presents direct evidence that, if believed by the jury, would be sufficient to win at trial, summary judgment is not appropriate even where the movant presents conflicting evidence. It is not the court's role to weigh conflicting evidence or to make credibility determinations; the non-movant's evidence is to be accepted for purposes of summary judgment"). Instead, this factual dispute – whether Ms. Sosa ever told Mr. Pray over the phone to change the named insured to Lion Heart Surgical Supply Corp. (and consequently, whether a simple or mutual mistake occurred) –  should be resolved by a jury.

The eleven-minute and twenty-second call with PAG occurred two hours after Mr. Pray emailed Ms. Sosa with a copy of the binder summary and binder confirmation that contained three variations of the named insured – all of which were incorrect and created by Mr. Pray. Ex. 1; D.E.

6

79-2 at 61:20-25 (Q: This document on page 4 that says binder confirmation, do you know who created this document? A: Yes. Q: Who would have created it? A: Eric Pray.). Indeed, the telephone records appear to confirm Ms. Sosa's testimony that she spoke with Mr. Pray and instructed him that the named insured should be Lion Heart Surgical Supply Corp. D.E. 85-3 at 24:24-25; 41:21-25, 42:1-17; 53:22-25, 54:1-7; 59:12-24, 82:18-22; 83:1-11. While Ms. Sosa did not remember the details of the call, she specifically testified that she spoke to Mr. Pray. D.E. 85-3 61:6-9 ("I mean I didn't write it down because sometimes I do write it there, but I know that all of those days I was speaking to Mr. Pray.)[3] Because there is a clear conflict between Ms. Sosa's testimony (which is supported by the AT&T records) and Mr. Pray's attestations, genuine issues of material fact exist which preclude judgment as a matter of law regarding whether a mutual or simple mistake occurred. The Court should therefore allow a jury to resolve this disputed issue of material fact, and then enable the Court to reform the Policy to reflect the correct named insured: Lion Heart Surgical Supply Corp.

### III. CONCLUSION

WHEREFORE, the LH Defendants submit that genuine issues of material fact exist, thereby precluding summary judgment. Accordingly, Hallmark's Motion for Summary Final Judgment should be denied in its entirety.

---

[3] The AT&T records also show that Mr. Pray spoke with PAG on August 22, 2018 at 2:25 p.m. for approximately three minutes and thirty-three seconds. D.E. 88-1, at p. 158.

        Respectfully submitted,

        **WOLFE | PINCAVAGE**
        2937 SW 27th Avenue, Suite 302
        Miami, FL 33133
        Office: 786.409.0800

By:   /s/ Danya J. Pincavage, Esq.
       Danya J. Pincavage
       Fla. Bar No.: 14616
       danya@wolfepincavage.com
       Omar Ali-Shamaa
       Fla. Bar No.: 121461
       omar@wolfepincavage.com

*Attorneys for Lion Heart Surgical Supply, LLC, Lion Heart Surgical Supply Corp., Fabian Conde and Janaina D. Nascimento*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 4th day of May 2021, the foregoing was filed with the Court's CM/ECF system, which will send notice to the parties in this ligation *via* Email as follows:

| | |
|---|---|
| Rory Eric Jurman, Esq.<br>Hinshaw & Culbertson LLP<br>One East Broward Blvd, Suite 1010<br>Ft. Lauderdale, FL 33301<br>rjurman@hinshawlaw.com<br><br>*and*<br><br>William C. Morison<br>wcm@morisonproughlaw.com<br>Morison & Prough, LLP<br>2540 Camino Diablo, Suite 100<br>Walnut Creek, CA 94597<br>Phone: 925-937-9990<br>Fax: 925-937-3272<br>*Counsel for Hallmark Specialty Insurance Company* | Gus Michael Centrone<br>gcentrone@kmf-law.com<br>James E. Felman<br>jfelman@kmf-law.com<br>Katherine Earle Yanes<br>kyanes@kmf-law.com<br>Kynes Markman & Felman, P.A.<br>PO Box 3396<br>Tampa, FL 333601<br>Phone: 813-229-1118<br>Fax: 813-221-6750<br>*Counsel for Defendant XS Supply, LLC* |

| | |
|---|---|
| Alice R. Huneycutt<br>Florida Bar No. 293105<br>STEARNS WEAVER MILLER WEISSLER<br>ALHADEFF & SITTERSON, P. A.<br>SunTrust Financial Centre, Suite 2100<br>401 E. Jackson Street (33602)<br>Post Office Box 3299<br>Tampa, Florida  33601<br>Telephone:  (813) 222-5031<br>Facsimile:  (813) 222-5089<br>Primary:  ahuneycutt@stearnsweaver.com<br>Secondary:  mkish@stearnsweaver.com<br><br>*and*<br><br>Geoffrey Potter<br>(NY Bar No: 2252302)<br>Joshua R. Stein<br>(NY Bar No: 5387394)<br>Jacqueline Lash<br>(NY Bar No: 5534953)<br>PATTERSON BELKNAP WEBB & TYLER LLP<br>1133 Avenue of the Americas<br>New York, NY  10036-6710<br>Telephone:  (212) 336-2000<br>Fax:  (212) 336-2222<br>gpotter@pbwt.com<br>jstein@pbwt.com<br>jlash@pbwt.com<br><br>*Attorneys for Defendants Johnson & Johnson, Ethicon, Inc., and Ethicon US, LLC* | |

By:   /s/ Danya J. Pincavage
      Danya J. Pincavage