UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

HALLMARK SPECIALTY INSURANCE
COMPANY,

                Plaintiff,

v.

LION HEART SURGICAL SUPPLY LLC, LION
HEART SURGICAL SUPPLY CORP., FABIAN
CONDE, JANAINA D. NASCIMENTO,
JOHNSON & JOHNSON, ETHICON, INC.,
ETHICON US, LLC, XS SUPPLY, LLC, JON M.
BIRD, TYLER BERGER, IVAN RODIMUSHKIN,
DAVID W. LONGDUE III, and BRENDAN
THOMAS,

                Defendants.

and

LION HEART SURGICAL SUPPLY CORP.,
FABIAN CONDE, and JANAINA D.
NASCIMENTO,

                Counter-Plaintiffs,

v.

HALLMARK SPECIALTY INSURANCE
COMPANY,

                Counter-Defendant.

Case No.  20-CIV-61483-RAR

_____/

**MOTION *IN LIMINE* OF HALLMARK SPECIALTY INSURANCE COMPANY:
NO DEFENDANT SHOULD BE PERMITTED TO MAKE STATEMENTS, OFFER
EVIDENCE OR ARGUE CONTRARY TO APPLICABLE LEGAL AUTHORITY**

Plaintiff Hallmark Specialty Insurance Company ("Hallmark") seeks a declaratory

judgment regarding Hallmark's rights and obligations under an insurance policy issued to Lion

Heart Surgical Equipment Corp. ("LHSEC").  LHSEC is not a defendant in the underlying action.

Defendants in the underlying action, including Lion Heart Surgical Supply Corp. ("LHSSC"), Lion

Heart Surgical Supply LLC ("LHLLC"), Fabian Conde, and Janaina D. Nascimento (collectively, the "LH Defendants") claim -- but have no -- insured status under the Hallmark policy.

The material facts are undisputed, the law is clear, and discovery has proven that none of the defendants in the underlying action is an "Insured" under the plain and unambiguous Hallmark policy.  Hallmark made no mistake in issuing the policy to LHSEC.  As a matter of law, there was no mutual mistake regarding the "Insured's" name.

In addition, after this coverage action was filed, LHLLC principal Nascimento pled guilty in federal court to criminal acts that form the entire basis of the underlying action against the LH defendants.  The criminal acts exclusion in the policy applies to bar all coverage for the underlying action even if the LH defendants were insureds, which they are not.

I.    No Defendant Should Be Permitted To Make Statements, Offer Evidence Or Argue That Lion Heart Surgical Equipment Corp. Did Not Exist

An insurer may rely on a representation by a prospective insured's broker in preparing the policy.  *See Progressive Am. Ins. Co. v. Steele*, 15 F.Supp.3d 1240, 1250 (M.D. Fla. 2014) ("[broker's] indication to Progressive that he obtained the necessary exclusion form from [policyholder] was sufficient for Progressive to write the Policy excluding [uninsured driver] from coverage").  "An insurer is entitled, as a matter of law, to rely upon the accuracy of the information [provided] and has no duty to make additional inquiry."  *See United Auto Ins. Co. v. Salgado*, 22 So.3d 594, 601 (Fla. 3d DCA 2009).

Whether LHSEC filed documents with the Florida Secretary of State is irrelevant. Hallmark was entitled, as a matter of law, to rely on PAG's instruction to name LHSEC as the insured on both Hallmark policies.  Hallmark had no obligation whatsoever to investigate whether LHSEC was a sole proprietorship, LLC, corporation or non-existent.  Hallmark did not investigate the legal status of LHSEC.  Because Hallmark had no obligation to investigate LHSEC's status,

2

and Hallmark did not perform any investigation, Hallmark cannot be found liable for any mistake in issuing the policy to LHSEC, even if a non-existent entity.  Whether LHSEC was a non-existent entity is, therefore, not relevant to any party's case against Hallmark.

Hallmark respectfully requests that the Court order and instruct that no party make any statement, offer any evidence or argue that (1) LHSEC was a non-existent entity or (2) that Hallmark had any obligation to determine whether LHSEC was an existing entity.

