UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-CIV-61483-RAR

**HALLMARK SPECIALTY**
**INSURANCE COMPANY**,

        Plaintiff,

v.

**LION HEART SURGICAL**
**SUPPLY, LLC**, *et al.*,

        Defendants.
_____/

## ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** comes before the Court on Plaintiff/Counter-Defendant Hallmark Specialty Insurance Company's ("Hallmark") Motion for Summary Judgment [ECF No. 78] ("Motion") and accompanying Statement of Facts [ECF No. 79] ("PSOF"). Defendants/Counter-Plaintiffs Lion Heart Surgical Supply LLC, Lion Heart Surgical Supply Corp., Fabian Conde, and Janaina D. Nascimento ("LH Defendants") filed a Response in Opposition [ECF No. 86] ("Response"), including a response to Hallmark's Statement of Material Facts and their own Statement of Additional Material Facts [ECF No. 85] ("DSOF"). Hallmark filed a Reply [ECF No. 87] ("Reply"), a Reply Statement of Material Facts [ECF No. 88] ("PRSOF"), and the Court permitted each side to file a Sur-Reply. [ECF No. 97] ("LH Defendant SR"); [ECF No. 98] ("Hallmark SR"). Having reviewed all the pleadings, and being otherwise fully advised, it is

**ORDERED AND ADJUDGED** that the Motion is **DENIED** as set forth herein.

## BACKGROUND

Hallmark seeks a declaratory judgment that the LH Defendants were not insured under the subject liability insurance policy ("Policy") and Hallmark is therefore not required to indemnify or defend them in an underlying lawsuit in the U.S. District Court for the Middle District of Florida.

*See generally* Am. Compl. [ECF No. 41]. In the underlying proceeding—Case No. 8:19-cv-1673-T-33AEP ("Underlying Action")—Defendants Johnson & Johnson, Ethicon, Inc., and Ethicon US, LLC are suing the LH Defendants (and others) for allegedly importing and selling counterfeit medical products. *See* Am. Compl. ¶ 14. Hallmark contends that because the Policy names "Lion Heart Surgical Equipment, Corp." as the insured—and not "Lion Heart Surgical Supply Corp." or any other defendants in the Underlying Action—the LH Defendants are not entitled to defense or indemnification under the Policy. *Id.* ¶¶ 27-33.

The LH Defendants, however, insist that Lion Heart Surgical Supply Corp. is the entity that sought coverage and should have been named in the Policy, and note that Lion Heart Surgical Equipment Corp. does not even exist. Resp. at 6-7. Accordingly, the LH Defendants have filed a Counterclaim seeking declaratory judgment that they are entitled to defense and indemnification pursuant to the Policy and request that the Court reform the Policy to name Lion Heart Surgical Supply Corp. as purportedly intended by the parties. *See generally* Counterclaim [ECF No. 49].

In their Motion, Hallmark requests that the Court enter final summary judgment in their favor as to their Amended Complaint and the LH Defendant's Counterclaim, including a declaration that no defendant in the Underlying Action is an insured under the Policy, including, without limitation, the LH Defendants; and that Hallmark has no duty to defend or indemnify any defendant in the Underlying Action including, without limitation, the LH Defendants. Mot. at 16.

## LEGAL STANDARD

Summary judgment is rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(a), (c). An issue of fact is "material" if it might affect the outcome of the case under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). It is "genuine" if the evidence could lead a reasonable jury to find

for the non-moving party. *See id.*; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). At summary judgment, the moving party has the burden of proving the absence of a genuine issue of material fact, and all factual inferences are drawn in favor of the non-moving party. *See Allen v. Tyson Foods Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). The non-moving party's presentation of a "mere existence of a scintilla of evidence" in support of its position is insufficient to overcome summary judgment. *Anderson*, 477 U.S. at 252. If there are any factual issues, summary judgment must be denied, and the case proceeds to trial. *See Whelan v. Royal Caribbean Cruises Ltd.*, No. 1:12-CV-22481, 2013 WL 5583970, at *2 (S.D. Fla. Aug. 14, 2013) (citing *Envtl. Def. Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir. 1981)).