II.     No Defendant Should Be Permitted To Make Statements, Offer Evidence Or <u>Argue Contrary To Florida Law That Reformation Requires Mutual Mistake</u>

A policy cannot be reformed to state that LHSSC, and not LHSEC, was the "Named Insured", unless the LH Defendants prove by clear and convincing evidence that **both** the purported insured and Hallmark were mistaken regarding which entity was to be the insured.  *See Tobin v. Mich. Mut. Ins. Co.*, 948 So.2d 692, 696 (Fla. 2006) (in which the Florida Supreme Court held that reformation requires a mutual mistake).  "A mistake is mutual when the parties agree to one thing and then, due to either a scrivener's error or inadvertence, express something different in the written instrument".  *Id.* at 696.

> 'Reformation is an equitable remedy which 'acts to correct an error not in the parties' agreement but in the writing which constitutes the embodiment of the agreement.'…'In reforming a written instrument,' the court 'in no way alters the agreement of the parties.  Instead, the reformation only corrects the defective written instrument so that it accurately reflects the true terms of the agreement actually reached.'…'Florida courts have sharply delimited a narrow range of circumstances that will support reformation: … [including] mutual mistake'…'a mistake is mutual when the parties agree to one thing and then, due to either a scrivener's error or inadvertence express something different in the written instrument'…Reformation is generally not an available remedy where only a unilateral mistake is present…There is no 'clerical mistake' or 'scrivener's error' at issue here.  Whether or not it was [insured actor's] intent to include [an entity] as a Named Insured in the Policy is immaterial, because it was clearly not [insurer's].  'When an instrument is written as one party understands it, and not as the other party understands it, there is no ground for reform'…Accordingly, the Court concludes that the [insured actor's] unilateral mistake - repeated over the course of three years [and three policies] - does not give rise to reformation….

*Mount Hawley Ins. Co. v. Miami River Port Terminal,* 228 F.Supp.3d 1313, 1327 (S.D. Fla. 2017) ("*MRPT*").  *MRPT*, from the Southern District of Florida, is a case with facts similar to the case at bar.  In *MRPT*, an entity was not added as a "Named Insured" to the policy, notwithstanding the insured had requested that it be included.  The non-insured entity's address was the same as a named insured.  Neither the insured nor the insured's broker brought the omission to the insurer's attention until after the claim against the non-insured entity had been made.  The court denied the insured's request for reformation and granted the insurer's dispositive motion on the ground that the omitted entity was not included as a named insured.  It was not a mutual mistake.

Hallmark respectfully requests that the Court order and instruct that no party make any statement, offer any evidence or argue that reformation is permitted by anything less than clear and convincing evidence of a mutual mistake by Hallmark and the LH defendants' agent PAG Insurance Services, Inc. ("PAG") in naming LHSEC as the insured.

Hallmark respectfully requests that the Court order and instruct that no party make any statement, offer any evidence or argue that a "simple" or "unilateral" mistake permits reformation of the Hallmark policies.  As a matter of law, a unilateral mistake does not permit policy reformation.

III.    No Defendant Should Be Permitted To Make Statements, Offer Evidence Or <u>Argue That Hallmark Is Bound By The Mistakes Of PAG Or The LH Defendants</u>

It is undisputed that PAG was the LH defendants' broker, and thus agent.  It is also undisputed that USG, the underwriter, was Hallmark's agent in the insurance transaction. Hallmark is not bound by the statements or actions of PAG.  *See Banco Ficohsa v. Aseguradora Hondurena, S.A.*, 937 So.2d 161, 165 (Fla. 3d DCA 2006) ("Florida law treats an insurance broker as an agent of the insured rather than the insurer").  Only the LH defendants are bound by the actions of PAG.  *See Quorum*, 186 F.Supp.3d at 1327-28 ("It is the law of Florida that an insured