## ANALYSIS

Hallmark's Motion is based on two grounds. First, that Lion Heart Surgical Equipment Corp. was the intended Named Insured; therefore, no mutual mistake occurred. And second, even if the Policy were reformed to list Lion Heart Surgical Supply Corp. as the Named Insured, the Criminal Act Exclusion ("Exclusion") in the Policy would ultimately preclude coverage of the LH Defendants. *See generally* Mot. at 2. But contrary to Hallmark's assertions that the "material facts are undisputed" and "discovery has proven that none of the defendants in the underlying action is an 'Insured' under the Hallmark policy", *id.*, this Court finds that discovery has, in fact, revealed the existence of disputed material facts barring summary judgment. Specifically, the entry of summary judgment as to the LH Defendant's Counterclaim is unwarranted, given that a genuine issue of material fact exists as to mutual mistake—thereby foreclosing Hallmark's request that this Court enter a declaration in its favor pursuant to the relief requested in their Amended Complaint.

### I. *Issues of material fact regarding the parties' intent preclude summary judgment.*

This case centers around communications between PAG Insurance Services, Inc. ("PAG"), the insurance broker/agent for the LH Defendants, and USG Insurance Services, Inc. ("USG"), the

producer/underwriter for Hallmark regarding the commercial general liability insurance policy at issue. PSOF ¶¶ 1, 3; DSOF ¶¶ 1, 3. The interactions between Maggie Sosa, PAG's commercial accounts manager, and Eric Pray, the underwriter at USG handling the LH Defendants' request for insurance, are at the core of this dispute. On August 22, 2018, Sosa e-mailed Pray requesting a quote from Hallmark regarding general liability insurance for Lion Heart Surgical Supply Inc. DSOF ¶ 57; DSOF Ex. 15. The e-mail included two (unsigned) applications for: Lion Heart Surgical Equipment LLC and Lion Heart Surgical Supply LLC. DSOF Ex. 15 at 8. Later that day, Pray sent back one insurance proposal for Lion Heart Surgical Equipment LLC, located at 2130 Van Buren #206, Hollywood, FL, 33020. DSOF ¶ 60; DSOF Ex. 16.

On August 23, 2018, Sosa emailed Pray the binder request, signed by Defendant Fabian Conde, President of Lion Heart Surgical Supply Corp. DSOF Ex. 7. In the email, Sosa writes, "Eric, hi find attached binder request effective 08/23/2018 Name have to be amend to read: Lion Heart Surgical Equipment Corp." *Id*. But despite including the allegedly incorrect name in her email, the Commercial Insurance Application attached thereto, and signed by Conde, names Lion Heart Surgical Supply Corp., located at 2130 Van Buren #206, Hollywood, FL 33020, as the applicant. *See generally id*. The next day, Pray emailed Sosa an insurance binder containing three different company names: Lion Heart Surgical Equipment Corp., Lion Heart Surgical Equipment, and Lion Heart Surgical Equipment LLC. LH Defendant SR Ex. 1 at 1-2. Ultimately, the 2018-19 Policy lists Lion Heart Surgical Equipment Corp. as the Named Insured. Compl. Ex. B at 10.

A key issue of material fact is what transpired after Sosa e-mailed Pray asking him to amend the insurance binder to reflect the name Lion Heart Surgical Equipment Corp. DSOF Ex. 7. Sosa avers that after emailing Pray on August 23rd, she called and asked him to correct the Named Insured on the Policy. [ECF No. 85-3] at 24:24-25, 41:21-25, 42: 1-17, 53:22-25, 54:1-7, 59:12-24, 82:18-22, 83:1-11 ("Sosa Deposition"). Hallmark disputes this assertion and points to

a Declaration from Pray stating that he doesn't recall Sosa or anyone else at PAG calling him after Sosa sent the August 23rd email with instructions to amend the name. PRSOF ¶ 10; PRSOF Ex. 2 ("Pray Declaration"). Hallmark also relies on a $512.29 check received from PAG, dated September 5, 2018, for "Lion Heart Surgical Equipment" as definitive proof that no such call was ever made. PSOF Ex. 5.