4

is bound by the actions of its broker"); *Mercury Ins. Co. v. Sherwin*, 982 So.2d 1266, 1269 (Fla.4th DCA 2008) (insured bears the burden of its broker's error); *Liberty Mutual Ins. Co. v. Scalise*, 627 So.2d 87, 91 (Fla. 1st DCA 1993) ("An insured is bound by his broker's acts, even [if] fraudulent, and is charged with such broker's knowledge, and cannot challenge the validity of the contract which the broker makes for him. Consequently, a misrepresentation or breach of warranty by such broker is, in law, the act of the insured…."); *Nugget Oil, Inc. v. Universal Sec. Ins. Co.*, 584 So.2d 1068, 1071 (Fla. 1st DCA 1991) ("[insurer] was not to blame if [broker] requested the wrong uninsured motorist limits. The conflict of testimony between [insured] and [broker] concerning the amount of coverage is, therefore, irrelevant because [broker] was [insured's] agent and [insured] was bound by [broker's] actions"); *Empire Fire & Marine Ins. Co. v. Koven*, 402 So.2d 1352, 1353 (Fla. 4th DCA 1981) ("[B]ecause the broker was the agent of the insured, the insured was bound by the agent's actions," even if the broker acted in excess of his or her authority or made a mistake).

Hallmark respectfully requests that the Court order and instruct that no party make any statement, offer any evidence or argue that Hallmark is bound by or responsible for mistakes by PAG or the LH defendants or between PAG and the LH defendants.

IV.     No Defendant Should Be Permitted To Make Statements,
        Offer Evidence Or Argue That He, She Or It Did Not Read
        The Policies And Was Unaware Of Their Contents

No party can avoid policy terms by claiming that he, she or it did not read the policy, particularly a party that was on inquiry notice.  *See Admiral Ins. Co. v. Cresent Hills Apts.,* 328 F.3d 1310, 1321 (11th Cir. 2003) ("an insured has a duty to take certain steps for its own protection such as reading their policies…."); *Harkless v. Laubhan*, 278 So.3d 728, 734-35 (Fla. 2nd DCA 2019) ("If a party has knowledge such that a reasonably prudent person would make a further inquiry but no further investigation is made, the party 'must suffer the consequence of his neglect'"); *Citizens Prop. Ins. Corp. v. European Woodcraft & Mica Design, Inc*., 49 So.3d 774,

777-78 (Fla. 4th DCA 2010) ("it will not suffice the law to remain willfully ignorant of a thing readily ascertainable by whatever party puts him on inquiry, when the means of knowledge is at hand"; "[s]imilarly, an insured cannot avoid liability for a provision in an insurance application he claims he did not read").

Additionally, even if English is not an insured's first language, which has not yet been alleged, "[p]ersons not capable of reading English, as well as those who are, are free to elect to bind themselves to contract terms they sign without reading…The burden is on the person who cannot read to know that he cannot read and if he desires to have an instrument read and explained to him to select a reliable person to do so before he signs it." *Kendall Imps., LLC v. Diaz*, 215 So.3d 95, 101 (Fla. 3d DCA 2017), citing *Merrill, Lunch, Pierce, Fenner & Smith, Inc. v. Benton*, 467 So.2d 311, 313 (Fla. 5th DCA 1985). *See also Spring Lake NC, LLC v. Holloway*, 110 So.3d 916, 917 (Fla. 2nd DCA 2013) (elderly woman bound to arbitration agreement notwithstanding limited reading ability, memory problems, and confusion); *accord Valencia v. 1300 Ocean Drive, LLC*, 2017 U.S. Dist. LEXIS 218396 (S.D. Fla. Dec. 1, 2017), at *7-8.

The LH defendants knew that LHSEC was on the application and on an insurance certificate, which they had allegedly previously brought to PAG's attention.  By their own admissions, the LH defendants were on inquiry notice and should have read the policy to confirm the identity of the "Named Insured".   LHSEC was the identified insured on *both* the 18/19 and 19/20 insurance applications, and LHSEC was the "Named Insured" on *both* the 18/19 policy and the 19/20 policies.