However, on April 20, 2021, Hallmark submitted phone records from AT&T after Sosa's deposition. PRSOF Ex. 1 ("AT&T Phone Records").[1] These records show that on August 24, 2018, at 2:35 p.m., an eleven minute and twenty second phone call took place between PAG and Pray's direct line at USG. AT&T Phone Records at 173. This call lends support to the LH Defendants' argument that a subsequent phone call took place regarding the Named Insured under the Policy and, more importantly, creates a genuine issue of material fact regarding the parties' intent. In other words, a reasonable jury could find that PAG, through Sosa, instructed USG, via Pray, to correct the named insured from Lion Heart Surgical *Equipment* Corp. to Lion Heart Surgical *Supply* Corp. over the phone on August 24, 2018. This disputed communication, coupled with record evidence that Conde twice instructed Sosa, his insurance agent, in writing, that the named insured had to read "Lion Heart Surgical Supply Corp."—and Sosa filled out an insurance application that identified Lion Heart Surgical Supply Corp.—is the type of evidence sufficiently indicative of mutual mistake to defeat summary judgment. DSOF ¶¶ 63, 65, 68. To top it all off, USG's Corporate Representative, in a March 18, 2021 deposition, admitted that USG would not purposefully bind coverage for a business that does not exist. PSOF Ex. 2 at 64:21-25, 65:1-5

---

[1] Given that the phone records and the Declaration from Pray were limited to rebut those matters raised by Sosa in her April 6, 2021 deposition, this Court will consider them. *See* AT&T Phone Records; Pray Declaration. Local Rule 7.1(c)(1) carves out a limited exception to the general no new-arguments/evidence-rule and permits a movant to "serve a reply memorandum with affidavits, declarations, or other materials, provided that all such materials are strictly limited to rebuttal of matters raised in the opposing memorandum." *Baltzer v. Midland Credit Mgmt., Inc.*, No. 14-20140, 2014 WL 3845449, at *2 (S.D. Fla. Aug. 5, 2014) (citations omitted).

("USG Deposition"). Given that USG, acting within the scope of its authority as Hallmark's agent, would have never intended to insure the non-existent entity Lion Heart Surgical Equipment Corp., a reasonable jury could readily conclude that Hallmark intended to insure Lion Heart Surgical Supply Corp.

In sum, viewing all factual inferences in the light most favorable to the non-movant, Hallmark cannot establish that they are entitled to judgment as a matter of law as to the LH Defendants' Counterclaim. Under Florida law, courts may reform contracts, and specifically, insurance policies, in limited circumstances. *Tobin v. Michigan Mut. Ins. Co.*, 948 So. 2d 692, 696 (Fla. 2006).[2] The Florida Supreme Court has explained that the concept of reformation applies where the "named insured" in an insurance contract does not "accurately reflect the mutual intent of the contracting parties as to who was to be designated a 'named insured.'" *Id.* Put differently, there has been a mutual mistake. "A mistake is mutual when the parties agree to one thing and then, due to either a scrivener's error or inadvertence, express something different in the written instrument." *White v. Fort Myers Beach Fire Control Dist.*, 302 So. 3d 1064, 1073 (Fla. 2d DCA 2020) (quoting *Romo v. Amedex Ins. Co.*, 930 So. 2d 643, 649 (Fla. 3d DCA 2006)).[3]

Here, Hallmark maintains that the Policy accurately reflects the parties' agreement; namely, that Lion Heart Surgical Equipment Corp. was the intended Named Inured. As the moving

---

[2] Because this case arose under diversity jurisdiction and presents no issues of federal law or treaties, we apply state law. *Mt. Hawley Ins. Co. v. Miami River Port Terminal, LLC*, 713 F. App'x 951, 955 (11th Cir. 2017) (citing *EmbroidMe.com, Inc. v. Travelers Prop. Cas. Co. of Am.*, 845 F.3d 1099, 1105 (11th Cir. 2017)).

[3] To establish the existence of mutual mistake, clear and convincing evidence is needed. *See S. Fla. Water Mgmt. Dist. v. RLI Live Oak, LLC,* 139 So.3d 869, 872 (Fla. 2014) (explaining that "clear and convincing evidence" is evidence that "produces in the mind of the trier of fact a firm belief or conviction, without hesitancy, as to the truth of the allegations sought to be established."). Thus, the party seeking reformation must often present evidence of the contracting parties' negotiations or communications to show that the parties' agreement differs from the written instrument. *See USAA Cas. Ins. Co. v. Threadgill,* 729 So. 2d 476, 478–79 (Fla. 4th DCA 1999) (discussing cases) (cleaned up). Of course, that is not the applicable burden here at the summary judgment stage—it is the LH Defendants' burden at trial as they seek reformation in their Counterclaim based on mutual mistake.