Hallmark respectfully requests that the Court order and instruct that no defendant or counterclaimant make any statement, offer any evidence or argue that he, she or it did not read the Hallmark policies prior to the underlying action because that failure is irrelevant against Hallmark.

6

V.     No Defendant Should Be Permitted To Make Statements, Offer Evidence Or
       Argue Contrary To Florida Law That Courts and Juries May Not Rewrite
       Contracts, Particularly The Identity Of The "Named Insured"

"[W]hen interpreting a policy to determine who is covered, it is a well-settled rule 'that a court shall not rewrite a contract of insurance extending the coverage afforded beyond that plainly set forth in the insurance contract'…In particular, the term 'named insured' has a restricted meaning and does not apply to persons not specifically named in the policy.'" *MRPT*, 713 Fed.Appx. at 957; *see also Hill v. Deering Bay Marina Assn*., 985 So.2d 1162, 1166 (Fla. 3d DCA 2008) ("Florida law is clear: [¶]  As this and many other courts have stated, courts do not rewrite contracts…'a court is powerless to rewrite the contract to make it more reasonable or advantageous for one of the contracting parties'…'It is well settled that courts may not rewrite a contract or interfere with the freedom of contract or substitute their judgment for that of the parties thereto in order to relieve one of the parties from the apparent hardship of an improvident bargain'…."); *Fidelity Ins. Co. v. Suwannee Lumber Mfg. Co., Inc*., 411 So.2d 950, 951 (Fla. 1st DCA 1982) ("[T]he courts in Florida have consistently held that the term 'named insured' has a restricted meaning and does not apply to persons not specifically named in the policy"); *Herrera v. Integon Nat'l Ins. Co*., 2020 U.S. Dist. LEXIS 21597 (S.D. Fla. Feb. 6, 2020) at 13, fn. 4.

Hallmark respectfully requests that the Court order and instruct that no party make any statement, offer any evidence or argue that the jury may rewrite the Hallmark policies.

VI.    No Defendant Should Be Permitted To Make Statements, Offer
       Evidence Or Argue Contrary To The Criminal Action Conviction

Coverage B, exclusion d., in the Hallmark policies provides that "This insurance does not apply to:… 'Personal and advertising injury' arising out of a criminal act by or at the direction of the insured."  Federal courts applying Florida law enforce such exclusions.  *See, e.g., Max Specialty Ins. Co. v. A Clear Title and Escrow Exch., LLC*, 114 F. Supp. 3d 1191, 1195 (M.D. Fla.

7

2013) (granting insurer's motion for summary judgment because the unambiguous terms of the policy preclude coverage under the criminal acts exclusions and no genuine issue of fact existed with respect to the criminal act); *Certain Interested Underwriters at Lloyd's, London v. Axa Equitable Life Ins. Co.*, 981 F. Supp. 2d 1302, 1307-08 (S.D. Fla. 2013) (criminal conduct exclusion in the policy was operative and relieved the insurer of liability).

A criminally convicted defendant cannot relitigate the same issues in a civil case.  *See* Fla. Stats. section 772.14 (Fla. 2020); *see also Star Tyme, Inc. v. Cohen*, 659 So. 2d 1064, 1066 (Fla. 1995) ("a defendant who is adjudicated guilty…in a criminal prosecution is collaterally estopped from…defending [a] civil [claim] that is based on the same conduct that gave rise to the prior prosecution").  The insured's intent is not relevant to the applicability of the criminal acts exclusion.  *See Progressive N. Ins. Co. v. McDonough*, 608 F.3d 388, 391 (8th Cir. 2010) (guilty plea triggered the criminal act exclusion; court rejected the insured's claim that insurer must prove insured's intent because exclusion did not require intent to apply).