party, Hallmark bears the burden of proving the absence of a genuine issue of material fact regarding the parties' intent in order to obtain summary judgment as to the Counterclaim. *See Rubenstein v. Fla. Bar*, 72 F. Supp. 3d 1298, 1307–08 (S.D. Fla. 2014) (citations omitted). But as explained above, issues of fact abound under Rule 56(c) as to the company intended to be listed on the Policy. When the Court denied Hallmark's Motion for Judgment on the Pleadings [ECF No. 67], the Court explained that extrinsic evidence and discovery were likely necessary to determine whether reformation of the Policy was appropriate. And discovery has now shed light on genuine material issues that can only be determined by the trier of fact.

## *II. Hallmark is foreclosed from raising the Criminal Acts Exclusion at trial.*

Given that denial of Hallmark's Motion is warranted, the Court need not address the applicability of the Exclusion. However, as trial fast approaches, and to provide clarity for the benefit of all parties, the Court agrees with Magistrate Judge Strauss's March 9, 2021 Order [ECF No. 74] ("Discovery Order") that this issue has not been properly framed by the pleadings and will thus be precluded at trial. Hallmark argues that if Lion Heart Surgical Supply Corp. is found to be the Named Insured, the Policy's Criminal Acts Exclusion would apply, barring coverage for all named Defendants. Mot. at 13-16. In Response, the LH Defendants contend that Hallmark has waived its right to seek relief under the Exclusion by failing to raise it in its pleadings. Resp. at 14. In its Reply, Hallmark relies on the representation it made in its pleadings—namely its reservation of rights that any and all Policy exclusions could apply. Reply at 5.

Federal Rule of Civil Procedure 8(a) does not afford plaintiffs with an opportunity to raise new claims at the summary judgment stage. *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1314–15 (11th Cir. 2004). At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Federal Rule of Civil Procedure 15(a); a plaintiff may not amend its complaint through argument in a brief opposing summary

judgment.  *Id.* (citing *Shanahan v. City of Chicago,* 82 F.3d 776, 781 (7th Cir. 1996)).  Here, Hallmark had numerous opportunities to amend its pleadings to specify its reliance on the Exclusion.  And while Hallmark tries to argue that this issue only became ripe upon Defendant Janaina Nascimento's January 6, 2021 guilty plea, this Court disagrees.  Hallmark was on notice of the pending criminal action as early as October 2, 2020, when Hallmark-paid appointed defense counsel filed a motion, among other things, to temporarily stay the underlying action in this case pending completion of the criminal proceedings in the Eastern District of Kentucky.  Resp. at 15.

Most recently, in his Discovery Order, Judge Strauss denied deposition topics Nos. 23-25 (discussing all criminal investigations and charges relating to the LH Defendants) and suggested that Hallmark should seek to amend its pleadings "to include allegations pertaining to specific exclusions under the subject insurance policy that would clarify the relevance of the areas of inquiry" if it wanted to pursue those topics in discovery.  Discovery Order at 2.  Hallmark failed to heed Judge Strauss's advice, and instead, in its Reply, states,

> The criminal act exclusion in the Hallmark policy undoubtedly applies to the underlying action . . . If the Court disagrees, Hallmark requests leave to amend or supplement its complaint and answer to allege more specifically the criminal act exclusion on the grounds that those 2021 facts did not exist at the time that Hallmark filed those 2020 pleadings.

Reply at 5.  However, to allow such relief at this late juncture would unduly prejudice the LH Defendants, who would not have adequate time to prepare this issue for trial nor obtain any relevant discovery.

While Hallmark argues that discovery is not needed, they themselves sought discovery on this exact same issue by way of deposition.  [ECF No. 92 at 2].  Hallmark cannot have it both ways—arguing in one instance that the underlying facts on an issue are undisputed and no further discovery is needed, and then, in another, requesting additional deposition topics on the very same issues.

## **CONCLUSION**

For the foregoing reasons, it is **ORDERED AND ADJUDGED** that Plaintiff Hallmark Specialty Insurance Company's Motion for Summary Judgment [ECF No. 78] is **DENIED**.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 13th day of October, 2021.

_____
**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**