*As LHSSC admitted in the underlying action*, the same transactions and conduct are at issue in the criminal action and the underlying action.  See ECF No. 86-3, at 1 (Lion Heart's request for a stay of the underlying action ("Defendant Janaina Nascimento ('Nascimento'), one of the Lion Heart Defendants, is facing criminal proceedings arising out of the same alleged sale of the counterfeit products that is the subject of this civil case"; see page 6 (bottom number) "'No question exists' that a district court 'has the power to stay a civil proceeding due to an active *parallel* criminal investigation'", emphasis supplied); see page 10 (bottom number) ("there is no dispute that the issues in the criminal and civil cases overlap.  Both the criminal proceedings and the instant case arise out of allegations that the Lion Heart Defendants knowingly sold counterfeit Surgicel product")); see also 79-6, 79-7, 79-8, 79-9; ECF 41-1; ECF No. 79, ¶ 32.  LHSSC claims that LHLLC, not LHSSC, was the criminally acting party, although LHSSC argues that it is the

8

successor to LHLLC, on whose behalf Nascimento acted (ECF No. 85, ¶ 31; ECF No. 79, ¶ 32). If LHLLC is a criminal actor, LHSSC can only be a criminal actor.   In addition, if the predecessor who performed the act at issue in the underlying action is not an insured, the successor cannot be insured for those acts.  Hallmark raised the issue in ECF No. 59 at 6 (12th, 16th, and 39th affirmative defenses); 41-2 at 24, 94 (criminal act exclusion in policy attached to and incorporated into complaint); ECF No. 86-2, at 24 (Hallmark reservation of rights letter dated May 26, 2020 attached to LHSSC's opposition, "Hallmark's coverage position is based on presently available information.  This letter is not, and should not be construed as, a waiver of any terms, conditions, exclusions or other provisions of the Hallmark policy, or any other policies of insurance issued by Hallmark or any of its affiliates.  Hallmark expressly reserves all of its rights under the Hallmark policy, including the right to amend or supplement the statements set forth in this letter or its coverage position if circumstances or information warrant doing so, including without limitation, the right to supplement this letter to assert the application of additional terms, conditions, provisions, definitions or exclusions"); ECF No. 41, ¶ 1, 14, 16, 19, 21, 23, 34, 38, 42 (complaint); ECF No. 86-4 Hallmark February 23, 2021 reservation of rights letter on determination of criminal act attached to LHSSC's opposition, at 15.

See also ECF 79-7, at 1 (Plea Agreement, Nascimento operated LHLLC and "caused Lion Heart to purchase…"), at 2 ("R.W. returned the product to Lion Heart"); ("XS Supply sold the SURGICEL it had purchased from Lion Heart…."); ECF No. 79-8 (criminal sentencing transcript, at 27-28 (Nascimento's counsel argues "She writes 'Randy, *we* have nothing to hide from the FDA…They were imported legally, as everything *we* deal with…And then Mr. Ware returns the product to Ms. Nascimento's company, to Lion Heart'") (emphasis supplied).  Nascimento was also a manager of the limited liability company, and entities can only act through their principals. ECF No. 41-1, ¶ 18; see also ECF No. 79, ¶ 36.

1024140\308250471.v3

Hallmark respectfully requests that the Court order and instruct that no party make any statement, offer any evidence or argue contrary to the criminal action conviction.

VII.   No Defendant Should Be Permitted To Make Statements, Offer
       Evidence Or Argue Regarding The Purported Phone Call By Their
       Agent Which The LH Defendants Never Disclosed In Discovery

"If a party fails to provide information…, the party is not allowed to use that information …to supply evidence…at a trial, unless the failure was substantially justified or is harmless." *Lips v. City of Hollywood,* 350 Fed.Appx. 328, 340 (11th Cir. Sept. 25, 2009) (proper exclusion of telephone call because not disclosed or produced by opposing party in discovery); *Berkley Ins. Co. v. Suffolk Constr. Co.*, 2021 U.S. Dist. LEXIS 74511 (S.D. Fla. Apr. 19, 2021), at 2-10 (proper exclusion of evidence of damages not disclosed in response to interrogatories).

Neither the LH defendants nor their agent PAG ever produced in response to discovery requests any evidence or information whatsoever regarding any purported phone call from PAG after the e-mail instructing USG/Hallmark to name LHSEC as the insured.  The LH defendants did not testify at deposition about any purported phone call.  If the call occurred, of which there is absolutely no evidence except the testimony of a threatened non-party broker on the last day of discovery, there is no reason that the LH defendants should not have disclosed it with their responses to written discovery and at deposition well before the discovery deadline.  The LH defendants also did not mention any purported call in their answer, their counterclaim or their opposition to Hallmark's motion for judgment on the pleadings.  Additionally, the LH defendants could have but never disclosed any phone call *before* the action was filed during Hallmark's investigation of the claim, with which contractual cooperation was required.  The LH defendants never disclosed any phone call at any time.  Never.  Having failed to disclose any purported call before or in discovery, the LH defendants should not be permitted to make any statement, offer its agent's post-threat testimony on the last day of discovery or any other evidence of any purported

10

call, or argue regarding any call following their agent's written instruction to name LHSEC as the insured.

The LH defendants' non-disclosure was neither substantially justified nor is it harmless. They never explain their failure timely to prepare their case. It bears emphasis that PAG is their agent. They had years to work with their agent to determine the facts of policy issuance. They made no showing whatsoever of what, if anything, they did to investigate with its agent that key issue. For two and a half years, neither PAG/Sosa or the LH defendants ever mentioned, let alone discussed or provided documentation of, any purported phone call from PAG/Sosa to USG/Eric Pray on August 23 after Sosa's 4:17 PM e-mail instructing USG/Hallmark to name LHSEC as the insured. If the LH defendants had done even the most basic investigation with its *own agent*, and *if* any telephone call had ever actually occurred, they would have known about it months, if not years, before. Their failure to be aware of any purported call demonstrates their failure to do even basic investigation (as well as the phantom nature of the call). Their failure to disclose the call before or in discovery is neither substantially justified nor harmless. They should not be rewarded for failing to properly and timely prepare their own case and disclose such evidence on a key issue.

Hallmark respectfully requests that the Court order and instruct that no party make any statement, offer any evidence or argue regarding any purported telephone call to USG regarding the name of the named insured after PAG's August 23, 2018 4:17 PM e-mail instructing USG/Hallmark to name LHSEC as the named insured.

VIII.    No Defendant Should Be Permitted To Make Statements, Offer
         Evidence Or Argue Actions Not Taken, Events That Did Not Occur,
         Contrary to Their Admissions, Or Facts Irrelevant to Hallmark

The LH Defendants argue actions that they did not take and events that did not occur. Any deposition testimony or trial testimony based on actions that the LH defendants did not take and on events that did not occur should not be the subject of permitted testimony. They are irrelevant.

11

This case, as any case, depends on the actual acts and omission of the LH defendants, not on what they wish they had done, could have done, or should have done.  What they in fact did and did not do is material to the issues.  The premium calculation is irrelevant to any issue raised by this action. It is based on generic classifications (business activity), class codes (16750 internet retailers), general locations, reported amount of business, applied to an algorithm. That a similar premium may be charged for similar risks is not evidence that a particular entity is or is not an insured.  As a matter of law, the name on the policy, not phantom facts or the premium calculation, determines who is, and is not, entitled to coverage.  Not only is testimony regarding non-existent facts irrelevant as a matter of fact and law, that testimony prejudices Hallmark by attempting to confuse the jury.

Communications and transactions solely between PAG and the LH Defendants are not relevant against Hallmark.  Hallmark is not charged with knowledge of any purported fact of which it did not have notice.  For example, and without limitation, neither USG nor Hallmark ever received the check from LHLLC to PAG for the premium.  USG for Hallmark only received PAG's check to USG on which PAG identified that it applied to "Lion Heart Surgical Equipment".  PAG never sent to USG or Hallmark any certificate of insurance.  PAG only sent certificates of insurance to Fabian Conde at Lion Heart.  It is irrelevant what the LH defendants *may* have intended or discussed with their agent PAG.  Discovery proves that neither USG nor Hallmark were ever provided those documents or otherwise notified of their contents.

No defendant should be permitted to make statements, offer evidence or argue contrary to admissions made in this case.  For example, and without limitation: PAG authenticated its August 23 e-mail instructing USG to identify "Lion Heart Surgical Equipment Corp." as the "Named Insured" on the Hallmark 2018/2019 policy.  PAG testified that it instructed USG on April 23 to identify "Lion Heart Surgical Equipment Corp." as the "Named Insured"; that USG correctly

12

identified LHSEC as the "Named Insured" pursuant to PAG's April 23 e-mail; that PAG understood Lion Heart wanted the name changed from "Lion Heart Surgical Equipment, LLC" to "Lion Heart Surgical Equipment Corp."; that PAG claims PAG knew it made a mistake but did not verify the name on the policy nor contact USG (or Hallmark) after receiving a copy of the policy to "correct" the "Named Insured"; that PAG made no note or other entry in its file regarding PAG's "mistake", including that the insured was anyone other than LHSEC; that PAG sent the policies to Lion Heart, which never questioned that LHSEC was the "Named Insured" on the policies; and that PAG had no authority to issue the Certificate of Insurance to Lion Heart, which was never sent to USG or Hallmark in any event (ECF No. 85-3 (deposition transcript of PAG representative Maggy Sosa), at 37:13-39:12, 40:23-41:19, 44:25-45:10, 45:11-46:4, 47:2-6, 47:22-49:13, 49:21-50:4, 56:23-57:6, 65:9-66:20, 68:19-69:10, 78:17-22, 82:18-83:3, 83:24-84:13; 85-7; ECF NO. 86 at 8). Any purported communications solely between LHSSC and PAG provided no notice to USG or Hallmark (e.g., the Certificate of Insurance, any e-mails between them regarding the name of the insured, or any checks from Lion Heart to PAG) (ECF No. 85-3, 56:5-22).

LHSSC and Conde testified and admitted that PAG instructed USG to identify "Lion Heart Surgical Equipment Corp." as the "Named Insured" (ECF No. 79 SOF ¶ 4; ECF No. 85 SOF ¶ 69). PAG was not an agent of, and had no authority to bind, Hallmark (ECF No. 85 SOF ¶ 2). USG, as did PAG, authenticated the April 23 PAG e-mail (ECF No. 41-3; ECF No. 79 SOF ¶ 4; ECF No. 79-1 at 129:10-14; ECF No. 98-1 SOF Exhibit 2 Declaration of Eric Pray ("Pray Decl."), ¶¶ 1-6). LHSSC admitted in its counterclaim that LHSEC was identified on a *signed* application (ECF No. 49 LHSSC counterclaim ¶¶ 4, 15; ECF 79-1 ). The LH Defendants admitted that LHLLC was not an insured under the Hallmark Policy (ECF No. 85, ¶¶ 31, 32, 35, 37; *see also* ECF No. 79, ¶ 10). The LH Defendants admitted that Fabian Conde and Janaina Nascimento are not officers

13

or directors of the named insured LHSEC (ECF No. 85, ¶ 10; *see also* ECF No. 79, ¶ 18).  LHSEC

was admittedly the sole "Named Insured" on both the 18/19 *and* the 19/20 policies (ECF No. 85-

3, 64:4-65:19).  No one from PAG or the LH Defendants *ever* contacted USG or Hallmark to

purportedly "correct" the named insured on the 18/19 or the subsequent 19/20 policy (ECF No.

79-1, 30: 2-7; 85-3, 65:9-66:15).  ECF No. 85, ¶¶ 1, 2, 17, 19, 22, 23, 24, 25, 26, 27, 28, 29, 30,

38.  This list is non-exhaustive.  The LH Defendants are charged with knowledge of all admissions

that they and their agent have made in this case.  No defendant should be permitted to proceed at

trial contrary to their admissions.

<u>LOCAL RULE 7.1(a)(3) CERTIFICATION</u>

Movant's counsel has conferred with all parties who may be affected by the orders sought

in the motion in a good faith effort to resolve the issues raised herein and was unable to do so.

Dated: June 8, 2021                                Respectfully submitted,

**HINSHAW & CULBERTSON, LLP**        **MORISON & PROUGH, LLP**

<u>/s/ Rory Eric Jurman</u>                          <u>/s/ William C. Morison</u>
Rory Eric Jurman, Esq.                        William C. Morison, Esq.
Florida Bar No.: 194646                       California State Bar No.: 99981
rjurman@hinshawlaw.com                        wcm@morisonprough.law
One East Broward Boulevard, Suite 1010        2540 Camino Diablo, Suite 100
Fort Lauderdale, Florida 33301                Walnut Creek, California 94597
T: (954) 467-7900; F: 954-467-1024            T: (925) 937-9990; F: (925) 937-3272
Attorneys for Plaintiff/Counter-defendant     Attorneys for Plaintiff/Counter-defendant
Hallmark Specialty Insurance Company          Hallmark Specialty Insurance Company

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on this 8th day of June 2021, the foregoing was filed with the

Court's CM/ECF system, which will send notice to the parties in this ligation *via* CM/ECF.

By:      <u>/s/ Rory Eric Jurman</u>
                 Rory Eric Jurman

14

**SERVICE LIST**

| | |
|---|---|
| Danya J. Pincavage (FL Bar 14616)<br>Omar M. Ali-Shamaa (FL Bar 121461)<br>WOLFE \| PINCAVAGE<br>2937 SW 27th Avenue, Suite 302<br>Miami, FL 33133<br>T: (786) 409-0800<br>Primary: danya@wolfepincavage.com;<br>omar@wolfepincavage.com<br>Secondary: monica@wolfepincavage.com;<br>service@wolfepincavage.com<br><br>*Attorneys for Lion Heart Surgical Supply*<br>*LLC, Lion Heart Surgical Supply Corp.,*<br>*Fabian Conde, and Janaina D. Nascimento* | Alice R. Huneycutt (FL Bar 293105)<br>STEARNS WEAVER MILLER WEISSLER<br>ALHADEFF & SITTERSON, P.A.<br>SunTrust Financial Centre, Suite 2100<br>401 E. Jackson Street<br>Tampa, Florida 33602<br>Post Office Box 3299<br>Tampa, Florida 33601<br>T: (813) 222-5031<br>F: (813) 222-5089<br>Primary: ahuneycutt@stearnsweaver.com<br>Secondary: dangel@stearnsweaver.com,<br>mkish@stearnsweaver.com |
| Gus M. Centrone (FL Bar 0030151)<br>James E. Felman (FL Bar 775568)<br>Katherine E. Yanes (FL Bar 159727)<br>KYNES MARKMAN & FELMAN, P.A.<br>P.O. Box 3396<br>Tampa, Florida 333601<br>T: (813) 229-1118<br>F: (813) 221-6750<br>Primary: gcentrone@centroneshrader.com;<br>jfelman@kmf-law.com; kyanes@kmf-law.com<br>Secondary: cbarteaux@kmf-law.com;<br><br>*Attorneys for XS Supply, LLC, Jon M. Bird,*<br>*Tyler Berger, Ivan Rodimushkin, David W.*<br>*Longdue III, and Brendan Thomas* | Geoffrey Potter (NY Bar 2252302 PHV)<br>Timothy Waters (NY Bar 4683157 PHV)<br>Joshua R. Stein (NY Bar 5387394 PHV)<br>Jacqueline Lash (NY Bar 5534953 PHV)<br>PATTERSON BELKNAP<br>WEBB & TYLER LLP<br>1133 Avenue of the Americas<br>New York, New York 10036-6710<br>T: (212) 336-2000<br>F: (212) 336-2222<br>Primary: gpotter@pbwt.com;<br>twaters@pbwt.com; jstein@pbwt.com;<br>jlash@pbwt.com<br>*Attorneys for Johnson & Johnson, Ethicon,*<br>*Inc., Ethicon US, LLC* |

1024140\308250471.v3